```
 1                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
 2                     SOUTHERN DIVISION

 3   UNITED STATES OF AMERICA     Criminal No. TDC-17-00195

 4          v.                    Greenbelt, Maryland

 5   KYLE STEPHEN THOMPSON,       January 30, 2019

 6          Defendant.           10:00 a.m.

 7   --------------------------/

 8                 TRANSCRIPT OF SENTENCING
               BEFORE THE HONORABLE THEODORE D. CHUANG
 9                  UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Government:    United States Attorney's Office
                            By: KRISTI O'MALLEY, ESQUIRE
12                              JOSEPH BALDWIN, ESQUIRE
                                KELLY HAYES, ESQUIRE
13                          6500 Cherrywood Lane
                            Suite 200
14                          Greenbelt, Maryland 20770

15
     For the Defendant:     RaquinMercer LLC
16                          By: STEPHEN MERCER, ESQUIRE
                                ISABELLE RAQUIN, ESQUIRE
17                          5906 Hubbard Drive
                            Rockville, Maryland 20852
18

19

20   Court Reporter         Lisa K. Bankins RMR FCRR RDR
                            United States District Court
21                          6500 Cherrywood Lane
                            Greenbelt, Maryland 20770
22

23   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
24

25
```

P R O C E E D I N G S

THE CLERK:  The matter now pending before this Court is Criminal Number TDC-17-195, United States of America versus Kyle Stephen Thompson.  We're here for the purpose of sentencing.  Counsel, please identify yourself for the record.

MS. O'MALLEY:  Kristi O'Malley, Joseph Baldwin and Kelly Hayes for the United States and with us at counsel table is FBI Special Agent Jacqueline Dougher.

THE COURT:  Good morning.

MR. MERCER:  Good morning, Your Honor.  Steve Mercer and Isabelle Raquin for Kyle Thompson.  Mr. Thompson is at counsel table with us.

THE COURT:  Okay.  Good morning, counsel.  Good morning, Mr. Thompson.  So we are here for a sentencing in United States versus Thompson.  On September 13, 2018, Mr. Thompson was found guilty after a jury trial of 18 counts of production of child pornography in violation of Title 18 United States Code, Section 2251(a).  I have received and reviewed the following documents in connection with today's proceedings.  First, the revised presentence report of November 16, 2018, the government's sentencing memorandum of January 14, 2019, victim impact statements submitted by the government, the defendant's sentencing memorandum of January 14, 2019.  The government filed a

responsive memorandum on January 22nd. I also have a letter and an agreement on jurisdiction from January 17th. Are there any other materials that were submitted?

MR. MERCER: Yes, Your Honor. There was yesterday --

THE COURT: Oh, right. Yes. We have a defendant's reply of January 29th and then I had also asked for a unedited or the original chart of the videos, which I think the government submitted as well.

MR. MERCER: And there was one letter attached --

THE COURT: The letter came with the filing on January 29th. One letter from a family member. Correct?

MR. MERCER: Yes.

THE COURT: Okay. I've received and reviewed all those materials. Anything else from the government?

MS. O'MALLEY: No, Your Honor.

THE COURT: Could I just ask? I think the PSR refers to restitution to be determined. I didn't see anything in the papers at all about restitution, whether that's being sought or anything like that. Can you clarify that?

MS. O'MALLEY: Your Honor, we don't have any information for any particular restitution claims.

THE COURT: Okay. And then there's no order of

```
 1   forfeiture.  Correct?
 2              MS. O'MALLEY:  No, Your Honor.
 3              THE COURT:  Okay.  So I have reviewed the
 4   presentence report.  And, first of all, Mr. Mercer, Ms.
 5   Raquin, have you and your client had the opportunity to
 6   read and review the report with your client and discuss
 7   it?
 8              MR. MERCER:  Yes, we have, Your Honor.
 9              THE COURT:  And as I understand it, there are
10   remaining objections to the acceptance of responsibility
11   or the lack of acceptance of responsibility, downward
12   adjustment to the enhancements for sadistic behavior and
13   the way the grouping has occurred.  Are those the only
14   remaining objections to the report?
15              MR. MERCER:  Yes, Your Honor.
16              THE COURT:  And I will -- does anyone have
17   anything to add on any of those points or should I just
18   make rulings on those based on the papers?
19              MS. O'MALLEY:  Your Honor, we're fine to submit
20   on the papers.  But if defense counsel argues, obviously,
21   we would request an opportunity to respond.
22              MR. MERCER:  Your Honor, I have a few brief
23   comments.
24              THE COURT:  Okay.  And I have a couple of
25   questions on a couple of these, but not extensively.  But
```

go ahead.

        MR. MERCER:  First, on 3E1.1, acceptance of
responsibility, I would just -- I had referenced in the
memorandum the jail calls, which occurred on January, I'm
sorry, April 19, 2017, which was two days after
Mr. Thompson was arrested and the summary of that call in
particular is in ECF Document 85, which was the
government's motion regarding defendant's jail calls and
that appears at page 4 where I'm quoting, "they have
videos of me and an alleged" -- and bracketed out age for
privacy reasons -- "year old", "I can't say on the phone,
but what you think it is, it is."  And --

        THE COURT:  Who was this conversation with
again?  Remind me.

        MR. MERCER:  With his father.

        THE COURT:  Okay.

        MR. MERCER:  So ordinarily, of course,
acceptance of responsibility is not available when a
defendant proceeds to trial.

        THE COURT:  I'm just trying to pull up that
document that you are referring to.  One moment.  85, is
that what you said?

        MR. MERCER:  Yes.  ECF-85 --

        THE COURT:  Um-hum.

        MR. MERCER:  -- filed August 28, 2018.  And I

misspoke, Your Honor, with the date. It's March 19th of

         2017, which was two days after Mr. Thompson's arrest.

                   THE COURT: Okay. Go ahead.

                   MR. MERCER: So understanding that ordinarily

         acceptance of responsibility is not available to a

         defendant that holds the government to its burden of

         proof. I would note, however, that the official

         commentary does recognize that there are situations and I

         think the example provided in the commentary is apt to the

         circumstances here where the only way for the defendant,

         for Mr. Thompson to preserve his constitutional issues to

         the procedure required him to go to trial and the conduct

         of that trial, he did not raise any frivolous defense

         about any factual matters.

                   As the Court will recall, the primary contention

         at trial had to do with the mens rea component and the

         meaning of primary purpose or motivating purpose or

         dominating purpose. But it was not a -- the purpose of

         the trial I think is clear that it was to preserve those

         constitutional challenges, which the official commentary

         does recognize as a valid reason. That doesn't cut

         necessarily against acceptance of responsibility. The

         focus being, of course, on the acceptance of

         responsibility that occurs before a trial and that's why

         we point to the jail call that the government had proposed

1    to admit, but then didn't.  And, of course, the proceeding

2    in state court where there has been a plea of guilty to

3    ten counts --

4           THE COURT:  That was after the verdict in this

5    case though.  Correct?

6           MR. MERCER:  Yes.  It was after the verdict in

7    this case.  But I think it was an understanding of -- I

8    don't know that that timing really speaks to a lack of

9    acceptance of responsibility because that was anticipated,

10   hopefully, that the state to preserve the constitutional

11   issues on the state side also, that there would not have

12   to be the necessity of going through a trial.  But that it

13   would be resolved along the same lines of preserving that

14   constitutional challenge on the state side.  So I don't --

15   I just don't want the Court to have the impression that

16   there was an attempt to sort of game the system by seeing

17   what happens on the federal side at trial before resolving

18   on the state side.

19          THE COURT:  Well, I thought there was a pretty

20   clear decision that everyone including the Court made here

21   that the federal trial was going to go first --

22          MR. MERCER:  Yes.

23          THE COURT:  -- I think.  But again that -- I

24   mean that was a decision.  Obviously, there could be

25   various motives for that and I know one of them was about

incarceration, so forth.  But okay.  I understand what you
are saying though.

          MR. MERCER:  So --

          THE COURT:  Okay.

          MR. MERCER:  -- we would accept a request at
reduction of the offense level because the defendant
clearly demonstrating acceptance of responsibility and
there will be no frivolous dispute under 1 -- and also,
Your Honor, just there's no dispute under 1B1.3 that's
frivolous at all about relevant conduct that the Court is
considering here.  So that would also cut against
acceptance of responsibility and that I think as the Court
can see from our submissions, we're not raising any
frivolous dispute over relevant conduct.

          THE COURT:  Okay.  So let me just ask you a
couple of questions since we are here on some of the other
objections.  On the one for sadistic behavior and this
maybe is a question for both sides, maybe I'm missing
something, but under Guideline 2G2.1(b)(4)(b), it appears
that the enhancement can be for sadistic behavior.  It can
also be for violence in the videos.  No one really talked
about that too much.  And then it also can be if the
victim was an infant or a toddler.  And it certainly seems
as if in this case, the victims were toddlers.  So why
isn't that enough to get this enhancement without even

getting to the question of whether the behavior was sadistic?

          MR. MERCER:  Well, two reasons, Your Honor.  One under A, sadistic or masochistic conduct or other depictions of violence, I think the depiction of violence narrows the sadistic or masochistic conduct.  So it further qualifies it.  So it's a subset of sadistic or masochistic conduct because otherwise it would be covered under 2G2.1(b)(2)(B) with respect to conduct described under 18 U.S.C., 2241(a) or (b), which is aggravated forms of sexual contact.

          With regard to infant or toddler, as far as my research goes, toddler is under 4 and so I don't believe this is a --

          THE COURT:  Well, a lot of these, the infant was under 4 for a lot of these or I mean the victims were.  At least Victim 1 was for much of this.  And what case says that 4 is the cutoff?  I didn't -- neither side really raised that question.  So I didn't know if you looked into it.

          MR. MERCER:  Your Honor, I'll check.  I did find one case that was discussing toddler and it may be the --

          THE COURT:  I mean I don't think it's in the commentary.  I didn't see it there.  So --

          MR. MERCER:  No.  I didn't see any commentary on

toddler. But I think the common dictionary definition for toddler would not encompass the victims here.

THE COURT: Even the two-year-old victims or three-year-old victims?

MR. MERCER: Well --

THE COURT: Does the government have anything on this issue?

MS. O'MALLEY: I have plenty on this issue, Your Honor, which I'm more than happy to address.

THE COURT: Okay. Well, save it for -- I'll get my questions with Mr. Mercer and then we'll -- so if you have a case on that that says there's a cutoff at 4 and when you say 4 meaning under 4 as opposed to 4 before 5 because I think the way I read this, the facts here, I think the victims were all safely under 5 during all of these things. I think at one point, one of the victims is 4. I think Victim 3 says it on the video and I think we also have information on birth years and we actually have the specific birth date of Victim 1 and Victim 1 was under 3 for several of these videos and then was certainly under 4 for most if not all of the rest. So I think there is an issue there. And I'm just trying to understand why that doesn't at least address some of the counts if not all the counts.

MR. MERCER: Well, Your Honor, to be candid,

1    too, the issue not having been raised in the PSR, I didn't
2    go back to check to see if the additional toddler was an
3    amendment that postdated any events here.  So I would just
4    want to double check that.
5              THE COURT:  Okay.
6              MR. MERCER:  But I --
7              THE COURT:  The events here were what year
8    again?
9              MR. MERCER:  2015.  So and I was just a little
10   concerned about that because in looking at a decision from
11   around 2012, it didn't seem to be addressing a
12   harmlessness analysis based on toddler and so I just
13   wasn't -- I just put it further down on my list because it
14   hadn't been raised here.
15             THE COURT:  No.  I understand.  And just a quick
16   look at the book from 2014 doesn't show that enhancement.
17   So maybe you are right that it's -- the conduct predates
18   that.  Although we usually follow the one book policy.  I
19   don't know which book we are using if we are going to
20   stand on that.
21             Okay.  So I understand that point.  And then I
22   think those are the only questions I have for you, Mr.
23   Mercer, on any of these.
24             MR. MERCER:  Well, I did want to just expand on
25   the grouping and the stacking.  The grouping under 3(d),

1    we make the argument to the Court that there's a composite
2    harm here such that the account should be grouped by
3    victim.  I would -- and that is how we arrive at a offense
4    level of 40 is through grouping based on victim and
5    composite harm --
6            THE COURT:  Well, would you agree though if
7    there is any kind of sadistic behavior, doesn't that take
8    us to 44 just on at least one count and we would never get
9    down to 40 at that point.  Right?
10           MR. MERCER:  Well, yes.
11           THE COURT:  So you are assuming that you are
12   successful on all of that?
13           MR. MERCER:  Correct.
14           THE COURT:  Okay.
15           MR. MERCER:  Right.  So yes, I have to be
16   successful on acceptance of responsibility, on the
17   sadistic enhancement and on the grouping to under 3D1 of
18   the different offenses for Victim 1, grouping together
19   based on it being a continuing series of events resulting
20   in a composite harm to the victim.
21           That said, Your Honor, I also would submit that
22   the PSR's approach to grouping, which is no grouping at
23   all, does not recognize that there can be grouping by
24   dates.  So, for example, with regard -- there is only one
25   count of conviction for Victim 2, one count for Victim 3,

there are 16 for Victim 1.  However, Counts Three and Four occur on the same date, 9-27-2015.  Count Six, Seven, Eight, Nine, Ten occur on the same date, March 4, 2016. Counts Eleven, Twelve occur on the same date, March 5th, 2016 and Counts Sixteen, Seventeen and Eighteen occur on the same date of January 28, 2017.  So I think even if the Court doesn't accept our composite harm argument, that there should only in effect be one count per victim.

I also believe it's -- the Court should consider one count for Victim 2, one count for Victim 3 and eight counts for Victim 1 as opposed to 16 counts because there are multiple counts occurring on the same day, which I believe a fair reading of the commentary would be that is that the same event notwithstanding the camera may be turned on and off, but it's all occurring on the same day.

Now why is that important?  It's important I think as it relates to our stacking argument, Your Honor. It doesn't get us below 43 if you group Victim 1 to 8 instead of 16 counts.  But I don't think it is irrelevant either because the Court still has to decide -- and I think this is really where the core of the dispute is -- what is life.  And we're advocating for a position that we believe is consistent with the commissions of policy statements --

THE COURT:  Okay.  I don't want to get into the

overall sentencing.  I'm just talking about the guidelines
right now.

MR. MERCER:  Yes.  I understand.

THE COURT:  You will have time to talk about
that later.

MR. MERCER:  I understand and I appreciate that.
I just wanted to be candid with the Court that even if we
group to for Victim 1 to 8 counts instead of 16 counts,
that doesn't get us below 43.  But I just want to alert
the Court that we don't consider that to be, you know,
irrelevant and we can discuss the reasons why later.

And the other issue about stacking, Your Honor,
however the Court decides to group --

THE COURT:  You are getting into the sentence
now, Mr. Mercer.

MR. MERCER:  Okay.

THE COURT:  Let me hear from the government now.
So a couple of questions.  Unless you want to add
anything, I don't think I need anything more on acceptance
of responsibility.  On the sadistic behavior, I guess Mr.
Mercer may be correct.  It looks as if on the older books,
this toddler enhancement wasn't there.  What's your view
on that question?

MS. O'MALLEY:  So, Your Honor, I guess it
depends on which book you're looking at.  If you're

looking at the book for charges because in the 2016, 2017
book, it was there.  But in the 2014 book, it was not.
So --

          THE COURT:  Right.

          MS. O'MALLEY:  -- it came into being before the
last acts were committed and before the final charge.  But
I can address both issues, Your Honor, in terms of if we
were to assume that the infant/toddler guideline applied,
I just would note that there are videos where Victim 1 is
wearing a pull-up and there's a video where Victim 2 is --
has a pacifier.

          THE COURT:  No.  I'm familiar with that and I
guess the question is do you have anything on this --
well, is there some age cutoff in the case law or is this
somewhat loose in terms of how one defines --

          MS. O'MALLEY:  Your Honor, I haven't done the
research to determine whether there's a particular age
cutoff for the -- when someone is an infant or toddler.  I
would implore the Court though to find that this is in the
heartland of sadistic conduct.  And so the Court doesn't
even need to consider the fact that these were also very
likely toddlers.

          This is clearly sadistic conduct and depictions
of violence.  I cited in my papers decisions from every
single circuit that has found that just the act of an

adult male penetrating a child this young is per se
sadistic.

THE COURT:  So I'm with you on that.  I guess
the question I have is I don't believe -- and I'm working
primarily off the descriptions in the unedited version
that was not presented to the jury and I'm assuming there
is no objection to that content from either side.
Correct, Mr. Mercer?

MR. MERCER:  No.  And I believe the --

THE COURT:  Okay.  But I don't see -- I mean I
see cases as you've described.  I've also seen cases that
any kind of penetration with some foreign object would
also count.  But I don't believe that every video here has
that.  Am I correct or not?

MS. O'MALLEY:  I think a large number of them
do.  I think there are videos early on where there is the
penis close to the buttocks or in the buttocks.  It's not
clear whether there is penetration.  There is though even
in videos where there is oral sex, there is bondage of the
child being tied or arms being --

THE COURT:  Okay.  Well, then on the oral sex
point, are there cases saying that's sadistic?  I felt
like that was not necessarily covered in the other cases
that you've referenced.

MS. O'MALLEY:  So I think oral sex in and of

itself may not be under normal circumstances, but we're not dealing with just oral sex here. We're dealing with tying a child's arms to her waist with a tie from a bath robe in one of the videos --

THE COURT: I am familiar with that one, too. Yes.

MS. O'MALLEY: -- and forcing the penis into her mouth to the point where she can't breathe. There's other videos where the defendant forces his penis into her mouth where she can't breathe. I think that crosses the line into sadistic, especially because the defendant is also physically abusing Victim 1 on numerous occasions during those videos. Is not just engaging in the horrific sexual abuse of her, but he throws her across the bad, slaps her, pulls her hair while doing this and this is all the classic heartland of sadistic.

THE COURT: Right. But I'm assuming and I could be wrong that -- you are comfortable with me working off the descriptions --

MS. O'MALLEY: Absolutely.

THE COURT: -- for my assessment. Okay. So I'm not sure and I, frankly, don't think it matters from a mathematical standpoint. But I do think that -- Mr. Mercer, it's her turn right now.

MR. MERCER: Oh, I'm sorry.

THE COURT:  So just chill out.  I'm not sure
that I would necessarily say that every description
meets -- at least makes it clear by a preponderance of the
evidence that the standard is met.  That's why I was
asking about the toddler issue.  And I guess it's a
complicated question with the guidelines changing in the
middle of the conduct.  Again, my general understanding is
we choose one book and we go with it for the case and I
don't know if it -- until this, I didn't think it
necessarily mattered.  But does it matter and which book
would we be using?

                MS. O'MALLEY:  My understanding is that if one
of the -- if the earlier guidelines would be beneficial to
the defendant, that that's the guidelines the Court should
use.  But again, we have conduct here that both predates
and postdates --

                THE COURT:  Right.

                MS. O'MALLEY:  -- the 2014 guideline --

                THE COURT:  And I guess the question then is
whether -- is there any other reason not to use the
earlier book?

                MS. O'MALLEY:  The only distinction would be the
infants and toddlers.  Everything else is the same.

                THE COURT:  Or possibly the fine amounts, things
like that, if that changes.

1          MS. O'MALLEY:  Fair enough.

2          THE COURT:  Okay.  And then you agree certainly

3    that violence by itself, I think that is in the old

4    guideline as well.

5          MS. O'MALLEY:  Yes.

6          THE COURT:  Other depictions of violence whether

7    we call it sadistic or whether you just call it violence,

8    that would qualify.  Correct?

9          MS. O'MALLEY:  Yes.

10          THE COURT:  Okay.  So I did want to also ask

11    about the grouping question.  And you cited cases and we

12    found cases that certainly state that when there's the

13    same victim and conduct on a different day, then it can

14    and usually is a separate group.  The application notes

15    refer to rape of a victim on one day and another one on a

16    different day.  Those are different groups most of the

17    time.

18          But I didn't see a case that said if it's on the

19    same day how you treat that necessarily.  Did you have

20    anything in that regard?

21          MS. O'MALLEY:  Your Honor, I have had several

22    judges in this courthouse and in Baltimore apply that

23    guideline where they -- we had several instances of abuse

24    on the same day or in the same weekend and each one was

25    treated as a separate instance of harm.

THE COURT:  Is there a case that says that, a
published case?

MS. O'MALLEY:  I can't say other than the cases
I've cited, Your Honor, whether it says.  What I will say
is that it's an academic exercise because there are still
more than five days of abuse --

THE COURT:  No.  I agree with you completely on
that.

MS. O'MALLEY:  -- of Victim 1.  She was abused
on eight separate days in six separate weekend visits and
what is absolutely horrific and the reason that I think it
is separate instances of harm is there are several
instances on those weekends where she visited where she
was abused late on a Saturday night and then woken up
early on a Sunday morning and abused again.  And, Your
Honor, I don't think there's -- there shouldn't be any
question that those are separate instances of harm,
separate abuses.

THE COURT:  Okay.  And again, and I think it's
pretty clear that absent something extraordinary, that the
different date things, there's no real issue with that.
But then, for example, I believe there are several
examples where -- just taking, for example, Counts Eleven
and Twelve, the videos are four minutes apart and I think
there's at least a strong argument to be made that it's

really the same incident.  The video must have stopped in the middle and was restarted.  Is it still your position that those are separate harms that need to be grouped separately?

MS. O'MALLEY:  Your Honor, I can't say whether the conduct stopped and then started again or whether it continued and the video started again.  Obviously, I wasn't there.  So I can't say for sure.

THE COURT:  Well, you've seen the videos.  You have --

MS. O'MALLEY:  Certainly.

THE COURT:  And in some of these cases, even though there's a gap, I mean the video is a certain number of minutes long.  So from the end of the video until the beginning of the next one is really not much time.  And so I want to see if your position is still that those are separate for purposes of grouping.

MS. O'MALLEY:  I suppose I would analogize it to if someone went into the same bank three times in one day, this would be treated as three separate units and three separate harms, even though it's the same bank, same --

THE COURT:  And I could see that and I think that's a fair argument.  I'm sort of saying in some of these cases, it appears as if given the time proximity and the descriptions, that it's actually the same visit to the

bank.  It's just that the video starts, stops and then
starts again.  But I mean would you agree with that or do
you feel like no matter what, if the video stops, it's a
separate harm?

MS. O'MALLEY:  I mean all I can tell you, Your
Honor, is that I have consistently for years advocated for
and had multiple courts find that --

THE COURT:  That's not what I'm asking.  I'm
asking as a factual matter and again other cases might
have been different, but here you've got videos that are
four minutes apart, nine minutes apart and then in some
cases, that again the length of the video.  And the
earlier one pretty much covers most of the time between
the videos.  So it just seems fair to me to look at the
question of whether this really is just the video stops in
the -- it stopped and turned off and turned on again
whether it's -- I mean in the trial we heard testimony
about repositioning the camera, whathaveyou.  It seems as
if we're painting with a very broad brush stroke if we're
just saying every count every time the video stops, that
that's a separate harm.

And again I think you heard me say this in other
points in the case, I'm just not persuaded by the notion
of someone saying, well, this is how we've always done it
as being the answer.  So I take it then it's your position

1  that even if the camera stops and there's, you know, 30

2  seconds or a minute in between, that is a separate harm.

3  That's your position.

4      MS. O'MALLEY:  My position is that when the

5  child had to endure several separate sex acts within, you

6  know, those separate videos, that those are separate

7  incidences of harm.  But I would again reiterate to the

8  Court that I think it's academic because there clearly are

9  more than five and unfortunately, the sixth on up is a

10  freebie.  There's no additional punishment for that.

11      THE COURT:  I know that's how it works.

12      MS. O'MALLEY:  So I think in this case there's

13  no question that there is again six separate weekend

14  visits, eight separate days.  I think there shouldn't be

15  any question that sometimes these visits are months apart.

16  They span almost two years in time.  So I don't think

17  there should be any question in the Court's mind that the

18  separate days at a minimum are separate instances of harm

19  and that resolves the issue as far as I'm concerned

20  because we already get to five units in that case.

21      THE COURT:  Okay.  And similarly, I think it's

22  correct then that -- you would agree that it's an academic

23  exercise as to the sadistic enhancement in that it really

24  only takes one count with that to get to Level 44 and at

25  that point, the only real impact of whether the other

counts have that enhancement or not is in the grouping, but because of the way the grouping works, those extra five points for grouping are going to happen one way or the other. Would you agree that they are really -- as a practical matter, it doesn't lead to any difference in the numbers. Right?

MS. O'MALLEY: Yes, Your Honor.

THE COURT: So long as there's at least one count that qualifies.

MS. O'MALLEY: Yes, Your Honor. And I think there is no question here that there's more than one. There's a number.

THE COURT: I completely agree with you on that.

MS. O'MALLEY: So I think the majority I think do have sadistic conduct. I would agree with you that based on the descriptions and based on the videos themselves that there are a couple at least that -- if you were looking purely at the conduct, although I think you'd have to factor in the age of the child, the fear they were placed in, the pain that they were put in in addition in factoring in sadistic. But even if the Court were to discount a couple of the videos and say that doesn't qualify --

THE COURT: I agree with you.

MS. O'MALLEY: -- it wouldn't make any

difference.

THE COURT:  And I think probation actually did not apply it to Count Nine I think.  So again it makes no difference in the math I don't think.  So --

MS. O'MALLEY:  Certainly.

THE COURT:  You wanted to add something?

MS. O'MALLEY:  Sorry, Your Honor.  One moment on the terms of the guideline book of which one we're supposed to use.

THE COURT:  Yes.

MS. O'MALLEY:  Mr. Baldwin just hinged on something.  Do you want to point it out?

MR. BALDWIN:  Your Honor, actually it was pointed out by probation.  But in application notes to 1B1.11, it's on page 46 of the current book.  But it says essentially a defendant -- it gives an example.  If the defendant is sentenced to January 1992 for bank robbery committed --

THE COURT:  Sorry.  What page are you on again?

MR. BALDWIN:  It's on page 46.

MS. O'MALLEY:  45.

MR. BALDWIN:  Excuse me.  It starts on 45 is where the commentary starts.

THE COURT:  Okay.  Go ahead.

MR. BALDWIN:  And it says -- the language begins

```
 1    if the defendant is sentenced in January 1992.  It talks

 2    about one bank robbery being committed in October 1988 and

 3    one committed in November 1991.  The later, the

 4    November 1991, November's guidelines manual should be

 5    used.  So it talks about using the later manual.

 6              THE COURT:  I'm sorry.  You're in 1B1.11?

 7              MR. BALDWIN:  Yes.

 8              THE COURT:  Background section, bottom of page

 9    45?

10              MR. BALDWIN:  1B1.11, Your Honor.

11              THE COURT:  Right.  And then where were you

12    reading from?

13              MR. BALDWIN:  Page 46.

14              THE COURT:  Which paragraph?

15              MR. BALDWIN:  It's the one that begins

16    "moreover."

17              THE COURT:  Okay.

18              MR. BALDWIN:  And then it's seven lines down.

19    And then the next paragraph, it says summary.

20              THE COURT:  Um-hum.  It also says on the bottom

21    of page 45, if the defendant is convicted of two

22    offenses -- well, actually, I guess it's in the -- it's in

23    the guideline itself.  Subsection 3.  "If the defendant is

24    convicted of two offenses, the first committed before and

25    the second after a revised edition of the guidelines
```

manual became effective, the revised edition of the guidelines manual is to be applied to both offenses." So that seems to address your issue. And I guess the last offense in this case was January of 2017. So that would mean the 2016 book would have been in play. And it does include the infant or toddler enhancement.

Okay. So I think I'm prepared to rule on the enhancement. You had one followup point, Mr. Thompson -- I mean I'm sorry -- Mr. Mercer?

MR. MERCER: Two quick points. One, Your Honor, about the infant/toddler and which guidelines manual to use, under 1B1.11(b)(1), to the extent that there's ex post facto concerns, that's going to trump the (b)(3) guidance about when you have straddling of offenses. And, you know, I wasn't -- because the toddler enhancement wasn't asserted here, I didn't come prepared to address any potential ex post facto issues. But I don't believe that the commentary about the straddling scenario is going to trump an ex post facto analysis and the commentary seems to support that.

And I just had one other brief point, Your Honor, about the offense enhancement --

THE COURT: Okay.

MR. MERCER: -- for sadomasochistic because the acts are horrific. No one -- we are not diminishing that.

But there is under 2G2.1, there is an enhancement for
aggravated sexual contact under (B)(2)(b) and that would
only result in a -- that would result in a four-level
enhancement, but with the sadistic enhancement, it's a
total of 6.  So two additional points.  And so sadistic
must mean something more than the aggravated sexual act
itself.  And we believe it does mean something different
and that the purpose of the violence must be to obtain
sexual gratification and we would simply submit, Your
Honor, that the videos do not depict sexual gratification
or causing pain for sexual gratification and that's --

       THE COURT:  Okay.  I understand.  So take this
step by step.  On the acceptance of responsibility issue,
the probation -- presentence report does not provide any
downward adjustment for acceptance of responsibility.  The
defense is arguing that that downward adjustment is
warranted because the defendant effectively went to trial
to preserve his right to appeal the suppression motion
ruling.  Arguably admitted the conduct in a private, but
recorded conversation with his father.  And I think
everyone's acknowledged that under 3E1.1, Application Note
2, acceptance of responsibility reductions are available
only in rare situations when a defendant goes to trial.

       It is true that the one identified by the
defense to preserve a constitutional right with respect to

appealing a suppression motion is one of the recognized rare situations that could apply, but that rationale going to trial to preserve an appeal is only one factor.

There are multiple considerations listed in Application Note 1 to 3E1.1 and on virtually all of them, Mr. Thompson has not done what is needed to demonstrate acceptance of responsibility. He did not truthfully admit the conduct comprising the offense of conviction, although he did arguably have his lawyers concede certain points at trial. Maybe this private phone call, which I don't believe he necessarily thought was being made public to anybody, he may have acknowledged that certain things were depicted, but he certainly didn't admit to anything directly. He vigorously contested a key element of the offense, which was the purpose of his production of child pornography. So in that sense he didn't accept responsibility.

He also didn't voluntarily terminate or withdraw from the criminal conduct. He was actually arrested by law enforcement to prevent him from engaging in it further. He didn't voluntarily pay any restitution. He did not voluntarily self-surrender. He didn't voluntarily assist the authorities in recovering the instruments of the offense. They were actually seized against his will through a search warrant. There's no evidence of

post-offense rehabilitation efforts.  And as is plainly
obvious whether before, during or after the trial, there's
never been any expression of remorse or contrition.  So
under the facts of this case, the downward adjustment is
not going to be given.  I will overrule the objection and
sustain the probation officer's assessment of that
grounds.

On issue of the sadistic behavior enhancement
under 2G2.1(b)(4), at a first level, as I mentioned
earlier, if the infant/toddler exception applies, I think
that basically encompasses all of the conduct here.  One
of the victims was two years old for at least three of the
counts, three years old for the vast majority, just turned
4 for some of the last ones.  I think the others were all
4 and below.  Whether the four-year-old cutoff exists or
not, I haven't looked into specifically.  But all of these
were right at 4 or lower and so I think it would apply.

Now again since no one keyed up this issue, I
don't know if we've all completely run into ground as to
which book would apply.  I think Mr. Baldwin points out
that in general we should apply the later book, 2016.  But
it's a fair point by Mr. Mercer that there arguably is an
ex post facto issue here.  Probably not because I don't
think it's going to make any difference in the guidelines.
But out of an abundance of caution, I'm not going to rely

on the infant/toddler basis for an enhancement.

And so then we look at whether any of the conduct in these videos was sadistic or depicted other forms of violence. And the enhancement certainly applies to many, if not most of these counts. Under U.S. versus Burgess, 684 F.3rd 445 (Fourth Circuit 2012), vaginal intercourse with a five-year old child was deemed to necessarily cause pain and is sadistic for purposes of this enhancement. Under U.S. versus Osbourne, 35 Federal Appendix 61 (Fourth Circuit 2002), penetration of a young child by an adult or foreign object is likewise deemed sadistic. And out of circuit cases refer to anal intercourse with a young child is also per se sadistic.

And between that fact and the fact that some of these videos also depict violence, whether it's striking the child, whether it's forcing a bound child, forcing oral sex upon a bound child and pushing that child or whether it's other violence, the vast majority of these safely qualify. Again out of an abundance of caution, I'm not going to make that finding for all of these counts. I think there are some where without the penetration covered by the case law or explicit references to violence and the descriptions, which are undisputed, I'm not going to make that finding. Again as we've heard, that doesn't make any difference in terms of the overall calculation.

So I will find that the enhancement is applicable to Count One, Count Two, Count Three. The first two because of the penetration. The third one because of the violence. The fourth one because of the penetration. And Count Four as well. Count Six, Count Ten, Count Twelve, Count Thirteen, Count Fourteen, Count Fifteen, Count Sixteen, Count Seventeen and Count Eighteen, I'll apply the enhancement. Probation did not apply it to Count Nine. I will not apply it to the remaining ones again without more extensive analysis of the videos. I don't think -- I'm not going to do that again, basically on the rule of lenity. But it does not make any difference in terms of the overall calculation because as I stated, the fact that at least one of them applies gets us to Level 44 and it won't make any difference in the final calculation.

And then on the issue of grouping, the defense is objecting to the grouping enhancement, seeing these as part of the same and not a separate harm. It is true that under 3D1.2(d), offenses such as this one are explicitly by the guideline at issue are not grouped under the concept of a total amount of harm or loss. But under U.S. versus White, 810 F.3rd 212 (Fourth Circuit 2016), they could be grouped under Subsections A or B of that -- of Guideline 3D1.2 if they involve the same victim and the

same act or transaction or same victim and two or more acts connected by a common scheme or plan.

And the Application Notes 3 and 4 provide examples, stating that two counts of an assault on a federal officer based on shootings on different days do not group. Two counts of raping the same person on different days also do not group. In White, the Fourth Circuit found that three threats against the same victim made on three consecutive days were properly not grouped. In U.S. versus Wise from the Fifth Circuit, 447 440 (Fifth Circuit 2006), the district court's determination that counts of production of child pornography occurring on different days did not group. That was upheld. But at the same time, the district court had found that counts occurring on the same day did group together. Based on the application notes and the cases, the counts occurring on different days clearly are separate groups because of the separate harm of each incident. And then the question is what to do about the ones on the same day.

As I stated, there are certain groups where it appears that both based on the timing of the videos and the descriptions of the videos, that they likely are covering the same act or episode. The only issue being the video being turned off at some point in the middle of that episode. And so those are Counts Seven through Nine

and Counts Eleven and Twelve. I'm going to find that those are -- should be grouped together. And then there are others, however, where there is encounters on the same day where there's a significant temporal gap and the descriptions indicate there's a -- basically, a separate encounter that's occurring. And I think those are arguably in the same category or arguably are separate incidents. And so I do think there's a qualitative difference between Seven through Nine and Eleven and Twelve on the one hand and then I believe it's Counts Three and Four, Six through Ten, Eleven through Twelve, Sixteen to Eighteen, which are on the same days, but in some cases, they are a separate incident.

But again as the government has noted, it doesn't really matter. If there are at least five groups, the guidelines enhancements are the same. So again out of an abundance of caution in the absence of any case law establishing the events on the same day do not fall under the concept of a common scheme or plan. I'm going to limit the groups, the separate groups to the ones on different days. That still leads to ten groups out of 18, again the most conservative estimate possible. But I'll make that finding. And so under 3D1.4, there still are more than five groups and the maximum increase of five levels still applies.

1      So with that finding, the total offense level is
2  the same as it was in the original PSR, even though some
3  of these calculations are a little bit different.  The
4  overall offense level number is 54.  But because there's a
5  maximum in the guidelines of 43, the total offense level
6  is treated as 43.  The Criminal History Category is I.  So
7  the advisory guideline range would be life imprisonment,
8  but given the statutory maximums, there's effectively 360
9  months on or 30 years on each count and the guideline
10 range for supervised release is five years to life on each
11 count.  The guideline range for a fine I believe have been
12 calculated as 50,000 to 250,000 and the special assessment
13 is $1,800.  Any objections other than what's already been
14 stated to those calculations?
15          MS. O'MALLEY:  One moment, Your Honor.
16          (Pause.)
17          MS. O'MALLEY:  Your Honor, sorry.  I was just --
18 there was a change in the statute that -- and 18 United
19 States Code, Section 3014 that provided for an additional
20 $5,000 assessment for account in these types of cases.
21          THE COURT:  That did come up in the paperwork.
22 I didn't see it in the report though.  Was it --
23          MS. O'MALLEY:  Yeah.  I am not sure --
24          THE COURT:  -- addressed in your memo either?
25          MS. O'MALLEY:  I noted it in my -- I shouldn't

say I noted it in my papers.  I don't know.  I noted it in my notes last night when I was thinking about it.  But I'm not sure -- I can't remember the exact timeframe of when the statute passed and it is only applicable if the defendant is found not to be indigent and based on the presentence report, there's no indication of any actual money that the defendant has.  So I'm not sure that it would -- we would be able to apply it anyway if the defendant is --

THE COURT:  Right.  What's the statute cite for that again?

MS. O'MALLEY:  I believe it's 18 United States Code, Section 1034.  And I think it says when it passed, but -- it passed on May 29, 2015, which is in between Counts Two and Three.

THE COURT:  And what does it mean to say that beginning on the date of enactment and ending on September 30, 2019?  I guess it doesn't matter since that second date hasn't occurred yet.  Whether that's the offense conduct or something else.

MS. O'MALLEY:  There was a temporary statute that was passed until it is renewed.  The idea to collect additional funds for the courts and victims and such in these cases.  There has been a recent new restitution statute that's also passed in dates cases.

THE COURT:  So as you stated, it applies to any

non-indigent person.  So is it your position that it

should apply or not apply in this case?

                    MS. O'MALLEY:  Well, Your Honor, I don't have

any information to refute what's in the presentence report

that indicates he did have $150,000 in an account and then

his mother indicated that the bank account was empty.  I

have nothing to refute that.  So given that the

presentence report doesn't indicate any actual wealth, I'm

not sure that I, you know, could challenge indigency if

the defendant is claiming that he is indigent.  But I

would note that he has retained counsel.  But other than

that, I can't challenge it.

                    THE COURT:  Just going to the --

                    MS. O'MALLEY:  And I would just add, Your Honor,

at least the Court can take into account obviously future

ability to obtain wealth.  But my hope is the Court

applies the sentence the government is asking for.  The

only future ability to obtain wealth will be any work that

he does inside the Bureau of Prisons.

                    THE COURT:  Mr. Mebane, is it your view based on

your report that the defendant is indigent?

                    MR. MEBANE:  Yes, sir, Your Honor.  Other than

the possible money, but I believe it was for his mother or

for his retirement account.  I believe I captured that in

my report.

THE COURT: Well, but I mean we don't have -- we don't know what happened to the vehicle or the cash.

MR. MEBANE: No, sir. We do not have access to that.

THE COURT: Okay.

MR. MERCER: But that's the only asset that I was aware of at the time.

THE COURT: Okay. Mr. Mercer, do you have any information on what happened to the vehicle or the cash?

MR. MERCER: Well, a substantial portion of the cash ended up on -- in the hands of a casino in Anne Arundel County through no action of Mr. Thompson. The balance was for his legal fees. And I would suggest to the Court he has an inability to pay and the very modest amount that remains is for cost of things like transcripts and briefs. And so all that would happen with assessing fines is then he wouldn't be able to pay for transcripts and that would just sort of shift things around on the table.

But he is indigent. The vehicle he had was an old beat-up truck. I don't think it has any real market value. He doesn't have a retirement account or plan that we're aware of. And, you know, we are asking, of course, for no fine because we wouldn't want his -- we don't think

it's good penological sense to have a blanket floating
lien on any earnings as modest as they are while
incarcerated because of the need to have resources for
things like basic necessities, commissary, things of that
sort. So I don't think it would be reasonable to count
future jail earnings.

THE COURT: Well, I mean this is a different
story than the fine, which we'll get to. This is about
whether there's a requirement under the statute that he be
imposed this additional special assessment. And it seems
as if he is required to face this except if I find that
he's indigent. So that's really the question.

MR. MERCER: And, Your Honor, factually, he is
indigent and I haven't heard anything to the contrary.
And certainly coming in today, there was no contention
that he was non-indigent or I would have --

THE COURT: Well, but as Ms. O'Malley pointed
out, I mean most of our indigent defendants haven't
retained counsel. So that certainly -- and we don't know
what happened to this money. So there's a question there,
isn't there? I mean as opposed to an indigent defendant
who has qualified for appointed counsel and has had
appointed counsel.

MR. MERCER: Well, Your Honor, again if we had
been notified that his indigency status would be different

1    than what is indicated in the presentence report, we would

2    have been in a position to address that before Your Honor.

3            THE COURT:  That's a fair point.

4            MR. MERCER:  I certainly think that the

5    defendant using his available resources to retain counsel

6    doesn't mean he is indigent.  I mean if he had otherwise

7    qualified for court-appointed representation at the

8    beginning, the government would have borne the cost of

9    that.  But here he used his resources for his defense.

10    But only a portion of those resources.  The other portion

11    of his resources was in an unauthorized manner --

12            THE COURT:  Tell me more about that.  What do

13    you mean "unauthorized manner"?

14            MR. MERCER:  Well, he was locked up.

15            THE COURT:  Who took the money and who spent it?

16            MR. MERCER:  Your Honor, I'm a little reluctant

17    to dive into those facts other than to say that Mr.

18    Thompson was incarcerated in March of 2017.  And $70,000

19    went missing from his bank account after he was

20    incarcerated and had no access to that account.  And those

21    funds as near as we can tell were just completely

22    dissipated.  That's my reference to the casino.

23            But so there is, you know, I will represent to

24    the Court that the very modest amount that is remaining

25    that is available is dedicated for costs such as obtaining

transcripts, printing of briefs, things of that nature directly related to his legal proceedings.

THE COURT: So I guess what I'm not getting here is you're talking in vague terms as there is a -- there is an amount of money left, but somehow when probation interviewed him, the impression is there's no money. But you are saying there is. And even if it's earmarked for something else, why isn't that in the report? Why wasn't that disclosed? I mean if he has a bank account that has even like $3,000 in it to pay for transcripts, why wasn't that disclosed to probation?

MR. MERCER: Well, Your Honor, he doesn't have a bank account. There are --

THE COURT: You are saying it's now your money --

MR. MERCER: Right. It's --

THE COURT: -- in your client account.

MR. MERCER: It's escrowed funds for -- dedicated for costs.

THE COURT: I see.

MR. MERCER: So --

THE COURT: Would that include the special assessment of $1,800 that's sort of undisputed?

MR. MERCER: I'm sorry, Your Honor?

THE COURT: Would that include paying the

original special assessment of $1,800 that's undisputed?

     MR. MERCER:  No.  Because I think he legitimately qualifies.  He is indigent.

     THE COURT:  I don't think there's an exception for the $1,800, is there?

     MS. O'MALLEY:  No, there's not, Your Honor.

     THE COURT:  I don't think so.

     MR. MERCER:  Your Honor, to the extent there are any waivable fines or costs --

     THE COURT:  Right.

     MR. MERCER:  -- based on indigency, we're asking for the Court to waive those fines or costs and again I would have approached this matter differently.

     THE COURT:  I understand.  I think that's a fair point.  So where I'm going to leave it is probation has effectively found he's indigent.  There was no objection to that finding by the government.  There was no analysis, frankly, offered on this new enhancement and so because the state of the record at this point is that he is indigent and neither side has presented anything to refute that, I'm going to not apply the enhancement under Section 3014 or the enhanced special assessment.  So the special assessment will be $1,800.

     And I think I said other than any other objections we've already talked about for the guidelines,

1    is there anything else -- any other objections to the

2    guidelines or the calculations that I've just offered?

3           MS. O'MALLEY:  Not from the government, Your

4    Honor.

5           THE COURT:  Okay.  Then the last question I had

6    on the mechanics of it is under the PSR, it states that

7    under 18 USC, 3663(a), restitution in the amount --

8    restitution shall be ordered.  And you said you have no

9    information on that.  So I'm assuming that that's it or is

10   there something else that's forthcoming?

11          MS. O'MALLEY:  I don't anticipate receiving any

12   requests, Your Honor.

13          THE COURT:  Okay.  So we can just finalize the

14   judgment after today.

15          MS. O'MALLEY:  Yes, Your Honor.

16          THE COURT:  Okay.  Thank you.  So with all that

17   out of the way and with the guidelines being what they

18   were, at least in terms of the final numbers, even though

19   some of the intermediate calculations are slightly

20   different, I'll hear from the parties on the sentencing.

21          I usually would prefer unless someone suggests

22   otherwise that we have -- I think we have at least one

23   member of the public who would like to speak first, hear

24   from that person first, then hear from the government,

25   then the defense and then if he would like to, Mr.

Thompson.  So can we call forth the witness or the individual?

MS. O'MALLEY:  Yes, Your Honor.  And is it all right if she stands --

THE COURT:  Yes.  Definitely.  Good morning, ma'am.

THE WITNESS:  Do I --

THE COURT:  Just whatever you'd like me to hear.  You go ahead and take your time.

THE WITNESS:  My name is Brittany.  Growing up, you always heard of all these terrible things happening in the news or saw them in T.V. shows and movies.  You never in a million years think that this is going to happen to you or your child because you'll do anything and everything to make sure that it doesn't.  Unfortunately, I wasn't so lucky.  I placed my child in the hands of someone that I thought would always protect her and make sure nothing bad ever happened to her, but I couldn't have been more wrong.

Almost two years ago, I received a message telling me the F.B.I. was going around my old neighborhood showing my daughter's picture and trying to find her parents.  I honestly thought that it had to have been some sort of joke because there was no way the F.B.I. could have been looking for me or inquiring about my daughter,

but again I was wrong.

      After contacting the F.B.I., they insisted they meet with me immediately.  They told me that my child, my baby had been sexually assaulted by a man named Kyle Thompson.  They asked me if I knew anyone by that name and at first I said no, because it didn't register in my mind.  But then it dawned on me that my mother's boyfriend's name was Kyle Thompson.  I didn't know -- I don't know if I'll ever be able to put into words exactly how I felt in that moment.  It felt like my entire world had come crashing down around me and there was no way out.

      I thought I did everything to protect her.  I thought I could trust my own mother more than I could trust any daycare or friend.  To know that my own mother took my child to this man's house time and time again knowing what he was doing to her just makes me feel so disgusted inside.

      My mother was under strict rules to never take my child anywhere near that man because I had never met him and knew nothing about him.  But it's obvious that my rules and wishes meant nothing over what he asked of her.

      So many people have told me that I can't blame myself for what happened.  But I will blame myself until the day that I die.

      I was a fool to not dig deeper into the signs

that pointed to her being molested.  She was peeing the bed, having nightmares, lashing out and developed a stammer.  All things I never should have disregarded.  I feel like I failed her.

I cried numerous times a day for weeks after I found out.  I didn't know what to do or how to help her.  Every time I looked at her, I cried.

After the F.B.I. interviewed my daughter, she told me things that she remembered from the times when she was at Kyle's house and it broke me even more.  She doesn't remember everything.  And over time, I prayed that she forgets all of it ever happened.  I know that in the future, she may struggle with things and not know why, but I will be there for her every single time.

At the age of 6, she shows signs that I know are from trauma.  She is extremely shy and won't talk to anyone she doesn't know very well and acts like she's scared of everyone.  She gets terrified any time anyone raises their voice even in the slightest and cries asking for everyone to stop yelling.  She's terrified of getting in trouble even for the smallest things and I have to constantly remind her that it is something that she's not going to get in trouble for and that it is all right.

Talking about my feelings isn't something that comes easy for me.  I developed serious depression after I

found everything out.  I at first was in denial that I had
depression.  But then realized that I did in fact need
help getting out of the black hole that I felt like I was
in.

Fighting this depression is something I still
struggle with every single day.  There are days when I do
nothing but cry because the thought of all this still
kills me inside.  I have so many different emotions that I
go through.  But the one I think I struggle with most is
anger.  I'm angry at myself and I'm angry at Tracey, my
mother.  Tracey denied any involvement in this and claims
she had no idea.  But look where she is today.  She's
still standing by his side, defending him.

She has never once tried to reach out to me,
never tried to say she was sorry that she hurt me or S. in
any way.  Never once asked how my daughter was or how I
was.  She can't even look me in the eyes as we walk past
each other because she is that much of a coward.  Knowing
that my mother cared that little about my own daughter and
her own granddaughter sickens me.  How can anyone stand
behind and defend such a sick and disgusting human being.
I'm ashamed to even call her my mother and refuse to
because to me she is dead.

If the courts can't hold her accountable for the
role that I know she played in all this, then I hope that

Kyle be given nothing less than the maximum possible
sentencing.  I will never understand why any of this
happened and why this had to happen to my child.  But
through all of this, there's one thing that I do know.  He
didn't win.  I will spend the rest of my life working past
all this, but one thing is for sure.  I am stronger today
than I ever was.  That's it.

THE COURT:  Thank you very much, ma'am.

THE WITNESS:  Thank you.

THE COURT:  Thank you for coming here today.
And that's it for members of the public?  Is that right,
Ms. O'Malley?

MS. O'MALLEY:  Yes, Your Honor.

THE COURT:  Okay.  So I'll hear from the
government first then.

MS. O'MALLEY:  Thank you, Your Honor.

THE COURT:  And before I forget, if you can just
along the way help to clarify for me what your position is
on this -- the issue at the very back end regarding the --
whether the sentence should be deemed concurrent or
consecutive to at the anticipated sentence on the state
side?

MS. O'MALLEY:  Certainly, Your Honor.  I will
address that.

THE COURT:  Then we can deal with that at the

1   end.

2            MS. O'MALLEY:  I'll address that in my

3   presentation, Your Honor.

4            Your Honor, the nature and circumstances of this

5   offense amount to pure evil.  The defendant sexually

6   abused very young girls.  Girls who were still wearing

7   pull-ups and sucking on pacifiers and the defendant

8   recorded himself engaged in these heinous acts.  What is

9   even worse, the defendant live-streamed this abuse while

10  it was happening so the girls had to watch what was

11  happening to them.

12           There is no adjective strong enough to capture

13  the nature of this offense.  The defendant attempted to

14  and did anally and vaginally penetrate these little girls

15  with his fingers and with his penis.  The defendant bound

16  one of his victims with a bath robe tie so she could not

17  even move and forced his penis into her mouth.

18           The victims in this case are real little girls,

19  who have to spend the rest of their lives picking up the

20  pieces of the damage that has been done to them.  The

21  little girls in this case, Your Honor, are O., S., and C.

22  These are real little girls that forever have to live with

23  this horror.

24           The defendant threw O. across the bed, slapped

25  her and ignored her cries of pain.  In fact the defendant

clearly took pleasure in the pain of these little girls.
I will never forget the sound of O.'s voice calling out
for her mommy only to be told in a cold response of the
defendant to shut up and telling her that her mommy cannot
save her now as he held her down and anally penetrated
her.

The Court has detailed descriptions of the 18
videos of the defendant brutally sexually abusing little
girls.  The videos range in length from just a couple of
minutes to 10, 15, 20, and 25 minutes long.  There is
almost no worst imaginable offense that the horror that
these little girls endured.  Thanks to one brave woman who
came forward to law enforcement to report the defendant,
this abuse stopped.  It is unclear how much longer these
little girls would have had to endure abuse and how many
more little girls would have been caused pain were it not
for this brave woman, a woman who the defendant decided to
show these videos one Saturday night as she came forward
to the FBI and reported what she had seen.

The FBI and Montgomery County Police learned
about this case because of her and immediately acted.  She
was even able to tell them that he hid the SD card with
these videos in a can with a false bottom, a cleaning can
in his laundry room.

This woman came forward despite great fear for

her own safety and we are grateful because she saved these little girls.

The tragedy of this offense has forever damaged these precious little girls and their families. The mothers of these little girls expressed the pain that they have been going through. You heard it from one of them today and I know you read it in their victim impact statements. O.'s mother noted that no little girl should have to go through what O. has gone through. C.'s mother expressed that she's afraid that everyone she comes in contact with might hurt her and her children. That she will have to forever live with the guilt of not being able to protect her daughter from this horrible person. S.'s mother eloquently explained her thoughts in her own words to you. So I won't repeat them here.

In long term, these little girls will likely struggle in school, struggle to maintain healthy relationships with males and be more prone to depression and suicide. These little girls have been handed a life sentence as a result of the defendant's actions and the defendant deserves nothing less than the maximum sentence as a result.

In terms of the history and characteristics of the defendant, the defendant is a dangerous pedophile who cannot seem to help but seek out and sexually abuse little

girls.  As the Court is aware from the motions hearings in this case, the defendant took another little girl into the woods behind his house and started groping her a few years prior to the incidents in this case.  The abuse was not discovered until the little girl reported to her school counselor.  And even then, the little girl could not provide information on the identity of the defendant at the time.  It was only after this abuse was discovered that all the pieces could be put together.

In looking at the history and characteristics of the defendant, the Court should take note that the defendant has never been able to acknowledge his paternity of one of these victims, despite the fact that he would allow the victim to call him daddy and he abused her repeatedly.  The defendant has never shown an ounce of remorse for the torture he put these little girls through and the lifetime of pain that they have to look forward to.

One other really sad part of this case that's referenced in the PSR is that the defendant's father committed suicide after learning what the defendant did in this case.  The defendant's father never even knew he had grandchildren, much less that his son was sexually abusing one of them and unfortunately, it was too much for him to bear.

1      In terms of the seriousness of the offense and
2   just punishment and avoiding unwarranted sentencing
3   disparities, the only just punishment for such a depraved
4   crime against children is the absolute maximum sentence
5   allowed by law.  And that's why, Your Honor, I ask you to
6   impose the maximum of 30 years per count for 540 years
7   total.  The defendant sexually abused little girls between
8   the ages of 2 and 4 years old for his own sexual
9   satisfaction and sadistic tendencies.  Nothing less than a
10  sentence that keeps the defendant out of society forever
11  is sufficient in this case.

12      The government has provided numerous examples, I
13  believe there are at least 19 cases and I have hundreds
14  more, where courts around the country have imposed
15  sentences over a hundred years.  Those courts, those
16  decisions have been upheld by appellate courts over and
17  over again as both procedurally and substantively
18  reasonable.

19      In this case, the defendant in the last-minute
20  filing after the court closed at 3:00 yesterday tried to
21  claim that his sentence was not procedurally reasonable
22  that I'm asking for 540 years because the life expectancy
23  has been calculated to be 470 months in certain cases in
24  the Eighth Circuit.  I wanted to distinguish for the Court
25  a couple of things about that line of argument.

First, the cases cited in -- the Eighth Circuit cases cited by the defendant have to do with calculation of a 5K1.1 reduction and the courts made clear that in order to apply a 25% reduction to the sentence, they have to have a starting point of months to reduce from. You can't take 25% of life and reduce it and come up with any actual number for a sentence. So those cases were in the 5K line of cases.

I would also note that there were two different cases in the Eighth Circuit after those cases, which were United States versus Demeyer, which is 665 F.3rd 1374 and United States versus Betcher, which is 534 F.3rd 820. Both of those upheld sentences where the guidelines were life as we have here. But the guideline -- the sentence itself was far more than a life expectancy. In Demeyer, the sentence was 120 years and was affirmed and in Betcher, the sentence was 750 years and was affirmed. That's the same court where the cases the defendant cited come from.

The Second Circuit's decision in United States versus Howells has a nice discussion of the procedurally reasonable challenge similar to the one the defendant is making here and it notes that where a defendant's total punishment is life imprisonment, a term of years longer than his life is harmless because no defendant can be

incarcerated beyond his lifetime anyway.  And that court
actually explains that if the Court were to take into
account life expectancy, you could actually give the
defendant a windfall because if he were to live more than
his life expectancy, he would end up serving less than a
life sentence.

In this case, we ask that the sentence be in
line with sentences around the country for similar conduct
than we have here, which is far more than a hundred years,
which is the maximum on every count.  That's the only
sentence that would be just.

THE COURT:  The maximum is 30 on each count.
Right?

MS. O'MALLEY:  The maximum is 30 on each count.
So if my math is correct, I believe that's 540 years.

THE COURT:  Right.  Let me ask this.  I mean I
think you've done a good job showing with your submission
that perhaps based on this rationale that all these higher
numbers are in fact basically the equivalent of a life
sentence.  That there is -- they are going to be deemed
reasonable regardless of what that high number is.  But
how does one square the particular number, 540, with the
general guidance and actual requirement the Court impose a
sentence that's sufficient, but not greater than necessary
to meet the purposes of sentencing?  Why is 540 necessary

1    as opposed to 440 or 340 or even 140?

2            MS. O'MALLEY:  Well, I think, Your Honor,

3    the -- what is necessary to fully account for the other

4    factors in 3553 is the maximum punishment on each count

5    and that's how you get to the 540 number.  Once you get

6    beyond a hundred, obviously every additional year is sort

7    of an academic exercise.

8            THE COURT:  Well, which part of 3553(a) are you

9    asking me to rely on saying that even though as a

10   practical matter, it doesn't make a difference, this

11   number, 540, is necessary versus some lower number?

12           MS. O'MALLEY:  Well, in particular, I would ask

13   that you look at the need to have a sentence that reflects

14   the seriousness of the offense and that you also consider

15   the nature and circumstances of the offense.

16           THE COURT:  Okay.

17           MS. O'MALLEY:  And those two coupled together

18   justify a maximum sentence as to each count because each

19   count caused substantial harm to the victims and each

20   count should be punished accordingly.

21           THE COURT:  Okay.

22           MS. O'MALLEY:  And I would note that in terms

23   of -- and I'll go back to the seriousness of the offense

24   and just punishment.  Those are reasons why I think there

25   needs to be a sentence that absolutely ensures that he

never gets out of prison ever again.  And again, he's
going to get the benefit of whenever he dies, he is not
going to serve out the rest of his term obviously.  So
whatever number, we just want to make sure that there is
no possibility of the defendant ever being released again.

In terms of seriousness and just punishment, the
only just punishment for the depraved conduct that we have
here is 540 years.  Your Honor, I've done a lot of these
cases over eight years.  I have never seen anything close
to this.  Never.  This is the most egregious case I've
ever had.  I've had cases that got 75 years.  We've had
cases in our office that got 120 years.  They pale in
comparison to the conduct that is at issue here and that's
why I believe 540 years is necessary to reflect the
seriousness of what we're dealing with here.

And again I've given the Court I hope great
comfort that the Court's finding of a 540-year sentence
would be upheld on appeal given that it has been upheld.
A hundred-twenty-year sentence which is the maximum
sentence has been upheld by the Fourth Circuit when there
were just four counts.  Courts around the country have
upheld hundreds of years sentences.

In terms of deterrence, I think the Court should
be sending a message generally to the world and to any
particular defendants out there who might even think about

touching a child that there are severe consequences that
ensure that you will never get out of prison if you do
this to a child.  If it keeps even one person out there
from touching a child because they read about this
sentence, then I believe that one child being saved is
worth it.

In terms of specific deterrence, there is
nothing that is going to deter this defendant.  He has
shown a pattern of repeated abuse of children for years.
He cannot be near children.  He cannot be in society.  And
he must therefore be separated from society and spend his
life in prison.

I would also note that protection of the public
warrants a sentence of 540 years.  The only way to protect
the public is to keep the defendant out of the public.  I
therefore ask the Court to sentence the defendant to every
second of the 540 years in prison that is available based
on the 18 counts of conviction for production of child
pornography.  I cannot imagine a defendant more deserving
of such a sentence, Your Honor.

Now in terms of consecutive versus concurrent,
if the -- I have thought about this a lot and I struggle
to know the right answer because if the Court imposes the
sentence which the government is asking, it is a
completely academic question because there will never be a

1  state sentence to be served.  It will be in effect

2  concurrent in that sense because he will never make his

3  way over to Montgomery County.

4          THE COURT:  Can you just clarify for me and

5  perhaps because of some of the earlier discussions in this

6  case, I just want to make sure I'm not missing something

7  here.  Does the concurrent/consecutive have any impact on

8  whether he serves his sentence federally or in the state

9  side?

10          MS. O'MALLEY:  No, Your Honor.  So we have --

11  and actually, that brings the point I want to address here

12  in terms of -- so we have agreed from executive to

13  executive function to transfer the jurisdiction of the

14  defendant from state custody to federal custody.  And so

15  he is now in federal custody.  Primary jurisdiction has

16  been transferred.  So he will remain in federal custody

17  and serve his federal sentence first.  That would not have

18  happened if we had not done that transfer of jurisdiction

19  document.  Without that, we can't do anything and he would

20  be in state custody for the length of whatever sentence he

21  received there even though the sentencing is first.

22          THE COURT:  So -- okay.  So with that transfer,

23  which you said is basically operational on its own -- I

24  think you've asked me to make it part of the judgment

25  which I'm certainly happy to do -- whatever time he gets,

he'll serve on the federal side first.  And then from the
state side -- I guess, you know, I looked at the law on
this recently and I guess what I haven't quite figured out
and I'm not sure the cases really make it clear is what
does this do to the options available to the state
sentencing judge?  So if I were to conclude that this
should run -- well, I mean what does it do to that judge's
options, given that it seems a little bit unusual?  I mean
it's not unusual because it's obviously part of what the
courts have suggested or in fact required at times that we
do.

          But it's one thing to say we know that there's a
state sentence out there and we're going to make it
consecutive or concurrent.  But here, that sentence hasn't
occurred yet.  I know that the law says that we -- and the
guidelines also point out that we should be making this
determination.  But to some degree, it's one thing to say
I think they should run it together or separate.  But what
if the state judge disagrees?  Do they still have the
option to do something different?

          MS. O'MALLEY:  My reading of the case law, Your
Honor, is that what you determine is going to control.  So
if you determine that the sentences run concurrent, it
doesn't really matter if the state judge then says the
sentences will run consecutive because your finding will

trump that.  So they will be -- unfortunately, it does
have an impact on the state court in that way and my
reading of the very recent case that just came out in
January, I think it's Lynn if I'm not mistaken, in a case
that you have to make a finding.  So you can't sort of
defer and leave it to the future state judge to decide.

          THE COURT:  I just looked at that yesterday.  I
don't know if I got that out of it.  I think it certainly
said that you have the option --

          MS. O'MALLEY:  Fair enough.

          THE COURT:  -- to make either finding.  It also
seemed as if in that case and other cases, some of the
judges and this is part of my problem with it is it's sort
of hard to make -- maybe in this case, it might not make a
difference, but in general it seems like it would be hard
to make a determination not knowing what the state is
going to do and it seems like a strange doctrine to me,
frankly, but --

          MS. O'MALLEY:  I don't disagree with you there,
Your Honor, and all I can put forward to you is for all of
the factors that I just outlined under 3553, I think the
Court would be well within its bounds to make it
consecutive for looking at the factors under 3553.  I
would note for the Court's consideration obviously we are
talking about the same conduct.  So that that certainly is

something --

THE COURT:  Is there any conduct outside of it in the state case?  I haven't focused on what's going on there.  Are there other victims or other --

MS. O'MALLEY:  One moment, Your Honor.  Court's indulgence one moment.

THE COURT:  Yes.

(Pause.)

MS. O'MALLEY:  Your Honor, I'm sorry.  I was clarifying with the state prosecutor who is actually in the courtroom.  The counts, the ten counts that we have in the state case are based on the same three victims in the same acts.

THE COURT:  And what is the charge over there?  Like sexual assault --

MS. O'MALLEY:  There are several different ones.  There is sexual abuse of a minor and I'd have to go back and look at the specific ones.  They're all laid out in the I believe in the presentence report.  I know the most serious charge is sexual abuse of a minor.  Paragraph 29 in the presentence report, Your Honor, lays out the charges.

THE COURT:  Oh, right.  Of course.  Yes.

MS. O'MALLEY:  Oh, page 29.  I apologize.  Thanks to Mr. Mebane.  So sexual abuse of a minor, sex

offense, third degree, attempted first-degree rape, attempted second-degree rape.

THE COURT:  Okay.  Okay.  I think I understand. But I think you agree, am I reading this correctly that starting with the guidelines itself, but then also it seems as if the general starting point is concurrent, but consecutive is an option as opposed to the other way around?

MS. O'MALLEY:  I think that's right, Your Honor. I wouldn't disagree with that reading of the guidelines.

THE COURT:  Okay.  Thank you.

MS. O'MALLEY:  Thank you, Your Honor.

THE COURT:  Mr. Mercer, your turn.

MR. MERCER:  Thank you.  Your Honor, if I could just address the concurrent/consecutive first since that was just being discussed?

THE COURT:  Okay.

MR. MERCER:  We are asking for that this Court impose a concurrent sentence to any anticipated state sentence.  And we believe that's procedurally the appropriate way to proceed to ensure that there is no unnecessary or unintended interference with the intent of the parties for Mr. Thompson to serve out his federal sentence in a Bureau of Prisons facility that provides sexual offender treatment.  And here is why we're

concerned that if this Court imposes a consecutive
sentence to the yet to be imposed state sentence, that
there could be an unnecessary or unintended consequence.

To begin first, this Court is now today the
court with primary jurisdiction, which means that the
state court is effectively the court in a position to
decide whether the sentence on the state side is
concurrent or consecutive to the federal sentence.  And,
Your Honor, I'll note that on the state side, Mr. Thompson
is facing three possible life terms plus 145 years.  What
I'm concerned about is that if this Court makes a sentence
consecutive to a yet to be imposed state sentence, what
may happen and I believe I provided the citation under 18
USC, 3621(b) is if the Bureau of Prisons then receives the
paperwork and sees that the federal sentence is to run
consecutive to a sentence that I think we can reasonably
expect is going to be severe on the state side, then the
Bureau of Prisons as I read the statute, the plain
language of the statute would have the ability to
designate a state facility as the place where Mr. Thompson
would serve out his sentence.  And since the federal court
had imposed a consecutive to the state sentence, that may
be how Bureau of Prisons interprets its statutory --

THE COURT:  Which part of that statute are you
or that provision are you referring to?

MR. MERCER:  So 3621(b) and it says that "the Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau whether maintained by the federal government or otherwise and whether within or without the judicial district in which the person was convicted."

And in researching this issue, Your Honor, my understanding is that there are instances where the Bureau of Prisons may designate a state facility to serve out a sentence.  But, of course, if this Court makes a sentence consecutive to a state-imposed sentence, then Mr. Thompson is in federal custody, but not serving a federal sentence.  And I'm not sure what -- if this is a sort of an academic decision as the government characterizes it, I'm not sure why it would be important to make this sentence consecutive to the state sentence given that that creates the potential for some unintended consequence.

THE COURT:  I mean I get what you're saying by that line being giving the Bureau of Prisons enough authority that they perhaps could say someone who is in state custody or could be there, that's where they could serve their sentence.  But why is that more of a problem if it's consecutive rather than concurrent?

MR. MERCER:  Well, because --

        THE COURT:  I mean it seems like you're saying
that even though we could all decide what we think should
happen, they could still make a determination whether for
space reasons or otherwise to --

        MR. MERCER:  And --

        THE COURT:  So why is the concurrent a better
bet for that outcome, which I think I understood was
something that was bargained for in the state plea
agreement, was it, to at least make efforts to get him
into the federal system for this?

        MR. MERCER:  Yes.

        MS. O'MALLEY:  Yes, Your Honor.  That's what I
did want to note.  We're talking about this as that doing
that transfer of jurisdiction was part of the --

        THE COURT:  Part of the deal.

        MS. O'MALLEY:  -- inducement for him to plead to
the state charges.

        THE COURT:  Okay.

        MR. MERCER:  And, Your Honor, what I can just
submit to the Court on -- to that point is I would far
rather be in a situation with the Bureau of Prisons where
Mr. Thompson is serving a federal sentence and the primary
jurisdiction is with the federal government than in a
situation where primary jurisdiction is with the federal

government, but the federal sentence doesn't begin to run until the state sentence is served. And if that state sentence is, for example, a life sentence, I think that just invites precisely the type of complication that we're trying to avoid just by -- and not for any solid penological purpose.

THE COURT: I understand.

MR. MERCER: Now, Your Honor, the acts here are profoundly disturbing. And we do not dispute the horrific nature of these acts. But it is not an act that is going to serve the sentence. It's Kyle Thompson. And when Your Honor asked why is the sentence of 540 years or over 6,000 months, which greatly exceeds his life expectancy not greater than necessary to serve the purposes of sentencing, the response was to focus on the act. This is a sentencing of Mr. Thompson, the person. Ms. Raquin and I have had the honor of representing Mr. Thompson in his federal and state cases and we'll continue to work with him.

And as Your Honor may recognize in a rather poignant letter from Mr. Thompson's mother, he is a person and he's a person that will receive punishment from the Court. He's a person that we're also asking the Court to recommend treatment for, which the Court may do under 3582(a) and 3621(b) to ensure that he receives sexual

offender treatment.  The recommended facility would be the Bureau of Prisons in Tucson, Arizona.  What we can say, Your Honor, that is evidence based is that the generally accepted peer-reviewed studies, which are even discussed by the U.S. Sentencing Commission does show that treatment can be effective and that recidivism rates are relatively lower.

Now I understand you always have to be cautious in looking at these numbers, but Mr. Thompson, the person, can benefit from this treatment and that furthers an important purpose of sentencing in a society that we all hope is maturing and evolving.

We are asking Your Honor for a sentence within the guidelines.  The core of the question is what is life? And we believe that life doesn't mean 540 years or 6,000-plus months.  We don't believe that that sends any rational message.  And we believe that that is contrary to the very framework of the sentencing guidelines which stop at 43, life.  Life means life.  Life doesn't mean 540 years or 6,000 months.  Now why does that matter?  It matters in considering issues like conditions of confinement and whether a sentence of 540 years or 6,000-plus months could become a proxy for less treatment or placement or programming.

In other words, if the sentence -- if the

guidelines are life and the commandment of the guidelines
is a sentence not greater than necessary and what we end
up with is a sentence with the number that seems more like
it's searching for a headline than serving any penological
purpose, that superfluous nonsensical number can impact on
conditions of confinement in ways that may not be fully
understood or contemplated now because at 33, there are
decades of his life ahead.

So, Your Honor, our request, our imploREMENT to
the Court is to view a sentence within the guidelines that
life means life.  It doesn't mean a much greater number
and that it matters.  We ask for the recommendation to the
type of facility we've described --

THE COURT:  What specifically would you want the
recommendation to say?

MR. MERCER:  That he be recommended -- that the
Court designate the type of facility under 18 USC, 3582(a)
and 18 USC, 3621(b) that provides sexual offender
treatment programming in the Bureau of Prisons and that
may further designate as I understand it the B.O.P. in
Tucson, Arizona as the facility where such treatment is
provided.

THE COURT:  You're saying that's his preferred
location or the only one that does this?

MR. MERCER:  I'll defer to the government on

this, Your Honor, but I understand it is the one Bureau of Prison that is specifically designated for these types of offenders.

THE COURT: Okay.

MR. MERCER: And we would ask for a concurrent sentence to the anticipated state sentence and I believe we've already covered the fines and costs that can be waived based on indigency, which we would ask for Your Honor.

THE COURT: Okay. Ms. O'Malley, you want to make a point?

MS. O'MALLEY: Just on the designation, Your Honor. I would ask that the Court make it clear that it be a facility that has sex offender management and treatment. Sex offender management programs are different than treatment programs and are necessary for a defendant like this because it includes further monitoring by the Bureau of Prisons of individuals convicted of these types of offenses. And there are more than one facility in the country. There's at least four that I'm aware of. There is Butner, Devens, Petersburg and I believe Arizona is a place that a lot of defendants in these cases do get sent. So I would defer to the Bureau of Prisons on that, but I think paramount is that it be a sex offender management and treatment program.

THE COURT:  Any issues with that, Mr. Mercer?

MR. MERCER:  No, Your Honor.  In fact I would adopt that that -- because I think under the First Step Act, the Bureau of Prisons would look for the closest facility that would provide this level of management and treatment, which may be the North Carolina facility.

THE COURT:  So do you want me to recommend any particular facility or just the closest one that provides sex offender management and treatment?

MR. MERCER:  The North Carolina facility, Your Honor.

THE COURT:  Butner?  Okay.

MR. MERCER:  Yeah.

THE COURT:  Anything else you'd like to add, Mr. Mercer?

MR. MERCER:  No, Your Honor.  Thank you.

THE COURT:  Mr. Thompson, you have the opportunity if you would like to to make a statement before the sentence?

MR. MERCER:  Your Honor, after consulting with counsel, Mr. Thompson in light of his appeals issues has decided to not offer any allocution at this time.

THE COURT:  Okay.  Thank you.

(Bench conference:)

(It is the policy of this court that every

1    guilty plea and sentencing proceeding include a bench

2    conference concerning whether the defendant is or is not

3    cooperating.)

4         (In open court:)

5         THE COURT:  In considering the appropriate

6    sentence for Mr. Thompson, I have considered the advisory

7    guideline range, which is the statutory maximum of 30

8    years on each count.  I've also considered all of the

9    factors in 18 USC, Section 3553(a) including the nature

10   and circumstances of the offense and history and

11   characteristics of the defendant, the need to meet the

12   purposes of sentencing and the need to avoid unwarranted

13   disparities among similar defendants.  I've also

14   considered Congress' direction that the sentence imposed

15   be sufficient, but not greater than necessary to comply

16   with the purposes of sentencing.  Although the maximum on

17   each count is 30 years, under Guideline Section 5G1.2(d),

18   the Court may sentence -- run sentences consecutively to

19   the extent necessary to produce a combined sentence equal

20   to the total punishment that is warranted.  I'll discuss

21   some, but not all these factors in detail.

22        First, on the nature and circumstances of the

23   offense, these crimes were absolutely horrific,

24   unspeakable crimes.  The defendant repeatedly produced

25   child pornography in the form of videos that he made of

himself engaged in disgusting sex acts with little girls
between two and four years old.  One of these children,
the most frequent victim was his daughter.  These acts
included oral sex and anal sex and at times caused severe
pain to the victims.  He also used physical violence
against them and verbal abuse, including tying -- and also
tied up victims on occasion.  At one point when one of the
girls cried out "I want my mommy," he responded by saying
"your mommy can't save you now."  The videos are so
horrible that anyone who saw even a part of them in the
courtroom whether the judge, the jury or anyone else was
profoundly affected and disturbed.

         The harm caused by these crimes is too severe to
contemplate.  He physically harmed and abused little girls
who were so young that one was wearing pull-ups in the
video, another had a pacifier, another was wearing footed
pajamas.  These girls had their childhoods taken away from
them before they even entered elementary school.  The harm
included not only the physical trauma of the sex acts, but
a long lasting emotional trauma that these girls and their
families will live with forever.  One cannot imagine a
more heinous crime than the offenses committed by this
defendant.

         As for the history and characteristics of the
defendant, Mr. Thompson has no criminal record.  But nor

does he have anything in his history that would provide any explanation for this conduct. There's no sign of any remorse for this conduct. There's no evidence that he has been diagnosed with any mental health disorder that would explain this evil conduct.

Given these factors, a 30-year sentence which is the guideline sentence for any one count is absolutely warranted. Even without the guidelines calculation stating that but for the statutory maximum, the guidelines sentence would be life imprisonment. The Court finds that an overall sentence amounting to life is warranted. These crimes are so horrific. The victims were so vulnerable and the harm was so frequent and repeated that such a sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment. There is also need to provide adequate deterrence to criminal conduct by others and to the defendant. Most importantly, a life sentence is needed to protect the public from further crimes by this defendant. He must never be allowed to be anywhere near children and such a sentence would lead to that result.

As for what the exact sentence should be, the government asks for the absolute maximum, 18 consecutive 30-year sentences for a total of 540 years or 6,480 months. Such a sentence as opposed to any other sentence

above say 75 years does not practically change the result on how much time the defendant will serve.  But the government is correct that an extremely high sentence has some rationale in the form of general deterrence to others and to reflect society's strongest possible condemnation of the offense, to reflect the seriousness of the offense. The Court understands the impulse and shares the goal of sending the strongest possible message to deter others and to speak loudly and clearly that we as a people condemn this type of offense above almost every other kind.

At the same time, justice is better achieved not by an instinctive reflexive action of striking as hard a blow as possible, to take out our hurt and frustration at this crime by meting out as much punishment as possible, simply because we can.  The instruction to courts to impose a sentence sufficient, but not greater than necessary to meet the purposes of sentencing is not served by that impulse or by a 540-year sentence.  Our system of justice requires that we also weigh the specific facts of the offense.  And it's certainly clear as I stated earlier that any one episode of this offense is worthy of the 30-year sentence and that they are separate offenses and, therefore, stacking these 30-year sentences on top of each other is warranted.

But as I had concluded earlier, certain offenses

were properly grouped because they occurred on the same day and more specifically some were part of the exact same encounter.  A consideration of the video shows that at least three different occasions, multiple videos occurred within minutes of each other during the same encounter.  And the Court concludes that it would not be just just to add another 30 years for each of these counts because -- just because in some instances the video was turned off and then turned on again.  We could do so.  And it would not be unjust to do so in an absolute sense.  But where in reality there were 14 different episodes on which there are videos made, that in my view would not be just and would simply reflect a rush to inflict as much pain as possible and I don't believe that our system of justice is designed for that.

Whether, it's the Eighth Amendment or otherwise, we as a justice system put limits on what we do.  This, of course, goes nowhere near that limit.  But we put limits on ourselves because we understand that this is not -- we as a society do not engage in mob justice.  We engage in thoughtful, careful justice under due process of law.  And so I don't believe that adding those extra years is warranted in this situation.

Nevertheless, as I stated earlier, I do belief a sentence that imposes an amount of time that is clearly

more than a life sentence serves a purpose within the guidelines of sending a message of condemnation in terms of reflecting the seriousness of the offense and also in providing a measure of deterrence to others.

So I will sentence the defendant to a term of imprisonment of 420 years, which is 5,040 months reflecting 30 years for each of the encounters in this set of crimes. That sentence more than meets the purposes of sentencing including the public from -- protecting the public and reflecting the seriousness of the offense, but it is not greater than necessary to do so. With that, I'm going to impose the sentence. Mr. Thompson, if you could please stand?

In the case of United States versus Thompson, the Court sentences the defendant as follows: On Counts One through Eighteen, production of child pornography, the Court sentences you to a term of imprisonment of 420 years or 5,040 months. In total, that is 360 months on each count or 30 years on each count. These terms of imprisonment will run consecutively except the sentences on Counts Seven, Eight and Nine will run concurrently with each other, the sentences on Counts Eleven and Twelve will run concurrently with each other and the sentences on Counts Sixteen and Seventeen will run concurrently with each other for a total of 420 years or 5,040 months.

1    For each count, the Court also sentences you to
2 a lifetime term of supervised release.  All terms of
3 supervised release will run concurrently to each other.
4    In addition to the standard and statutory
5 conditions of supervised release, you will be required to
6 follow the following special conditions of supervised
7 release:  That the periodic drug testing mandated by the
8 Violent Crime Control and Law Enforcement Act of 1994 is
9 suspended as you pose a low risk of substance abuse.  That
10 you must not communicate or otherwise interact with the
11 victims in this case, either directly or through someone
12 else, without first obtaining the permission of the
13 probation officer.  You must have no direct contact with
14 any child you know or reasonably should know to be under
15 the age of 18 including your own children without the
16 permission of the probation officer.  If you do have any
17 direct contact with any child you know or reasonably
18 should know is under 18, including your own children,
19 without the permission of probation officer, you must
20 report that contact to the probation officer within 24
21 hours.  And direct contact includes written communication,
22 in-person communication or physical contact.  It does not
23 include incidental contact during ordinary daily
24 activities in public places.
25    You shall not rent or use a post office box or

```
 1   storage facility without prior approval from the probation
 2   officer.  And if approved, any changes must be reported 72
 3   hours in advance.  You shall permit the probation officer
 4   to conduct random inspections of any approved storage
 5   facility.
 6            You must not go to or remain at any place where
 7   you know children under the age of 18 are likely to be
 8   including parks, schools, playgrounds and childcare
 9   facilities.  You must participate in a sex offender
10   specific treatment program and follow the rules and
11   regulations of that program.  The probation officer will
12   supervise your participation in the program.
13            You must not view or possess any visual
14   depiction including any photograph, film, video, picture
15   or computer or computer-generated image or picture whether
16   made or produced by electronic, mechanical or other means
17   of sexually-explicit conduct.
18            You must not view or possess any visual
19   depiction including any photograph, film, video, picture
20   or computer or computer-generated image or picture whether
21   made or produced by electronic or mechanical or other
22   means of sexually explicit conduct that would compromise
23   your sex offense specific treatment.
24            You must submit your person, property, house,
25   residence, vehicles, papers and computers, other
```

electronic communications or data storage devices or media or office to a search conducted by the probation officer. Failure to submit to such a search may be grounds for revocation of release.  You must warn any other occupants that the premises may be subject to searches pursuant to this condition and the probation officer may conduct the search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of the violation.  Any search must be conducted at a reasonable time and in a reasonable manner.  You must pay any outstanding restitution and you must also pay any outstanding special assessment.

I will make the recommendation to the Bureau of Prisons that you be designated to FCI Butner or to another facility that has sex offender management and treatment program and that you be enrolled in those programs.  I will impose no fine as based on lack of ability to pay. You are required to pay the special assessment of $1,800. That's $100 for each count.

Under Guideline 5G1.3(c), I will recommend that the sentences run concurrently to any anticipated sentence in the state offense reference in paragraph 182 of the presentence report.  Based on the sentence imposed here, I see no value in departing from the standard of concurrent

sentences in that situation.

I will include the transfer of jurisdiction order in the judgment as requested and I believe that completes the specifics of the sentence.

Now, Mr. Thompson, I do want to say a few words to you. Your crimes were among the most heinous that we face in our society. You harmed the most vulnerable members of your society, young children. You committed unspeakable, disgusting and repulsive acts against them and you stole their innocence and childhood and caused a lifetime of pain. The fact that one of them was your daughter makes this crime even all the more revolting.

You may have thought that since the main victim in this was your child, you could get away with this, particularly given that one of the victim's grandmothers appears to have perversely supported you in this way, even enabled you and perhaps that in and of itself may be a crime.

But these children were never actually alone. A brave individual came forward and reported this conduct and law enforcement investigated.

As you know, the victims' mothers have now stepped forward to give their voice to their daughters' pain and their own shared pain as you heard today as well as was presented in victim impact letters.

And we as a community, we as a society, as a country have always stood with these children and stand with them now because these little girls, all little girls and boys in our community are our children, too.  We are all our brother's keepers, our sister' keepers, our son's keepers and our daughter's keepers.  We rise and fall as one community, as one nation.

                And when someone engages in evil against our children, we must respond.  We do so not through rough justice or retaliation.  We do so through our justice system, with due process of law, with a fair trial before a jury of your peers.  And having gone through that, the jury spoke loud and clear with its verdict.

                And as the representative of our system of justice today, I tell you in no uncertain terms that your actions were evil, vile and despicable and can never be tolerated in America or anywhere in the world.  As a result, you will spend the rest of your life in prison where you deserve to be.

                If there was a higher punishment that we could offer, we likely would impose that as well.  But that is all that we are empowered on this earth to impose.  So that is the sentence that you will serve.  With that, you may be seated.

                Mr. Thompson, you generally have the right to

appeal your conviction and sentence subject to the waivers
that you -- any waivers you may have made in the plea
agreement.  If there's a basis to appeal and you wish to
do so, you must file the notice of appeal within 14 days
of the entry of judgment.

        If you request, the clerk will prepare and file
a notice of appeal on your behalf.  And if you cannot
afford to pay the cost of appeal or for an appellate
counsel, you can apply to have the Court waive the filing
fee and appoint counsel to represent you on the appeal.

        Is there anything further we need to discuss
today from either side?

        MS. O'MALLEY:  Not from the government, Your
Honor.

        THE COURT:  Anything from the defense?

        MR. MERCER:  No, Your Honor.

        THE COURT:  I do want to thank both the victim's
mother who spoke today.  I understand how difficult that
was.  But to participate in this proceedings in this way
was very meaningful.

        I also want to thank the other members of the
public who have come today.  As I stated, this is -- part
of the -- one of the hallmarks of our justice system is
that it's not simply an exercise by judges and lawyers.
But the public participates whether in the open trials and

1    proceedings we have, whether through the jury system that

2    was employed in this case or simply by having members of

3    the public bear witness to our events.  And so your

4    presence is very meaningful and I thank you for that.

5             (Proceedings concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          CERTIFICATE OF REPORTER

2

3          I, Lisa K. Bankins, an Official Court Reporter

4    for the United States District Court for the District of

5    Maryland, do hereby certify that I reported, by machine

6    shorthand, in my official capacity, the proceedings had

7    and testimony adduced upon the sentencing in the case of

8    the United States of America versus Kyle Stephen Thompson,

9    Criminal Action Number TDC-17-00195, in said court on the

10   30th day of January, 2019.

11          I further certify that the foregoing 84 pages

12   constitute the official transcript of said proceedings, as

13   taken from my machine shorthand notes, together with the

14   backup tape of said proceedings to the best of my ability.

15          In witness whereof, I have hereto subscribed my

16   name, this 2nd day of April, 2019.

17

18

19                              Lisa K. Bankins

20                              Lisa K. Bankins
                                Official Court Reporter
21

22

23

24

25

**MR. BALDWIN: [9]** 25/12 25/19 25/21 25/24 26/6 26/9 26/12 26/14 26/17
**MR. MEBANE: [2]** 37/22 38/3
**MR. MERCER: [67]** 2/10 3/3 3/9 3/13 4/7 4/14 4/21 5/1 5/14 5/16 5/22 5/24 6/3 7/5 7/21 8/2 8/4 9/2 9/20 9/24 10/4 10/24 11/5 11/8 11/23 12/9 12/12 12/14 14/2 14/5 14/15 16/8 17/24 27/9 27/23 38/6 38/10 39/12 39/23 40/3 40/13 40/15 41/11 41/15 41/17 41/20 41/23 42/1 42/7 42/10 63/13 63/17 64/25 65/25 66/5 66/11 66/19 67/7 69/15 69/24 70/4 71/1 71/9 71/12 71/15 71/19 83/15
**MS. O'MALLEY: [72]** 2/6 3/16 3/22 4/1 4/18 10/7 14/23 15/4 15/15 16/14 16/24 17/6 17/19 18/11 18/17 18/21 18/25 19/4 19/8 19/20 20/2 20/8 21/4 21/10 21/17 22/4 23/3 23/11 24/6 24/9 24/13 24/24 25/4 25/6 25/10 25/20 35/14 35/16 35/22 35/24 36/11 36/20 37/3 37/14 42/5 43/2 43/10 43/14 44/2 48/12 48/15 48/22 49/1 55/13 56/1 56/11 56/16 56/21 59/9 60/20 61/9 61/18 62/4 62/8 62/15 62/23 63/8 63/11 66/12 66/16 70/11 83/12
**THE CLERK: [1]** 2/1
**THE COURT: [148]**
**THE WITNESS: [3]** 44/6 44/9 48/8

**$**

**$1,800 [6]** 35/13 41/23 42/1 42/5 42/23 80/19
**$100 [1]** 80/20
**$150,000 [1]** 37/6
**$3,000 [1]** 41/10
**$5,000 [1]** 35/20
**$70,000 [1]** 40/18

**0**

**00195 [2]** 1/3 85/9

**1**

**10 [1]** 50/10
**1034 [1]** 36/13
**10:00 [1]** 1/6
**120 [2]** 54/16 57/12
**13 [1]** 2/16
**1374 [1]** 54/11
**14 [4]** 2/23 2/25 76/11 83/4
**140 [1]** 56/1
**145 [1]** 64/10
**15 [1]** 50/10
**16 [5]** 2/22 13/1 13/11 13/19 14/8
**17th [1]** 3/2
**18 [17]** 2/17 2/19 9/10 34/21 35/18 36/12 43/7 50/7 58/18 64/13 69/17 69/18 72/9 74/23 78/15 78/18 79/7
**182 [1]** 80/23
**19 [2]** 5/5 53/13
**195 [1]** 2/3
**1988 [1]** 26/2
**1991 [2]** 26/3 26/4
**1992 [2]** 25/17 26/1
**1994 [1]** 78/8
**19th [1]** 6/1
**1B1.11 [4]** 25/15 26/6 26/10 27/12
**1B1.3 [1]** 8/9

**2**

**20 [1]** 50/10
**200 [1]** 1/13
**2002 [1]** 31/10
**2006 [1]** 33/11
**2012 [2]** 11/11 31/6
**2014 [3]** 11/16 15/2 18/18
**2015 [3]** 11/9 13/2 36/14
**2016 [6]** 13/3 13/5 15/1 27/5 30/21 32/23
**2017 [6]** 5/5 6/2 13/6 15/1 27/4 40/18
**2018 [3]** 2/16 2/22 5/25
**2019 [6]** 1/5 2/23 2/25 36/18 85/10 85/16
**20770 [2]** 1/14 1/21
**20852 [1]** 1/17
**212 [1]** 32/23

**2241 [1]** 9/10
**2251 [1]** 2/19
**22nd [1]** 3/1
**24 [1]** 78/20
**25 [3]** 50/10 54/4 54/6
**250,000 [1]** 35/12
**28 [2]** 5/25 13/6
**29 [3]** 36/14 62/20 62/24
**29th [2]** 3/7 3/13
**2G2.1 [4]** 8/19 9/9 28/1 30/9
**2nd [1]** 85/16

**3**

**30 [12]** 1/5 23/1 35/9 36/18 53/6 55/12 55/14 72/7 72/17 76/7 77/7 77/19
**30-year [4]** 74/6 74/24 75/22 75/23
**3014 [2]** 35/19 42/22
**30th [1]** 85/10
**33 [1]** 69/7
**340 [1]** 56/1
**35 [1]** 31/9
**3553 [5]** 56/4 56/8 61/21 61/23 72/9
**3582 [2]** 67/25 69/17
**360 [2]** 35/8 77/18
**3621 [4]** 64/14 65/1 67/25 69/18
**3663 [1]** 43/7
**3:00 [1]** 53/20
**3D1 [1]** 12/17
**3D1.2 [2]** 32/20 32/25
**3D1.4 [1]** 34/23
**3E1.1 [3]** 5/2 28/21 29/5

**4**

**40 [2]** 12/4 12/9
**420 [3]** 77/6 77/17 77/25
**43 [5]** 13/18 14/9 35/5 35/6 68/19
**44 [3]** 12/8 23/24 32/15
**440 [2]** 33/10 56/1
**445 [1]** 31/6
**447 [1]** 33/10
**45 [4]** 25/21 25/22 26/9 26/21
**46 [3]** 25/15 25/20 26/13
**470 [1]** 53/23

**5**

**5,040 [3]** 77/6 77/18 77/25
**50,000 [1]** 35/12

**5**

**534 [1]** 54/12
**54 [1]** 35/4
**540 [16]** 53/6 53/22 55/15
55/22 55/25 56/5 56/11 57/8
57/14 58/14 58/17 67/12
68/15 68/19 68/22 74/24
**540-year [2]** 57/17 75/18
**5906 [1]** 1/17
**5G1.2 [1]** 72/17
**5G1.3 [1]** 80/21
**5K [1]** 54/8
**5K1.1 [1]** 54/3
**5th [1]** 13/4

**6**

**6,000 [2]** 67/12 68/20
**6,000-plus [2]** 68/16 68/23
**6,480 [1]** 74/24
**61 [1]** 31/10
**6500 [2]** 1/13 1/21
**665 [1]** 54/11
**684 [1]** 31/6

**7**

**72 [1]** 79/2
**75 [2]** 57/11 75/1
**750 [1]** 54/17

**8**

**810 [1]** 32/23
**820 [1]** 54/12
**84 [1]** 85/11
**85 [3]** 5/7 5/21 5/23

**9**

**9-27-2015 [1]** 13/2

**A**

**a.m [1]** 1/6
**ability [5]** 37/17 37/19 64/19
80/18 85/14
**able [6]** 36/8 38/18 45/9 50/22
51/12 52/12
**about [35]** 3/20 6/14 7/25
8/10 8/22 11/10 14/1 14/4
14/12 18/5 19/11 22/18 26/2
26/5 27/11 27/14 27/18 27/22
33/19 36/2 39/8 40/12 42/25
44/25 45/20 46/24 47/19
50/21 53/25 57/25 58/4 58/22
61/25 64/11 66/14

**above [2]** 75/1 75/10
**absence [1]** 34/17
**absent [1]** 20/20
**absolute [3]** 53/4 74/23 76/10
**absolutely [5]** 17/20 20/11
56/25 72/23 74/7
**abundance [3]** 30/25 31/19
34/17
**abuse [15]** 17/14 19/23 20/6
49/9 50/14 50/15 51/25 52/4
52/8 58/9 62/17 62/20 62/25
73/6 78/9
**abused [7]** 20/9 20/14 20/15
49/6 52/14 53/7 73/14
**abuses [1]** 20/18
**abusing [3]** 17/12 50/8 52/23
**academic [6]** 20/5 23/8 23/22
56/7 58/25 65/15
**accept [3]** 8/5 13/7 29/16
**acceptance [16]** 4/10 4/11
5/2 5/18 6/5 6/22 6/23 7/9 8/7
8/12 12/16 14/19 28/13 28/15
28/22 29/7
**accepted [1]** 68/4
**access [2]** 38/4 40/20
**accordingly [1]** 56/20
**account [14]** 12/2 35/20 37/6
37/7 37/16 37/23 38/23 40/19
40/20 41/9 41/13 41/17 55/3
56/3
**accountable [1]** 47/24
**achieved [1]** 75/11
**acknowledge [1]** 52/12
**acknowledged [2]** 28/21
29/12
**across [2]** 17/14 49/24
**act [8]** 15/25 28/6 33/1 33/23
67/10 67/15 71/4 78/8
**acted [1]** 50/21
**action [3]** 38/13 75/12 85/9
**actions [2]** 51/20 82/16
**activities [1]** 78/24
**acts [13]** 15/6 23/5 27/25
33/2 46/17 49/8 62/13 67/8
67/10 73/1 73/3 73/19 81/9
**actual [4]** 36/6 37/9 54/7
55/23
**actually [12]** 10/18 21/25
25/2 25/13 26/22 29/19 29/24
55/2 55/3 59/11 62/10 81/19
**add [6]** 4/17 14/18 25/6 37/15

71/14 76/7
**adding [1]** 76/22
**addition [2]** 24/20 78/4
**additional [7]** 11/2 23/10 28/5
35/19 36/23 39/10 56/6
**address [10]** 10/9 10/23 15/7
27/3 27/16 40/2 48/24 49/2
59/11 63/15
**addressed [1]** 35/24
**addressing [1]** 11/11
**adduced [1]** 85/7
**adequate [1]** 74/16
**adjective [1]** 49/12
**adjustment [4]** 4/12 28/15
28/16 30/4
**admit [3]** 7/1 29/7 29/13
**admitted [1]** 28/19
**adopt [1]** 71/3
**adult [2]** 16/1 31/11
**advance [1]** 79/3
**advisory [2]** 35/7 72/6
**advocated [1]** 22/6
**advocating [1]** 13/22
**affected [1]** 73/12
**affirmed [2]** 54/16 54/17
**afford [1]** 83/8
**afraid [1]** 51/10
**after [18]** 2/17 5/5 6/2 7/4 7/6
26/25 30/2 40/19 43/14 45/2
46/5 46/8 46/25 52/8 52/21
53/20 54/10 71/20
**again [37]** 5/14 7/23 11/8
18/7 18/15 20/15 20/19 21/6
21/7 22/2 22/9 22/12 22/16
22/22 23/7 23/13 25/3 25/19
30/18 31/19 31/24 32/10
32/12 34/14 34/16 34/22
36/11 39/24 42/12 45/1 45/15
53/17 57/1 57/1 57/5 57/16
76/9
**against [8]** 6/22 8/11 29/24
33/8 53/4 73/6 81/9 82/8
**age [7]** 5/10 15/14 15/17
24/19 46/15 78/15 79/7
**Agent [1]** 2/9
**ages [1]** 53/8
**aggravated [3]** 9/10 28/2 28/6
**ago [1]** 44/20
**agree [10]** 12/6 19/2 20/7
22/2 23/22 24/4 24/13 24/15
24/24 63/4

## A

**agreed** [1] 59/12
**agreement** [3] 3/2 66/10 83/3
**ahead** [5] 5/1 6/3 25/24 44/9 69/8
**alert** [1] 14/9
**all** [44] 3/16 3/20 4/4 8/10 10/15 10/15 10/21 10/23 12/12 12/23 13/15 17/15 22/5 29/5 30/11 30/14 30/16 30/19 31/20 38/17 43/16 44/3 44/11 46/3 46/12 46/23 47/7 47/25 48/4 48/6 52/9 55/18 61/20 61/20 62/18 66/3 68/11 72/8 72/21 78/2 81/12 82/3 82/5 82/22
**alleged** [1] 5/10
**allocution** [1] 71/22
**allow** [1] 52/14
**allowed** [2] 53/5 74/20
**almost** [4] 23/16 44/20 50/11 75/10
**alone** [1] 81/19
**along** [2] 7/13 48/18
**already** [4] 23/20 35/13 42/25 70/7
**also** [38] 3/1 3/7 7/11 8/8 8/11 8/21 8/22 10/18 12/21 13/9 15/21 16/11 16/13 17/11 19/10 26/20 29/18 31/13 31/15 33/7 36/25 54/9 56/14 58/13 60/16 61/11 63/5 67/23 72/8 72/13 73/5 73/6 74/16 75/19 77/3 78/1 80/12 83/21
**although** [4] 11/18 24/18 29/8 72/16
**always** [5] 22/24 44/11 44/17 68/8 82/2
**am** [5] 16/14 17/5 35/23 48/6 63/4
**amendment** [2] 11/3 76/16
**AMERICA** [4] 1/3 2/4 82/17 85/8
**among** [2] 72/13 81/6
**amount** [7] 32/22 38/16 40/24 41/5 43/7 49/5 76/25
**amounting** [1] 74/11
**amounts** [1] 18/24
**anal** [2] 31/12 73/4
**anally** [2] 49/14 50/5
**analogize** [1] 21/18

**analysis** [4] 11/12 27/19 32/10 42/17
**anger** [1] 47/10
**angry** [2] 47/10 47/10
**Anne** [1] 38/12
**another** [6] 19/15 52/2 73/16 73/16 76/7 80/15
**answer** [2] 22/25 58/23
**anticipate** [1] 43/11
**anticipated** [5] 7/9 48/21 63/19 70/6 80/22
**any** [80] 3/3 3/23 3/24 4/17 6/13 6/14 8/13 9/25 11/3 11/23 12/7 16/12 18/20 20/16 23/15 23/17 24/5 24/25 27/17 28/14 29/21 30/3 30/24 31/2 31/24 32/13 32/15 34/17 35/13 36/6 37/1 37/5 37/9 37/19 38/9 38/22 39/2 42/9 42/24 43/1 43/11 45/14 46/18 47/11 47/16 48/2 54/6 57/24 59/7 62/2 63/19 65/3 67/5 68/16 69/4 71/1 71/7 71/22 74/2 74/2 74/4 74/7 74/25 75/21 78/14 78/16 78/17 79/2 79/4 79/6 79/13 79/14 79/18 79/19 80/4 80/10 80/11 80/12 80/22 83/2
**anybody** [1] 29/12
**anyone** [7] 4/16 45/5 46/17 46/18 47/20 73/10 73/11
**anything** [20] 3/16 3/20 3/21 4/17 10/6 14/19 14/19 15/13 19/20 29/13 39/14 42/20 43/1 44/14 57/9 59/19 71/14 74/1 83/11 83/15
**anyway** [2] 36/8 55/1
**anywhere** [3] 45/19 74/20 82/17
**apart** [4] 20/24 22/11 22/11 23/15
**apologize** [1] 62/24
**appeal** [9] 28/18 29/3 57/18 83/1 83/3 83/4 83/7 83/8 83/10
**appealing** [1] 29/1
**appeals** [1] 71/21
**APPEARANCES** [1] 1/10
**appears** [5] 5/9 8/19 21/24 33/21 81/16
**appellate** [2] 53/16 83/8

**Appendix** [1] 31/10
**applicable** [2] 32/2 36/4
**application** [6] 19/14 25/14 28/21 29/5 33/3 33/16
**applied** [2] 15/8 27/2
**applies** [6] 30/10 31/4 32/15 34/25 37/1 37/18
**apply** [15] 19/22 25/3 29/2 30/17 30/20 30/21 32/8 32/9 32/9 36/8 37/3 37/3 42/21 54/4 83/9
**appoint** [1] 83/10
**appointed** [3] 39/22 39/23 40/7
**appreciate** [1] 14/6
**approach** [1] 12/22
**approached** [1] 42/13
**appropriate** [2] 63/21 72/5
**approval** [1] 79/1
**approved** [2] 79/2 79/4
**April** [2] 5/5 85/16
**April 19** [1] 5/5
**apt** [1] 6/9
**are** [105]
**areas** [1] 80/9
**arguably** [5] 28/19 29/9 30/22 34/7 34/7
**argues** [1] 4/20
**arguing** [1] 28/16
**argument** [6] 12/1 13/7 13/17 20/25 21/23 53/25
**Arizona** [3] 68/2 69/21 70/21
**arms** [2] 16/20 17/3
**around** [8] 11/11 38/19 44/21 45/11 53/14 55/8 57/21 63/8
**arrest** [1] 6/2
**arrested** [2] 5/6 29/19
**arrive** [1] 12/3
**Arundel** [1] 38/13
**as** [102]
**ashamed** [1] 47/22
**ask** [12] 3/18 8/15 19/10 53/5 55/7 55/16 56/12 58/16 69/12 70/5 70/8 70/13
**asked** [6] 3/8 45/5 45/21 47/16 59/24 67/12
**asking** [13] 18/5 22/8 22/9 37/18 38/24 42/11 46/19 53/22 56/9 58/24 63/18 67/23 68/13
**asks** [1] 74/23

## A

**assault [2]** 33/4 62/15
**assaulted [1]** 45/4
**asserted [1]** 27/16
**assessing [1]** 38/17
**assessment [11]** 17/21 30/6 35/12 35/20 39/10 41/23 42/1 42/22 42/23 80/13 80/19
**asset [1]** 38/7
**assist [1]** 29/23
**assume [1]** 15/8
**assuming [4]** 12/11 16/6 17/17 43/9
**attached [1]** 3/11
**attempt [1]** 7/16
**attempted [3]** 49/13 63/1 63/2
**Attorney's [1]** 1/11
**August [1]** 5/25
**August 28 [1]** 5/25
**authorities [1]** 29/23
**authority [1]** 65/22
**available [8]** 5/18 6/5 28/22 40/5 40/25 58/17 60/5 65/4
**avoid [2]** 67/5 72/12
**avoiding [1]** 53/2
**aware [4]** 38/8 38/24 52/1 70/20
**away [2]** 73/17 81/14

## B

**B.O.P [1]** 69/20
**baby [1]** 45/4
**back [4]** 11/2 48/19 56/23 62/17
**Background [1]** 26/8
**backup [1]** 85/14
**bad [2]** 17/14 44/18
**balance [1]** 38/14
**BALDWIN [4]** 1/12 2/7 25/11 30/20
**Baltimore [1]** 19/22
**bank [9]** 21/19 21/21 22/1 25/17 26/2 37/7 40/19 41/9 41/13
**Bankins [4]** 1/20 85/3 85/19 85/20
**bargained [1]** 66/9
**based [19]** 4/18 11/12 12/4 12/19 24/16 24/16 33/5 33/15 33/21 36/5 37/21 42/11 55/18 58/17 62/12 68/3 70/8 80/18 80/24

**basic [1]** 39/4
**basically [5]** 30/11 32/12 34/5 55/19 59/23
**basis [2]** 31/1 83/3
**bath [2]** 17/3 49/16
**be [114]**
**bear [2]** 52/25 84/3
**beat [1]** 38/22
**beat-up [1]** 38/22
**became [1]** 27/1
**because [58]** 7/9 8/6 9/8 10/14 11/10 11/13 13/11 13/20 15/1 17/11 20/5 23/8 23/20 24/2 27/15 27/24 28/17 30/23 32/3 32/4 32/4 32/14 33/17 35/4 38/25 39/3 42/2 42/18 44/14 44/24 45/6 45/19 47/7 47/18 47/23 50/21 51/1 53/22 54/25 55/4 56/18 58/4 58/23 58/25 59/2 59/5 60/9 60/25 66/1 69/7 70/17 71/3 75/15 76/1 76/7 76/8 76/19 82/3
**become [1]** 68/23
**bed [2]** 46/2 49/24
**been [26]** 7/2 11/1 11/14 22/10 27/5 30/3 35/11 35/13 36/24 39/25 40/2 44/19 44/23 44/25 45/4 49/20 50/16 51/6 51/19 52/12 53/16 53/23 57/18 57/20 59/16 74/4
**before [14]** 1/8 2/2 6/24 7/17 10/13 15/5 15/6 26/24 30/2 40/2 48/17 71/19 73/18 82/11
**begin [2]** 64/4 67/1
**beginning [3]** 21/15 36/17 40/8
**begins [2]** 25/25 26/15
**behalf [1]** 83/7
**behavior [7]** 4/12 8/17 8/20 9/1 12/7 14/20 30/8
**behind [2]** 47/21 52/3
**being [19]** 3/21 6/23 12/19 15/5 16/20 16/20 22/25 26/2 29/11 33/23 33/24 43/17 46/1 47/21 51/12 57/5 58/5 63/16 65/21
**belief [1]** 76/24
**believe [31]** 9/13 13/9 13/13 13/23 16/4 16/9 16/13 20/22

**27/17 28/7 29/11 34/10 35/11 36/12 37/24 37/25 53/13 55/15 57/14 58/5 62/19 63/20 64/13 68/15 68/16 68/17 70/6 70/21 76/14 76/22 81/3
**below [3]** 13/18 14/9 30/15
**bench [2]** 71/24 72/1
**beneficial [1]** 18/13
**benefit [2]** 57/2 68/10
**best [1]** 85/14
**bet [1]** 66/8
**Betcher [2]** 54/12 54/17
**better [2]** 66/7 75/11
**between [7]** 22/13 23/2 31/14 34/9 36/14 53/7 73/2
**beyond [2]** 55/1 56/6
**birth [2]** 10/18 10/19
**bit [2]** 35/3 60/8
**black [1]** 47/3
**blame [2]** 45/22 45/23
**blanket [1]** 39/1
**blow [1]** 75/13
**bondage [1]** 16/19
**book [15]** 11/16 11/18 11/19 14/25 15/1 15/2 15/2 18/8 18/10 18/21 25/8 25/15 27/5 30/20 30/21
**books [1]** 14/21
**borne [1]** 40/8
**both [8]** 8/18 15/7 18/15 27/2 33/21 53/17 54/13 83/17
**bottom [3]** 26/8 26/20 50/23
**bound [3]** 31/16 31/17 49/15
**bounds [1]** 61/22
**box [1]** 78/25
**boyfriend's [1]** 45/7
**boys [1]** 82/4
**bracketed [1]** 5/10
**brave [3]** 50/12 50/17 81/20
**breathe [2]** 17/8 17/10
**brief [2]** 4/22 27/21
**briefs [2]** 38/17 41/1
**brings [1]** 59/11
**Brittany [1]** 44/10
**broad [1]** 22/19
**broke [1]** 46/10
**brother's [1]** 82/5
**brush [1]** 22/19
**brutally [1]** 50/8
**burden [1]** 6/6
**Bureau [18]** 37/20 63/24

**B**

**Bureau... [16]** 64/14 64/18 64/23 65/2 65/3 65/6 65/10 65/21 66/22 68/2 69/19 70/1 70/18 70/23 71/4 80/14
**Burgess [1]** 31/6
**Butner [3]** 70/21 71/12 80/15
**buttocks [2]** 16/17 16/17

**C**

**C.'s [1]** 51/9
**calculated [2]** 35/12 53/23
**calculation [5]** 31/25 32/13 32/16 54/2 74/8
**calculations [4]** 35/3 35/14 43/2 43/19
**call [8]** 5/6 6/25 19/7 19/7 29/10 44/1 47/22 52/14
**calling [1]** 50/2
**calls [2]** 5/4 5/8
**came [7]** 3/12 15/5 50/13 50/18 50/25 61/3 81/20
**camera [3]** 13/14 22/18 23/1
**can [32]** 3/21 8/13 8/20 8/20 8/22 12/23 14/11 15/7 19/13 22/5 37/16 40/21 43/13 44/1 47/20 48/17 48/25 50/23 50/23 54/25 59/4 61/20 64/16 66/20 68/2 68/6 68/10 69/5 70/7 75/15 82/16 83/9
**can't [15]** 5/11 17/8 17/10 20/3 21/5 21/8 36/3 37/13 45/22 47/17 47/24 54/6 59/19 61/5 73/9
**candid [2]** 10/25 14/7
**cannot [7]** 50/4 51/25 58/10 58/10 58/19 73/21 83/7
**capacity [1]** 85/6
**capture [1]** 49/12
**captured [1]** 37/25
**card [1]** 50/22
**cared [1]** 47/19
**careful [1]** 76/21
**Carolina [2]** 71/6 71/10
**case [42]** 7/5 7/7 8/24 9/17 9/22 10/12 15/14 18/8 19/18 20/1 20/2 22/23 23/12 23/20 27/4 30/4 31/22 34/17 37/3 49/18 49/21 50/21 52/2 52/4 52/19 52/22 53/11 53/19 55/7 57/10 59/6 60/21 61/3 61/4

**61/12 61/14 62/3 62/12 77/14 78/11 84/2 85/7
**cases [33]** 16/11 16/11 16/22 16/23 19/11 19/12 20/3 21/12 21/24 22/9 22/12 31/12 33/16 34/13 35/20 36/24 36/25 53/13 53/23 54/1 54/2 54/7 54/8 54/10 54/10 54/18 57/9 57/11 57/12 60/4 61/12 67/18 70/22
**cash [3]** 38/3 38/10 38/12
**casino [2]** 38/12 40/22
**category [2]** 34/7 35/6
**cause [1]** 31/8
**caused [5]** 50/16 56/19 73/4 73/13 81/10
**causing [1]** 28/11
**caution [3]** 30/25 31/19 34/17
**cautious [1]** 68/8
**certain [6]** 21/13 29/9 29/12 33/20 53/23 75/25
**certainly [16]** 8/23 10/20 19/2 19/12 21/11 25/5 29/13 31/4 39/15 39/19 40/4 48/23 59/25 61/8 61/25 75/20
**CERTIFICATE [1]** 85/1
**certify [2]** 85/5 85/11
**challenge [4]** 7/14 37/10 37/13 54/22
**challenges [1]** 6/20
**change [2]** 35/18 75/1
**changes [2]** 18/25 79/2
**changing [1]** 18/6
**characteristics [4]** 51/23 52/10 72/11 73/24
**characterizes [1]** 65/16
**charge [3]** 15/6 62/14 62/20
**charges [3]** 15/1 62/22 66/18
**chart [1]** 3/8
**check [3]** 9/21 11/2 11/4
**Cherrywood [2]** 1/13 1/21
**child [30]** 2/18 16/1 16/20 23/5 24/19 29/15 31/7 31/11 31/13 31/16 31/16 31/17 31/17 33/12 44/14 44/16 45/3 45/15 45/19 48/3 58/1 58/3 58/4 58/5 58/18 72/25 77/16 78/14 78/17 81/14
**child's [1]** 17/3
**childcare [1]** 79/8
**childhood [1]** 81/10

**childhoods [1]** 73/17
**children [14]** 51/11 53/4 58/9 58/10 73/2 74/20 78/15 78/18 79/7 81/8 81/19 82/2 82/4 82/9
**chill [1]** 18/1
**choose [1]** 18/8
**CHUANG [1]** 1/8
**circuit [12]** 15/25 31/6 31/10 31/12 32/23 33/8 33/10 33/11 53/24 54/1 54/10 57/20
**Circuit's [1]** 54/20
**circumstances [6]** 6/10 17/1 49/4 56/15 72/10 72/22
**citation [1]** 64/13
**cite [1]** 36/10
**cited [6]** 15/24 19/11 20/4 54/1 54/2 54/18
**claim [1]** 53/21
**claiming [1]** 37/11
**claims [2]** 3/24 47/11
**clarify [3]** 3/22 48/18 59/4
**clarifying [1]** 62/10
**classic [1]** 17/16
**cleaning [1]** 50/23
**clear [10]** 6/19 7/20 16/18 18/3 20/20 54/3 60/4 70/13 75/20 82/13
**clearly [7]** 8/7 15/23 23/8 33/17 50/1 75/9 76/25
**clerk [1]** 83/6
**client [3]** 4/5 4/6 41/17
**close [2]** 16/17 57/9
**closed [1]** 53/20
**closest [2]** 71/4 71/8
**Code [3]** 2/19 35/19 36/13
**cold [1]** 50/3
**collect [1]** 36/22
**combined [1]** 72/19
**come [6]** 27/16 35/21 45/10 54/6 54/19 83/22
**comes [2]** 46/25 51/10
**comfort [1]** 57/17
**comfortable [1]** 17/18
**coming [2]** 39/15 48/10
**commandment [1]** 69/1
**commentary [9]** 6/8 6/9 6/20 9/24 9/25 13/13 25/23 27/18 27/19
**comments [1]** 4/23
**commissary [1]** 39/4

# C

**Commission [1]** 68/5
**commissions [1]** 13/23
**committed [8]** 15/6 25/18 26/2 26/3 26/24 52/21 73/22 81/8
**common [3]** 10/1 33/2 34/19
**communicate [1]** 78/10
**communication [2]** 78/21 78/22
**communications [1]** 80/1
**community [3]** 82/1 82/4 82/7
**comparison [1]** 57/13
**completely [5]** 20/7 24/13 30/19 40/21 58/25
**completes [1]** 81/4
**complicated [1]** 18/6
**complication [1]** 67/4
**comply [1]** 72/15
**component [1]** 6/16
**composite [4]** 12/1 12/5 12/20 13/7
**comprising [1]** 29/8
**compromise [1]** 79/22
**computer [4]** 79/15 79/15 79/20 79/20
**computer-generated [2]** 79/15 79/20
**computers [1]** 79/25
**concede [1]** 29/9
**concept [2]** 32/22 34/19
**concerned [4]** 11/10 23/19 64/1 64/11
**concerning [1]** 72/2
**concerns [1]** 27/13
**conclude [1]** 60/6
**concluded [2]** 75/25 84/5
**concludes [1]** 76/6
**concurrent [14]** 48/20 58/21 59/2 59/7 60/14 60/23 63/6 63/15 63/19 64/8 65/25 66/7 70/5 80/25
**concurrent/consecutive [2]** 59/7 63/15
**concurrently [5]** 77/21 77/23 77/24 78/3 80/22
**condemn [1]** 75/9
**condemnation [2]** 75/5 77/2
**condition [3]** 80/6 80/7 80/8
**conditions [4]** 68/21 69/6 78/5 78/6

**conduct [36]** 6/12 8/10 8/14 9/4 9/6 9/8 9/9 11/17 15/20 15/23 18/7 18/15 19/13 21/6 24/15 24/18 28/19 29/8 29/19 30/11 31/3 36/20 55/8 57/7 57/13 61/25 62/2 74/2 74/3 74/5 74/17 79/4 79/17 79/22 80/6 81/20
**conducted [2]** 80/2 80/10
**conference [2]** 71/24 72/2
**confinement [2]** 68/22 69/6
**Congress' [1]** 72/14
**connected [1]** 33/2
**connection [1]** 2/20
**consecutive [18]** 33/9 48/21 58/21 59/7 60/14 60/25 61/23 63/7 63/15 64/1 64/8 64/12 64/16 64/22 65/13 65/18 65/25 74/23
**consecutively [2]** 72/18 77/20
**consequence [2]** 64/3 65/19
**consequences [1]** 58/1
**conservative [1]** 34/22
**consider [4]** 13/9 14/10 15/21 56/14
**consideration [2]** 61/24 76/3
**considerations [1]** 29/4
**considered [3]** 72/6 72/8 72/14
**considering [3]** 8/11 68/21 72/5
**consistent [1]** 13/23
**consistently [1]** 22/6
**constantly [1]** 46/22
**constitute [1]** 85/12
**constitutional [5]** 6/11 6/20 7/10 7/14 28/25
**consulting [1]** 71/20
**contact [9]** 9/11 28/2 51/11 78/13 78/17 78/20 78/21 78/22 78/23
**contacting [1]** 45/2
**contain [1]** 80/9
**contemplate [1]** 73/14
**contemplated [1]** 69/7
**content [1]** 16/7
**contention [2]** 6/15 39/15
**contested [1]** 29/14
**continue [1]** 67/18
**continued [1]** 21/7

**continuing [1]** 12/19
**contrary [2]** 39/14 68/17
**contrition [1]** 30/3
**control [2]** 60/22 78/8
**conversation [2]** 5/13 28/20
**convicted [4]** 26/21 26/24 65/8 70/18
**conviction [4]** 12/25 29/8 58/18 83/1
**cooperating [1]** 72/3
**core [2]** 13/21 68/14
**correct [11]** 3/13 4/1 7/5 12/13 14/21 16/8 16/14 19/8 23/22 55/15 75/3
**correctional [1]** 65/4
**correctly [1]** 63/4
**cost [3]** 38/16 40/8 83/8
**costs [5]** 40/25 41/19 42/9 42/12 70/7
**could [26]** 3/18 7/24 17/17 21/22 29/2 32/24 37/10 44/24 45/13 45/13 49/16 52/6 52/9 55/3 63/14 64/3 65/22 65/23 65/23 66/3 66/4 68/23 76/9 77/12 81/14 82/20
**couldn't [1]** 44/18
**counsel [13]** 2/5 2/9 2/13 2/14 4/20 37/12 39/19 39/22 39/23 40/5 71/21 83/9 83/10
**counselor [1]** 52/6
**count [44]** 12/8 12/25 12/25 13/2 13/8 13/10 13/10 16/13 22/20 23/24 24/9 25/3 32/2 32/2 32/2 32/5 32/5 32/5 32/6 32/6 32/6 32/6 32/7 32/7 32/7 32/9 35/9 35/11 39/5 53/6 55/10 55/12 55/14 56/4 56/18 56/19 56/20 72/8 72/17 74/7 77/19 77/19 78/1 80/20
**country [5]** 53/14 55/8 57/21 70/20 82/2
**counts [36]** 2/17 7/3 10/23 10/24 13/1 13/4 13/5 13/11 13/11 13/12 13/19 14/8 14/8 20/23 24/1 30/13 31/5 31/20 33/4 33/6 33/12 33/14 33/16 33/25 34/1 34/10 36/15 57/21 58/18 62/11 62/11 76/7 77/15 77/21 77/22 77/24
**County [3]** 38/13 50/20 59/3
**couple [8]** 4/24 4/25 8/16

**C**

couple... [5] 14/18 24/17 24/22 50/9 53/25
coupled [1] 56/17
course [7] 5/17 6/23 7/1 38/24 62/23 65/12 76/18
court [74] 1/1 1/20 1/20 2/3 6/15 7/2 7/15 7/20 8/10 8/12 12/1 13/7 13/9 13/20 14/7 14/10 14/13 15/19 15/20 18/14 23/8 24/21 33/14 37/16 37/17 38/15 40/7 40/24 42/12 50/7 52/1 52/11 53/20 53/24 54/18 55/1 55/2 55/23 57/16 57/23 58/16 58/23 61/2 61/22 63/18 64/1 64/4 64/5 64/6 64/6 64/11 64/21 65/12 66/21 67/23 67/23 67/24 69/10 69/17 70/13 71/25 72/4 72/18 74/10 75/7 76/6 77/15 77/17 78/1 83/9 85/3 85/4 85/9 85/20
court's [5] 23/17 33/11 57/17 61/24 62/5
court-appointed [1] 40/7
courthouse [1] 19/22
courtroom [2] 62/11 73/11
courts [10] 22/7 36/23 47/24 53/14 53/15 53/16 54/3 57/21 60/10 75/15
covered [4] 9/8 16/23 31/21 70/7
covering [1] 33/23
covers [1] 22/13
coward [1] 47/18
crashing [1] 45/10
creates [1] 65/18
cried [3] 46/5 46/7 73/8
cries [2] 46/19 49/25
crime [6] 53/4 73/22 75/14 78/8 81/12 81/18
crimes [7] 72/23 72/24 73/13 74/12 74/19 77/8 81/6
criminal [7] 1/3 2/3 29/19 35/6 73/25 74/17 85/9
crosses [1] 17/10
cry [1] 47/7
current [1] 25/15
custody [7] 59/14 59/14 59/15 59/16 59/20 65/14 65/23

cut [2] 6/21 8/11
cutoff [5] 9/18 10/12 15/14 15/18 30/15

**D**

daddy [1] 52/14
daily [1] 78/23
damage [1] 49/20
damaged [1] 51/3
dangerous [1] 51/24
data [1] 80/1
date [9] 6/1 10/19 13/2 13/3 13/4 13/6 20/21 36/17 36/19
dates [2] 12/24 36/25
daughter [7] 44/25 46/8 47/16 47/19 51/13 73/3 81/12
daughter's [2] 44/22 82/6
daughters' [1] 81/23
dawned [1] 45/7
day [18] 13/12 13/15 19/13 19/15 19/16 19/19 19/24 21/19 33/15 33/19 34/4 34/18 45/24 46/5 47/6 76/2 85/10 85/16
daycare [1] 45/14
days [15] 5/5 6/2 20/6 20/10 23/14 23/18 33/5 33/7 33/9 33/13 33/17 34/12 34/21 47/6 83/4
dead [1] 47/23
deal [2] 48/25 66/16
dealing [3] 17/2 17/2 57/15
decades [1] 69/8
decide [4] 13/20 61/6 64/7 66/3
decided [2] 50/17 71/22
decides [1] 14/13
decision [5] 7/20 7/24 11/10 54/20 65/16
decisions [2] 15/24 53/16
dedicated [2] 40/25 41/19
deemed [4] 31/7 31/11 48/20 55/20
deeper [1] 45/25
defend [1] 47/21
defendant [68] 1/6 1/15 5/19 6/6 6/10 8/6 17/9 17/11 18/14 25/16 25/17 26/1 26/21 26/23 28/17 28/23 36/5 36/7 36/9 37/11 37/22 39/21 40/5 49/5 49/7 49/9 49/13 49/15 49/24

49/25 50/4 50/8 50/13 50/17 51/21 51/24 51/24 52/2 52/7 52/11 52/12 52/15 52/21 53/7 53/10 53/19 54/2 54/18 54/22 54/25 55/4 57/5 58/8 58/15 58/16 58/19 59/14 70/16 72/2 72/11 72/24 73/23 73/25 74/18 74/19 75/2 77/5 77/15
defendant's [7] 2/24 3/7 5/8 51/20 52/20 52/22 54/23
defendants [4] 39/18 57/25 70/22 72/13
defending [1] 47/13
defense [8] 4/20 6/13 28/16 28/25 32/17 40/9 43/25 83/15
defer [3] 61/6 69/25 70/23
defines [1] 15/15
Definitely [1] 44/5
definition [1] 10/1
degree [4] 60/17 63/1 63/1 63/2
Demeyer [2] 54/11 54/15
demonstrate [1] 29/6
demonstrating [1] 8/7
denial [1] 47/1
denied [1] 47/11
departing [1] 80/25
depends [1] 14/25
depict [2] 28/10 31/15
depicted [2] 29/13 31/3
depiction [3] 9/5 79/14 79/19
depictions [3] 9/5 15/23 19/6
depraved [2] 53/3 57/7
depression [4] 46/25 47/2 47/5 51/18
described [3] 9/9 16/11 69/13
description [1] 18/2
descriptions [8] 16/5 17/19 21/25 24/16 31/23 33/22 34/5 50/7
deserve [1] 82/19
deserves [1] 51/21
deserving [1] 58/19
designate [6] 64/20 65/2 65/3 65/11 69/17 69/20
designated [2] 70/2 80/15
designation [1] 70/12
designed [1] 76/15
despicable [1] 82/16
despite [2] 50/25 52/13
detail [1] 72/21

## D

**detailed [1]** 50/7
**deter [2]** 58/8 75/8
**determination [4]** 33/11 60/17 61/16 66/4
**determine [3]** 15/17 60/22 60/23
**determined [1]** 3/19
**deterrence [5]** 57/23 58/7 74/17 75/4 77/4
**developed [2]** 46/2 46/25
**Devens [1]** 70/21
**devices [1]** 80/1
**diagnosed [1]** 74/4
**dictionary [1]** 10/1
**did [19]** 6/13 9/21 11/24 19/10 19/19 25/2 29/7 29/9 29/22 32/8 33/13 33/15 35/21 37/6 45/12 47/2 49/14 52/21 66/14
**didn't [21]** 3/19 7/1 9/18 9/19 9/24 9/25 11/1 11/11 18/9 19/18 27/16 29/13 29/16 29/18 29/21 29/22 35/22 45/6 45/8 46/6 48/5
**die [1]** 45/24
**dies [1]** 57/2
**difference [10]** 24/5 25/1 25/4 30/24 31/25 32/13 32/16 34/9 56/10 61/15
**different [23]** 12/18 19/13 19/16 19/16 20/21 22/10 28/7 33/5 33/7 33/13 33/17 34/21 35/3 39/7 39/25 43/20 47/8 54/9 60/20 62/16 70/15 76/4 76/11
**differently [1]** 42/13
**difficult [1]** 83/18
**dig [1]** 45/25
**diminishing [1]** 27/25
**direct [3]** 78/13 78/17 78/21
**direction [1]** 72/14
**directly [3]** 29/14 41/2 78/11
**disagree [2]** 61/19 63/10
**disagrees [1]** 60/19
**disclosed [2]** 41/9 41/11
**discount [1]** 24/22
**discovered [2]** 52/5 52/8
**discuss [4]** 4/6 14/11 72/20 83/11
**discussed [2]** 63/16 68/4

**discussing [1]** 9/22
**discussion [1]** 54/21
**discussions [1]** 59/5
**disgusted [1]** 45/17
**disgusting [3]** 47/21 73/1 81/9
**disorder [1]** 74/4
**disparities [2]** 53/3 72/13
**dispute [5]** 8/8 8/9 8/14 13/21 67/9
**disregarded [1]** 46/3
**dissipated [1]** 40/22
**distinction [1]** 18/22
**distinguish [1]** 53/24
**district [9]** 1/1 1/1 1/9 1/20 33/11 33/14 65/8 85/4 85/4
**disturbed [1]** 73/12
**disturbing [1]** 67/9
**dive [1]** 40/17
**DIVISION [1]** 1/2
**do [49]** 6/16 15/13 16/16 17/23 22/2 24/15 25/12 28/10 32/11 33/5 33/7 33/19 34/8 34/18 38/4 38/9 40/12 44/7 44/14 46/6 47/6 48/4 54/2 58/2 59/19 59/25 60/5 60/7 60/11 60/19 60/20 61/17 67/9 67/24 70/22 71/7 76/9 76/10 76/17 76/20 76/24 77/11 78/16 81/5 82/9 82/10 83/4 83/17 85/5
**doctrine [1]** 61/17
**document [3]** 5/7 5/21 59/19
**documents [1]** 2/20
**does [23]** 4/16 6/8 6/21 10/6 12/23 18/10 27/5 28/7 28/14 32/12 36/16 37/20 55/22 59/7 60/5 60/7 61/1 68/5 68/20 69/24 74/1 75/1 78/22
**doesn't [26]** 6/21 10/23 11/16 12/7 13/7 13/18 14/9 15/20 24/5 24/22 31/24 34/15 36/18 37/9 38/23 40/6 41/12 44/15 46/11 46/17 56/10 60/24 67/1 68/15 68/19 69/11
**doing [3]** 17/15 45/16 66/14
**dominating [1]** 6/18
**don't [41]** 3/23 7/8 7/14 7/15 9/13 9/23 11/19 13/19 13/25 14/10 14/19 16/4 16/10 16/13 17/22 18/9 20/16 23/16 25/4

27/17 29/10 30/19 30/23 32/11 36/1 37/4 38/2 38/3 38/22 38/25 39/5 39/19 42/4 42/7 43/11 45/8 61/8 61/19 68/16 76/14 76/22
**don't have [1]** 38/2
**done [7]** 15/16 22/24 29/6 49/20 55/17 57/8 59/18
**double [1]** 11/4
**Dougher [1]** 2/9
**down [5]** 11/13 12/9 26/18 45/11 50/5
**downward [4]** 4/11 28/15 28/16 30/4
**Drive [1]** 1/17
**drug [1]** 78/7
**due [2]** 76/21 82/11
**during [5]** 10/15 17/12 30/2 76/5 78/23

## E

**each [25]** 19/24 33/18 35/9 35/10 47/18 55/12 55/14 56/4 56/18 56/18 56/19 72/8 72/17 75/23 76/5 76/7 76/7 77/18 77/19 77/22 77/23 77/25 78/1 78/3 80/20
**earlier [8]** 18/13 18/21 22/13 30/10 59/5 75/20 75/25 76/24
**early [2]** 16/16 20/15
**earmarked [1]** 41/7
**earnings [2]** 39/2 39/6
**earth [1]** 82/22
**easy [1]** 46/25
**ECF [2]** 5/7 5/23
**ECF-85 [1]** 5/23
**edition [2]** 26/25 27/1
**effect [2]** 13/8 59/1
**effective [2]** 27/1 68/6
**effectively [4]** 28/17 35/8 42/16 64/6
**efforts [2]** 30/1 66/10
**egregious [1]** 57/10
**eight [6]** 13/3 13/10 20/10 23/14 57/9 77/21
**Eighteen [4]** 13/5 32/8 34/12 77/16
**Eighth [4]** 53/24 54/1 54/10 76/16
**either [6]** 13/20 16/7 35/24 61/11 78/11 83/12

**E**

**electronic [3]** 79/16 79/21 80/1
**element [1]** 29/14
**elementary [1]** 73/18
**Eleven [6]** 13/4 20/23 34/1 34/9 34/11 77/22
**eloquently [1]** 51/14
**else [9]** 3/16 18/23 36/20 41/8 43/1 43/10 71/14 73/11 78/12
**emotional [1]** 73/20
**emotions [1]** 47/8
**employed [1]** 84/2
**empowered [1]** 82/22
**empty [1]** 37/7
**enabled [1]** 81/17
**enactment [1]** 36/17
**encompass [1]** 10/2
**encompasses [1]** 30/11
**encounter [3]** 34/6 76/3 76/5
**encounters [2]** 34/3 77/7
**end [5]** 21/14 48/19 49/1 55/5 69/2
**ended [1]** 38/12
**ending [1]** 36/17
**endure [2]** 23/5 50/15
**endured [1]** 50/12
**enforcement [4]** 29/20 50/13 78/8 81/21
**engage [2]** 76/20 76/20
**engaged [2]** 49/8 73/1
**engages [1]** 82/8
**engaging [2]** 17/13 29/20
**enhanced [1]** 42/22
**enhancement [23]** 8/20 8/25 11/16 12/17 14/22 23/23 24/1 27/6 27/8 27/15 27/22 28/1 28/4 28/4 30/8 31/1 31/4 31/9 32/1 32/8 32/18 42/18 42/21
**enhancements [2]** 4/12 34/16
**enough [5]** 8/25 19/1 49/12 61/10 65/21
**enrolled [1]** 80/17
**ensure [3]** 58/2 63/21 67/25
**ensures [1]** 56/25
**entered [1]** 73/18
**entire [1]** 45/10
**entry [1]** 83/5
**episode [3]** 33/23 33/25 75/21
**episodes [1]** 76/11

**equal [1]** 72/19
**equivalent [1]** 55/19
**escrowed [1]** 41/18
**especially [1]** 17/11
**ESQUIRE [5]** 1/11 1/12 1/12 1/16 1/16
**essentially [1]** 25/16
**established [1]** 65/5
**establishing [1]** 34/18
**estimate [1]** 34/22
**even [36]** 8/25 10/3 13/6 14/7 15/21 16/18 21/12 21/21 23/1 24/21 35/2 41/7 41/10 43/18 46/10 46/19 46/21 47/17 47/22 49/9 49/17 50/22 52/6 52/22 56/1 56/9 57/25 58/3 59/21 66/3 68/4 73/10 73/18 74/8 81/12 81/16
**event [1]** 13/14
**events [5]** 11/3 11/7 12/19 34/18 84/3
**ever [7]** 44/18 45/9 46/12 48/7 57/1 57/5 57/11
**every [13]** 15/24 16/13 18/2 22/20 22/20 46/7 46/14 47/6 55/10 56/6 58/16 71/25 75/10
**everyone [4]** 7/20 46/18 46/20 51/10
**everyone's [1]** 28/21
**everything [5]** 18/23 44/15 45/12 46/11 47/1
**evidence [5]** 18/4 29/25 68/3 74/3 80/9
**evil [4]** 49/5 74/5 82/8 82/16
**evolving [1]** 68/12
**ex [4]** 27/12 27/17 27/19 30/23
**exact [3]** 36/3 74/22 76/2
**exactly [1]** 45/9
**example [6]** 6/9 12/24 20/22 20/23 25/16 67/3
**examples [3]** 20/23 33/4 53/12
**exceeds [1]** 67/13
**except [2]** 39/11 77/20
**exception [2]** 30/10 42/4
**Excuse [1]** 25/22
**executive [2]** 59/12 59/13
**exercise [4]** 20/5 23/23 56/7 83/24
**exists [2]** 30/15 80/8

**expand [1]** 11/24
**expect [1]** 64/17
**expectancy [5]** 53/22 54/15 55/3 55/5 67/13
**explain [1]** 74/5
**explained [1]** 51/14
**explains [1]** 55/2
**explanation [1]** 74/2
**explicit [3]** 31/22 79/17 79/22
**explicitly [1]** 32/20
**expressed [2]** 51/5 51/10
**expression [1]** 30/3
**extensive [1]** 32/10
**extensively [1]** 4/25
**extent [3]** 27/12 42/8 72/19
**extra [2]** 24/2 76/22
**extraordinary [1]** 20/20
**extremely [2]** 46/16 75/3
**eyes [1]** 47/17

**F**

**F.3rd [4]** 31/6 32/23 54/11 54/12
**F.B.I [4]** 44/21 44/24 45/2 46/8
**face [2]** 39/11 81/7
**facilities [1]** 79/9
**facility [17]** 63/24 64/20 65/4 65/11 68/1 69/13 69/17 69/21 70/14 70/19 71/5 71/6 71/8 71/10 79/1 79/5 80/16
**facing [1]** 64/10
**fact [11]** 15/21 31/14 31/14 32/14 47/2 49/25 52/13 55/19 60/10 71/2 81/11
**facto [4]** 27/13 27/17 27/19 30/23
**factor [2]** 24/19 29/3
**factoring [1]** 24/21
**factors [6]** 56/4 61/21 61/23 72/9 72/21 74/6
**facts [4]** 10/14 30/4 40/17 75/19
**factual [2]** 6/14 22/9
**factually [1]** 39/13
**failed [1]** 46/4
**Failure [1]** 80/3
**fair [9]** 13/13 19/1 21/23 22/14 30/22 40/3 42/14 61/10 82/11
**fall [2]** 34/18 82/6

## F

**false [1]** 50/23
**familiar [2]** 15/12 17/5
**families [2]** 51/4 73/21
**family [1]** 3/13
**far [5]** 9/12 23/19 54/15 55/9 66/21
**father [4]** 5/15 28/20 52/20 52/22
**FBI [3]** 2/9 50/19 50/20
**FCI [1]** 80/15
**FCRR [1]** 1/20
**fear [2]** 24/19 50/25
**federal [22]** 7/17 7/21 31/9 33/5 59/14 59/15 59/16 59/17 60/1 63/23 64/8 64/15 64/21 65/6 65/14 65/14 66/11 66/23 66/24 66/25 67/1 67/18
**federally [1]** 59/8
**fee [1]** 83/10
**feel [3]** 22/3 45/16 46/4
**feelings [1]** 46/24
**fees [1]** 38/14
**felt [4]** 16/22 45/9 45/10 47/3
**few [3]** 4/22 52/3 81/5
**Fifteen [1]** 32/7
**Fifth [2]** 33/10 33/10
**Fighting [1]** 47/5
**figured [1]** 60/3
**file [2]** 83/4 83/6
**filed [2]** 2/25 5/25
**filing [3]** 3/12 53/20 83/9
**film [2]** 79/14 79/19
**final [3]** 15/6 32/16 43/18
**finalize [1]** 43/13
**find [7]** 9/21 15/19 22/7 32/1 34/1 39/11 44/22
**find that [1]** 22/7
**finding [9]** 31/20 31/24 34/23 35/1 42/17 57/17 60/25 61/5 61/11
**finds [1]** 74/10
**fine [6]** 4/19 18/24 35/11 38/25 39/8 80/18
**fines [4]** 38/18 42/9 42/12 70/7
**fingers [1]** 49/15
**first [22]** 2/21 4/4 5/2 7/21 26/24 30/9 32/3 43/23 43/24 45/6 47/1 48/15 54/1 59/17 59/21 60/1 63/1 63/15 64/4

71/3 72/22 78/12
**first-degree [1]** 63/1
**five [9]** 20/6 23/9 23/20 24/3 31/7 34/15 34/24 34/24 35/10
**five-year [1]** 31/7
**floating [1]** 39/1
**focus [2]** 6/23 67/15
**focused [1]** 62/3
**follow [3]** 11/18 78/6 79/10
**following [2]** 2/20 78/6
**follows [1]** 77/15
**followup [1]** 27/8
**fool [1]** 45/25
**footed [1]** 73/16
**forced [1]** 49/17
**forces [1]** 17/9
**forcing [3]** 17/7 31/16 31/16
**foregoing [1]** 85/11
**foreign [2]** 16/12 31/11
**forever [5]** 49/22 51/3 51/12 53/10 73/21
**forfeiture [1]** 4/1
**forget [2]** 48/17 50/2
**forgets [1]** 46/12
**form [2]** 72/25 75/4
**forms [2]** 9/10 31/4
**forth [2]** 8/1 44/1
**forthcoming [1]** 43/10
**forward [7]** 50/13 50/18 50/25 52/17 61/20 81/20 81/23
**found [9]** 2/17 15/25 19/12 33/8 33/14 36/5 42/16 46/6 47/1
**four [10]** 13/1 20/24 22/11 28/3 30/15 32/5 34/11 57/21 70/20 73/2
**four-level [1]** 28/3
**four-year-old [1]** 30/15
**Fourteen [1]** 32/6
**fourth [6]** 31/6 31/10 32/4 32/23 33/7 57/20
**framework [1]** 68/18
**frankly [3]** 17/22 42/18 61/18
**freebie [1]** 23/10
**frequent [2]** 73/3 74/13
**friend [1]** 45/14
**frivolous [4]** 6/13 8/8 8/10 8/14
**frustration [1]** 75/13
**fully [2]** 56/3 69/6

**function [1]** 59/13
**funds [3]** 36/23 40/21 41/18
**further [8]** 9/7 11/13 29/21 69/20 70/17 74/19 83/11 85/11
**furthers [1]** 68/10
**future [5]** 37/16 37/19 39/6 46/13 61/6

## G

**game [1]** 7/16
**gap [2]** 21/13 34/4
**general [6]** 18/7 30/21 55/23 61/15 63/6 75/4
**generally [3]** 57/24 68/3 82/25
**generated [2]** 79/15 79/20
**get [18]** 8/25 10/10 12/8 13/18 13/25 14/9 23/20 23/24 39/8 46/23 56/5 56/5 57/2 58/2 65/20 66/10 70/22 81/14
**gets [4]** 32/15 46/18 57/1 59/25
**getting [5]** 9/1 14/14 41/3 46/20 47/3
**girl [4]** 51/8 52/2 52/5 52/6
**girls [27]** 49/6 49/6 49/10 49/14 49/18 49/21 49/22 50/1 50/9 50/12 50/15 50/16 51/2 51/4 51/5 51/16 51/19 52/1 52/16 53/7 73/1 73/8 73/14 73/17 73/20 82/3 82/3
**give [2]** 55/3 81/23
**given [11]** 21/24 30/5 35/8 37/8 48/1 57/16 57/18 60/8 65/18 74/6 81/15
**gives [1]** 25/16
**giving [1]** 65/21
**go [13]** 5/1 6/3 6/12 7/21 11/2 18/8 25/24 44/9 47/9 51/9 56/23 62/17 79/6
**goal [1]** 75/7
**goes [3]** 9/13 28/23 76/18
**going [33]** 7/12 7/21 11/19 24/3 27/13 27/18 29/2 30/5 30/24 30/25 31/20 31/23 32/11 34/1 34/19 37/14 42/15 42/21 44/13 44/21 46/23 51/6 55/20 57/2 57/3 58/8 60/13 60/22 61/17 62/3 64/17 67/10 77/12

**G**

**gone [2]** 51/9 82/12
**good [7]** 2/10 2/11 2/14 2/14 39/1 44/5 55/17
**got [4]** 22/10 57/11 57/12 61/8
**government [26]** 1/11 2/24 2/25 3/9 3/16 6/6 6/25 10/6 14/17 34/14 37/18 40/8 42/17 43/3 43/24 48/15 53/12 58/24 65/6 65/16 66/24 67/1 69/25 74/23 75/3 83/13
**government's [2]** 2/22 5/8
**grandchildren [1]** 52/23
**granddaughter [1]** 47/20
**grandmothers [1]** 81/15
**grateful [1]** 51/1
**gratification [3]** 28/9 28/10 28/11
**great [2]** 50/25 57/16
**greater [7]** 55/24 67/14 69/2 69/11 72/15 75/16 77/11
**greatly [1]** 67/13
**Greenbelt [3]** 1/4 1/14 1/21
**groping [1]** 52/3
**ground [1]** 30/19
**grounds [2]** 30/7 80/3
**group [8]** 13/18 14/8 14/13 19/14 33/6 33/7 33/13 33/15
**grouped [7]** 12/2 21/3 32/21 32/24 33/9 34/2 76/1
**grouping [16]** 4/13 11/25 11/25 12/4 12/17 12/18 12/22 12/22 12/23 19/11 21/17 24/1 24/2 24/3 32/17 32/18
**groups [8]** 19/16 33/17 33/20 34/15 34/20 34/20 34/21 34/24
**Growing [1]** 44/10
**guess [12]** 14/20 14/24 15/13 16/3 18/5 18/19 26/22 27/3 36/18 41/3 60/2 60/3
**guidance [2]** 27/14 55/23
**guideline [17]** 8/19 15/8 18/18 19/4 19/23 25/8 26/23 32/21 32/25 35/7 35/9 35/11 54/14 72/7 72/17 74/7 80/21
**guidelines [26]** 14/1 18/6 18/13 18/14 26/4 26/25 27/2 27/11 30/24 34/16 35/5 42/25 43/2 43/17 54/13 60/16 63/5

63/10 68/14 68/18 69/1 69/1 69/10 74/8 74/9 77/2
**guilt [1]** 51/12
**guilty [3]** 2/17 7/2 72/1

**H**

**habitability [1]** 65/5
**had [39]** 3/7 4/5 5/3 6/16 6/25 19/21 19/23 22/7 23/5 27/8 27/21 33/14 38/21 39/22 39/24 40/6 40/20 43/5 44/23 45/4 45/10 45/19 47/1 47/12 48/3 49/10 50/15 50/19 52/22 57/11 57/11 57/11 59/18 64/22 67/17 73/16 73/17 75/25 85/6
**hadn't [1]** 11/14
**hair [1]** 17/15
**hallmarks [1]** 83/23
**hand [1]** 34/10
**handed [1]** 51/19
**hands [2]** 38/12 44/16
**happen [6]** 24/3 38/17 44/13 48/3 64/13 66/4
**happened [8]** 38/3 38/10 39/20 44/18 45/23 46/12 48/3 59/18
**happening [3]** 44/11 49/10 49/11
**happens [1]** 7/17
**happy [2]** 10/9 59/25
**hard [3]** 61/14 61/15 75/12
**harm [19]** 12/2 12/5 12/20 13/7 19/25 20/12 20/17 22/4 22/21 23/2 23/7 23/18 32/19 32/22 33/18 56/19 73/13 73/18 74/13
**harmed [2]** 73/14 81/7
**harmless [1]** 54/25
**harmlessness [1]** 11/12
**harms [2]** 21/3 21/21
**has [39]** 4/13 7/2 13/20 15/11 15/25 16/13 29/6 34/14 36/7 36/24 37/12 38/15 38/22 39/22 39/22 41/9 41/9 42/15 42/20 47/14 49/20 50/7 51/3 51/9 52/12 52/15 53/12 53/23 54/21 57/18 57/20 58/8 59/15 70/14 71/21 73/25 74/3 75/3 80/16
**hasn't [2]** 36/19 60/14

**have [114]**
**haven't [6]** 15/16 30/16 39/14 39/18 60/3 62/3
**having [4]** 11/1 46/2 82/12 84/2
**HAYES [2]** 1/12 2/8
**he [73]** 6/13 17/14 29/7 29/9 29/11 29/12 29/13 29/14 29/16 29/18 29/19 29/21 29/21 29/22 37/6 37/11 37/12 37/20 38/15 38/18 38/21 38/21 38/23 39/9 39/11 39/13 39/16 40/6 40/6 40/9 40/14 40/19 41/9 41/12 42/2 42/3 42/19 43/25 45/16 45/21 48/4 50/5 50/22 52/13 52/14 52/16 52/22 55/4 55/5 56/25 57/2 57/2 58/8 58/10 58/10 58/11 59/2 59/8 59/15 59/16 59/19 59/20 59/25 67/21 67/25 69/16 72/25 73/5 73/8 73/14 74/1 74/3 74/20
**he'll [1]** 60/1
**he's [5]** 39/12 42/16 57/1 67/22 67/23
**headline [1]** 69/4
**health [2]** 65/5 74/4
**healthy [1]** 51/17
**hear [6]** 14/17 43/20 43/23 43/24 44/8 48/14
**heard [7]** 22/17 22/22 31/24 39/14 44/11 51/6 81/24
**hearings [1]** 52/1
**heartland [2]** 15/20 17/16
**heinous [3]** 49/8 73/22 81/6
**held [1]** 50/5
**help [4]** 46/6 47/3 48/18 51/25
**her [42]** 17/3 17/7 17/9 17/14 17/14 17/14 17/15 17/24 44/17 44/18 44/22 45/12 45/16 45/21 46/1 46/4 46/6 46/7 46/14 46/22 47/20 47/22 47/24 49/17 49/25 49/25 50/3 50/4 50/4 50/5 50/5 50/6 50/21 51/1 51/11 51/11 51/13 51/14 51/14 52/3 52/5 52/14
**her mommy [1]** 50/3
**here [36]** 2/4 2/15 6/10 7/20 8/11 8/16 10/2 10/14 11/3 11/7 11/14 12/2 16/13 17/2

**H**

**here... [22]** 18/15 22/10 24/11 27/16 30/11 30/23 40/9 41/3 48/10 51/15 54/14 54/23 55/9 57/8 57/13 57/15 59/7 59/11 60/14 63/25 67/8 80/24
**hereby [1]** 85/5
**hereto [1]** 85/15
**hid [1]** 50/22
**high [2]** 55/21 75/3
**higher [2]** 55/18 82/20
**him [11]** 6/12 29/20 41/6 45/20 45/20 47/13 52/14 52/24 66/10 66/17 67/19
**himself [2]** 49/8 73/1
**hinged [1]** 25/11
**his [48]** 5/15 6/11 17/9 28/18 28/20 29/9 29/15 29/24 37/7 37/24 37/25 38/14 38/25 39/25 40/5 40/9 40/9 40/11 40/19 41/2 47/13 49/15 49/15 49/16 49/17 50/24 52/3 52/12 52/23 53/8 53/21 54/25 55/1 55/5 57/3 58/11 59/2 59/8 59/17 63/23 64/21 67/13 67/17 69/8 69/23 71/21 73/3 74/1
**history [6]** 35/6 51/23 52/10 72/10 73/24 74/1
**hold [1]** 47/24
**holds [1]** 6/6
**hole [1]** 47/3
**honestly [1]** 44/23
**honor [90]**
**HONORABLE [1]** 1/8
**hope [4]** 37/17 47/25 57/16 68/12
**hopefully [1]** 7/10
**horrible [2]** 51/13 73/10
**horrific [6]** 17/13 20/11 27/25 67/9 72/23 74/12
**horror [2]** 49/23 50/11
**hours [2]** 78/21 79/3
**house [4]** 45/15 46/10 52/3 79/24
**how [17]** 12/3 15/15 19/19 22/24 23/11 45/9 46/4 47/16 47/16 47/20 50/14 50/15 55/22 56/5 64/23 75/2 83/18
**Howells [1]** 54/21
**however [4]** 6/7 13/1 14/13

34/3
**Hubbard [1]** 1/17
**hum [2]** 5/24 26/20
**human [1]** 47/21
**hundred [4]** 53/15 55/9 56/6 57/19
**hundred-twenty-year [1]** 57/19
**hundreds [2]** 53/13 57/22
**hurt [3]** 47/15 51/11 75/13

**I**

**I'd [1]** 62/17
**I'll [12]** 9/21 10/10 32/8 34/22 43/20 45/8 48/14 49/2 56/23 64/9 69/25 72/20
**I'm [52]** 5/4 5/9 5/20 8/18 10/9 10/22 14/1 15/12 16/3 16/4 16/6 17/17 17/21 17/25 18/1 21/23 22/8 22/8 22/23 23/19 26/6 27/7 27/9 30/25 31/19 31/23 32/11 34/1 34/19 36/2 36/7 37/9 40/16 41/3 41/24 42/15 42/21 43/9 47/10 47/10 47/22 53/22 59/6 59/25 60/4 61/4 62/9 64/11 65/15 65/16 70/20 77/11
**I've [10]** 3/15 16/11 20/4 43/2 57/8 57/10 57/11 57/16 72/8 72/13
**idea [2]** 36/22 47/12
**identified [1]** 28/24
**identify [1]** 2/5
**identity [1]** 52/7
**ignored [1]** 49/25
**image [2]** 79/15 79/20
**imaginable [1]** 50/11
**imagine [2]** 58/19 73/21
**immediately [2]** 45/3 50/21
**impact [7]** 2/23 23/25 51/7 59/7 61/2 69/5 81/25
**implore [1]** 15/19
**implorement [1]** 69/9
**important [4]** 13/16 13/16 65/17 68/11
**importantly [1]** 74/18
**impose [8]** 53/6 55/23 63/19 75/16 77/12 80/18 82/21 82/22
**imposed [8]** 39/10 53/14 64/2 64/12 64/22 65/13 72/14

80/24
**imposes [3]** 58/23 64/1 76/25
**impression [2]** 7/15 41/6
**imprisonment [7]** 35/7 54/24 65/3 74/10 77/6 77/17 77/20
**impulse [2]** 75/7 75/18
**in-person [1]** 78/22
**inability [1]** 38/15
**incarcerated [4]** 39/3 40/18 40/20 55/1
**incarceration [1]** 8/1
**incidences [1]** 23/7
**incident [3]** 21/1 33/18 34/13
**incidental [1]** 78/23
**incidents [2]** 34/8 52/4
**include [6]** 27/6 41/22 41/25 72/1 78/23 81/2
**included [2]** 73/4 73/19
**includes [2]** 70/17 78/21
**including [9]** 7/20 72/9 73/6 77/9 78/15 78/18 79/8 79/14 79/19
**increase [1]** 34/24
**indicate [2]** 34/5 37/9
**indicated [2]** 37/7 40/1
**indicates [1]** 37/6
**indication [1]** 36/6
**indigency [4]** 37/10 39/25 42/11 70/8
**indigent [14]** 36/5 37/2 37/11 37/22 38/21 39/12 39/14 39/16 39/18 39/21 40/6 42/3 42/16 42/20
**individual [2]** 44/2 81/20
**individuals [1]** 70/18
**inducement [1]** 66/17
**indulgence [1]** 62/6
**infant [9]** 8/23 9/12 9/15 15/8 15/18 27/6 27/11 30/10 31/1
**infant/toddler [4]** 15/8 27/11 30/10 31/1
**infants [1]** 18/23
**inflict [1]** 76/13
**information [6]** 3/24 10/18 37/5 38/10 43/9 52/7
**innocence [1]** 81/10
**inquiring [1]** 44/25
**inside [3]** 37/20 45/17 47/8
**insisted [1]** 45/2
**inspections [1]** 79/4
**instance [1]** 19/25

## I

**instances [7]** 19/23 20/12 20/13 20/17 23/18 65/10 76/8
**instead [2]** 13/19 14/8
**instinctive [1]** 75/12
**instruction [1]** 75/15
**instruments [1]** 29/23
**intent [1]** 63/22
**interact [1]** 78/10
**intercourse [2]** 31/7 31/13
**interference [1]** 63/22
**intermediate [1]** 43/19
**interprets [1]** 64/23
**interviewed [2]** 41/6 46/8
**investigated [1]** 81/21
**invites [1]** 67/4
**involve [1]** 32/25
**involvement [1]** 47/11
**irrelevant [2]** 13/19 14/11
**is [293]**
**ISABELLE [2]** 1/16 2/12
**isn't [4]** 8/25 39/21 41/8 46/24
**issue [19]** 10/7 10/8 10/22 11/1 14/12 18/5 20/21 23/19 27/3 28/13 30/8 30/18 30/23 32/17 32/21 33/23 48/19 57/13 65/9
**issues [7]** 6/11 7/11 15/7 27/17 68/21 71/1 71/21
**it [179]**
**it's [55]** 6/1 9/7 9/23 11/17 13/9 13/15 13/16 16/17 17/24 18/5 19/18 20/5 20/19 20/25 21/21 21/25 22/1 22/3 22/17 22/25 23/8 23/21 23/22 25/15 25/20 26/15 26/18 26/22 26/22 28/4 30/22 30/24 31/15 31/16 31/18 34/10 36/12 39/1 41/7 41/14 41/16 41/18 45/20 60/9 60/9 60/12 60/17 61/4 61/13 65/25 67/11 69/4 75/20 76/16 83/24
**its [5]** 6/6 59/23 61/22 64/23 82/13
**itself [7]** 17/1 19/3 26/23 28/7 54/15 63/5 81/17

## J

**Jacqueline [1]** 2/9
**jail [4]** 5/4 5/8 6/25 39/6

## January

**January [14]** 1/5 2/23 2/25 3/1 3/2 3/7 3/13 5/4 13/6 25/17 26/1 27/4 61/4 85/10
**January 14 [2]** 2/23 2/25
**January 17th [1]** 3/2
**January 1992 [1]** 25/17
**January 22nd [1]** 3/1
**January 28 [1]** 13/6
**January 29th [1]** 3/7 3/13
**job [1]** 55/17
**joke [1]** 44/24
**JOSEPH [2]** 1/12 2/7
**judge [6]** 1/9 60/6 60/19 60/24 61/6 73/11
**judge's [1]** 60/7
**judges [3]** 19/22 61/13 83/24
**judgment [4]** 43/14 59/24 81/3 83/5
**judicial [1]** 65/7
**jurisdiction [9]** 3/2 59/13 59/15 59/18 64/5 66/15 66/24 66/25 81/2
**jury [6]** 2/17 16/6 73/11 82/12 82/13 84/1
**just [69]** 3/18 4/17 5/3 5/20 7/15 8/9 8/15 10/22 11/3 11/9 11/12 11/13 11/15 11/24 12/8 14/1 14/7 14/9 15/9 15/25 17/2 17/13 18/1 19/7 20/23 22/1 22/14 22/15 22/20 22/23 25/11 27/21 30/13 35/17 37/14 37/15 38/19 40/21 43/2 43/13 44/8 45/16 48/17 50/9 53/2 53/3 55/11 56/24 57/4 57/6 57/7 57/21 59/4 59/6 61/3 61/7 61/21 63/15 63/16 66/20 67/4 67/5 70/12 71/8 74/15 76/6 76/6 76/8 76/12
**justice [10]** 75/11 75/19 76/14 76/17 76/20 76/21 82/10 82/10 82/15 83/23
**justify [1]** 56/18

## K

**keep [1]** 58/15
**keepers [4]** 82/5 82/5 82/6 82/6
**keeps [2]** 53/10 58/3
**KELLY [2]** 1/12 2/8
**key [1]** 29/14
**keyed [1]** 30/18

**kills [1]** 47/8
**kind [3]** 12/7 16/12 75/10
**knew [3]** 45/5 45/20 52/22
**know [40]** 7/8 7/25 9/19 11/19 14/10 18/9 23/1 23/6 23/11 27/15 30/19 36/1 37/10 38/3 38/24 39/19 40/23 45/8 45/8 45/14 46/6 46/12 46/13 46/15 46/17 47/25 48/4 51/7 58/23 60/2 60/12 60/15 61/8 62/19 78/14 78/14 78/17 78/18 79/7 81/22
**knowing [3]** 45/16 47/18 61/16
**KRISTI [2]** 1/11 2/7
**KYLE [8]** 1/5 2/4 2/12 45/4 45/8 48/1 67/11 85/8
**Kyle's [1]** 46/10

## L

**lack [3]** 4/11 7/8 80/18
**laid [1]** 62/18
**Lane [2]** 1/13 1/21
**language [2]** 25/25 64/19
**large [1]** 16/15
**lashing [1]** 46/2
**last [6]** 15/6 27/3 30/14 36/2 43/5 53/19
**last-minute [1]** 53/19
**lasting [1]** 73/20
**late [1]** 20/14
**later [5]** 14/5 14/11 26/3 26/5 30/21
**laundry [1]** 50/24
**law [14]** 15/14 29/20 31/22 34/17 50/13 53/5 60/2 60/15 60/21 74/15 76/21 78/8 81/21 82/11
**lawyers [2]** 29/9 83/24
**lays [1]** 62/21
**lead [2]** 24/5 74/21
**leads [1]** 34/21
**learned [1]** 50/20
**learning [1]** 52/21
**least [17]** 9/17 10/23 12/8 18/3 20/25 24/8 24/17 30/12 32/14 34/15 37/16 43/18 43/22 53/13 66/10 70/20 76/4
**leave [2]** 42/15 61/6
**left [1]** 41/5
**legal [2]** 38/14 41/2

## L

**legitimately [1]** 42/3
**length [3]** 22/12 50/9 59/20
**lenity [1]** 32/12
**less [6]** 48/1 51/21 52/23 53/9 55/5 68/23
**let [3]** 8/15 14/17 55/16
**letter [5]** 3/2 3/10 3/12 3/13 67/21
**letters [1]** 81/25
**level [10]** 8/6 12/4 23/24 28/3 30/9 32/15 35/1 35/4 35/5 71/5
**levels [1]** 34/25
**lien [1]** 39/2
**life [34]** 13/22 35/7 35/10 48/5 51/19 53/22 54/6 54/14 54/15 54/24 54/25 55/3 55/5 55/6 55/19 58/12 64/10 67/3 67/13 68/14 68/15 68/19 68/19 68/19 68/19 69/1 69/8 69/11 69/11 74/10 74/11 74/18 77/1 82/18
**lifetime [4]** 52/17 55/1 78/2 81/11
**light [1]** 71/21
**like [23]** 3/21 16/23 18/25 22/3 38/16 39/4 41/10 43/23 43/25 44/8 45/10 46/4 46/17 47/3 61/15 61/17 62/15 66/2 68/21 69/3 70/17 71/14 71/18
**likely [5]** 15/22 33/22 51/16 79/7 82/21
**likewise [1]** 31/11
**limit [2]** 34/20 76/18
**limits [2]** 76/17 76/18
**line [5]** 17/10 53/25 54/8 55/8 65/21
**lines [2]** 7/13 26/18
**Lisa [4]** 1/20 85/3 85/19 85/20
**list [1]** 11/13
**listed [1]** 29/4
**little [30]** 11/9 35/3 40/16 47/19 49/14 49/18 49/21 49/22 50/1 50/8 50/12 50/15 50/16 51/2 51/4 51/5 51/8 51/16 51/19 51/25 52/2 52/5 52/6 52/16 53/7 60/8 73/1 73/14 82/3 82/3
**live [5]** 49/9 49/22 51/12 55/4 73/21

**live-streamed [1]** 49/9
**lives [1]** 49/19
**LLC [1]** 1/15
**location [1]** 69/24
**locked [1]** 40/14
**long [5]** 21/14 24/8 50/10 51/16 73/20
**longer [2]** 50/14 54/24
**look [9]** 11/16 22/14 31/2 47/12 47/17 52/17 56/13 62/18 71/4
**looked [5]** 9/19 30/16 46/7 60/2 61/7
**looking [8]** 11/10 14/25 15/1 24/18 44/25 52/10 61/23 68/9
**looks [1]** 14/21
**loose [1]** 15/15
**loss [1]** 32/22
**lot [5]** 9/15 9/16 57/8 58/22 70/22
**loud [1]** 82/13
**loudly [1]** 75/9
**low [1]** 78/9
**lower [3]** 30/17 56/11 68/7
**lucky [1]** 44/16
**Lynn [1]** 61/4

## M

**ma'am [2]** 44/6 48/8
**machine [2]** 85/5 85/13
**made [10]** 7/20 20/25 29/11 33/9 54/3 72/25 76/12 79/16 79/21 83/2
**main [1]** 81/13
**maintain [1]** 51/17
**maintained [1]** 65/6
**majority [3]** 24/14 30/13 31/18
**make [32]** 4/18 12/1 24/25 30/24 31/20 31/23 31/24 32/13 32/15 34/23 44/15 44/17 56/10 57/4 59/2 59/6 59/24 60/4 60/13 61/5 61/11 61/14 61/14 61/16 61/22 65/17 66/4 66/10 70/11 70/13 71/18 80/14
**makes [6]** 18/3 25/3 45/16 64/11 65/12 81/12
**making [2]** 54/23 60/16
**male [1]** 16/1
**males [1]** 51/18

**man [2]** 45/4 45/19
**man's [1]** 45/15
**management [6]** 70/14 70/15 70/24 71/5 71/9 80/16
**mandated [1]** 78/7
**manner [3]** 40/11 40/13 80/11
**manual [5]** 26/4 26/5 27/1 27/2 27/11
**many [4]** 31/5 45/22 47/8 50/15
**March [4]** 6/1 13/3 13/4 40/18
**March 19th [1]** 6/1
**March 4 [1]** 13/3
**March 5th [1]** 13/4
**market [1]** 38/22
**MARYLAND [6]** 1/1 1/4 1/14 1/17 1/21 85/5
**masochistic [3]** 9/4 9/6 9/8
**materials [2]** 3/3 3/16
**math [2]** 25/4 55/15
**mathematical [1]** 17/23
**matter [11]** 2/2 18/10 22/3 22/9 24/5 34/15 36/18 42/13 56/10 60/24 68/20
**mattered [1]** 18/10
**matters [4]** 6/14 17/22 68/21 69/12
**maturing [1]** 68/12
**maximum [16]** 34/24 35/5 48/1 51/21 53/4 53/6 55/10 55/12 55/14 56/4 56/18 57/19 72/7 72/16 74/9 74/23
**maximums [1]** 35/8
**may [24]** 9/22 13/14 14/21 17/1 29/12 36/14 46/13 64/13 64/22 65/3 65/11 67/20 67/24 69/6 69/20 71/6 72/18 80/3 80/5 80/6 81/13 81/17 82/24 83/2
**May 29 [1]** 36/14
**maybe [5]** 8/18 8/18 11/17 29/10 61/14
**me [35]** 5/10 5/14 8/15 14/17 17/18 22/14 22/22 25/22 40/12 44/8 44/21 44/25 45/3 45/3 45/5 45/7 45/11 45/16 45/22 46/9 46/10 46/25 47/8 47/14 47/15 47/17 47/20 47/23 48/18 55/16 56/9 59/4 59/24 61/17 71/7
**mean [29]** 7/24 9/16 9/23

**M**

**mean... [26]**  16/10 21/13 22/2 22/5 22/17 27/5 27/9 28/6 28/7 36/16 38/2 39/7 39/18 39/21 40/6 40/6 40/13 41/9 55/16 60/7 60/8 65/20 66/2 68/15 68/19 69/11

**meaning [2]**  6/17 10/13

**meaningful [2]**  83/20 84/4

**means [5]**  64/5 68/19 69/11 79/16 79/22

**meant [1]**  45/21

**measure [1]**  77/4

**Mebane [2]**  37/21 62/25

**mechanical [3]**  1/23 79/16 79/21

**mechanics [1]**  43/6

**media [1]**  80/1

**meet [4]**  45/3 55/25 72/11 75/17

**meets [3]**  18/3 65/4 77/8

**member [2]**  3/13 43/23

**members [4]**  48/11 81/8 83/21 84/2

**memo [1]**  35/24

**memorandum [4]**  2/23 2/25 3/1 5/4

**mens [1]**  6/16

**mental [1]**  74/4

**mentioned [1]**  30/9

**MERCER [15]**  1/16 2/12 4/4 10/11 11/23 14/15 14/21 16/8 17/24 27/9 30/22 38/9 63/13 71/1 71/15

**message [5]**  44/20 57/24 68/17 75/8 77/2

**met [2]**  18/4 45/19

**meting [1]**  75/14

**middle [3]**  18/7 21/2 33/24

**might [4]**  22/9 51/11 57/25 61/14

**million [1]**  44/13

**mind [2]**  23/17 45/6

**minimum [2]**  23/18 65/5

**minor [3]**  62/17 62/20 62/25

**minute [2]**  23/2 53/19

**minutes [7]**  20/24 21/14 22/11 22/11 50/10 50/10 76/5

**missing [3]**  8/18 40/19 59/6

**misspoke [1]**  6/1

**mistaken [1]**  61/4

**mob [1]**  76/20

**modest [3]**  38/15 39/2 40/24

**molested [1]**  46/1

**moment [6]**  5/21 25/7 35/15 45/10 62/5 62/6

**mommy [4]**  50/3 50/4 73/8 73/9

**money [7]**  36/7 37/24 39/20 40/15 41/5 41/6 41/15

**monitoring [1]**  70/17

**Montgomery [2]**  50/20 59/3

**months [13]**  23/15 35/9 53/23 54/5 67/13 68/16 68/20 68/23 74/25 77/6 77/18 77/18 77/25

**more [28]**  10/9 14/19 20/6 23/9 24/11 28/6 32/10 33/1 34/24 40/12 44/19 45/13 46/10 50/16 51/18 53/14 54/15 55/4 55/9 58/19 65/24 69/3 70/19 73/22 76/2 77/1 77/8 81/12

**moreover [1]**  26/16

**morning [6]**  2/10 2/11 2/14 2/15 20/15 44/5

**most [13]**  10/21 19/16 22/13 31/5 34/22 39/18 47/9 57/10 62/19 73/3 74/18 81/6 81/7

**mother [13]**  37/7 37/24 45/13 45/14 45/18 47/11 47/19 47/22 51/8 51/9 51/14 67/21 83/18

**mother's [1]**  45/7

**mothers [2]**  51/5 81/22

**motion [3]**  5/8 28/18 29/1

**motions [1]**  52/1

**motivating [1]**  6/17

**motives [1]**  7/25

**mouth [3]**  17/8 17/9 49/17

**move [1]**  49/17

**movies [1]**  44/12

**Mr [41]**  2/12 2/15 2/16 4/4 6/2 6/11 10/11 11/22 14/15 14/20 16/8 17/23 25/11 27/8 27/9 29/6 30/20 30/22 38/9 38/13 40/17 43/25 63/13 63/23 64/9 64/20 65/13 66/23 67/16 67/17 67/21 68/9 71/1 71/14 71/17 71/21 72/6 73/25 77/12 81/5 82/25

**Mr. [3]**  5/6 37/21 62/25

**Mr. Mebane [2]**  37/21 62/25

**Mr. Thompson [1]**  5/6

**Ms [5]**  4/4 39/17 48/12 67/16 70/10

**much [13]**  8/22 9/17 21/15 22/13 47/18 48/8 50/14 52/23 52/24 69/11 75/2 75/14 76/13

**multiple [4]**  13/12 22/7 29/4 76/4

**must [20]**  21/1 28/6 28/8 58/11 74/20 78/10 78/13 78/19 79/2 79/6 79/9 79/13 79/18 79/24 80/4 80/10 80/11 80/12 82/9 83/4

**my [51]**  9/12 10/11 11/13 15/24 17/21 18/7 18/12 23/4 35/25 36/1 36/2 37/17 38/1 40/22 44/10 44/16 44/21 44/22 44/25 45/3 45/3 45/6 45/7 45/10 45/13 45/14 45/15 45/18 45/19 45/20 46/8 46/24 47/10 47/16 47/19 47/19 47/22 48/3 48/5 49/2 55/15 60/21 61/2 61/13 65/9 73/8 76/12 85/6 85/13 85/14 85/15

**myself [3]**  45/23 45/23 47/10

**N**

**name [4]**  44/10 45/5 45/7 85/16

**named [1]**  45/4

**narrows [1]**  9/6

**nation [1]**  82/7

**nature [7]**  41/1 49/4 49/13 56/15 67/10 72/9 72/22

**near [5]**  40/21 45/19 58/10 74/20 76/18

**necessarily [7]**  6/22 16/23 18/2 18/10 19/19 29/11 31/8

**necessary [13]**  55/24 55/25 56/3 56/11 57/14 67/14 69/2 70/16 72/15 72/19 74/14 75/17 77/11

**necessities [1]**  39/4

**necessity [1]**  7/12

**need [10]**  14/19 15/21 21/3 39/3 47/2 56/13 72/11 72/12 74/16 83/11

**needed [2]**  29/6 74/18

**needs [1]**  56/25

**neighborhood [1]**  44/21

**neither [2]**  9/18 42/20

**N**

**never [23]** 12/8 30/3 44/12 45/18 45/19 46/3 47/14 47/15 47/16 48/2 50/2 52/12 52/15 52/22 57/1 57/9 57/10 58/2 58/25 59/2 74/20 81/19 82/16
**Nevertheless [1]** 76/24
**new [2]** 36/24 42/18
**news [1]** 44/12
**next [2]** 21/15 26/19
**nice [1]** 54/21
**night [3]** 20/14 36/2 50/18
**nightmares [1]** 46/2
**nine [7]** 13/3 22/11 25/3 32/9 33/25 34/9 77/21
**no [56]** 1/3 3/17 3/25 4/2 8/8 8/9 8/21 9/25 11/15 12/22 15/12 16/7 16/9 20/7 20/21 22/3 23/10 23/13 24/11 25/3 27/25 29/25 30/18 36/6 38/4 38/13 38/25 39/15 40/20 41/6 42/2 42/6 42/16 42/17 43/8 44/24 45/6 45/11 47/12 49/12 50/11 51/8 54/25 57/5 59/10 63/21 71/2 71/16 73/25 74/2 74/3 78/13 80/18 80/25 82/15 83/16
**non [2]** 37/2 39/16
**non-indigent [2]** 37/2 39/16
**nonsensical [1]** 69/5
**normal [1]** 17/1
**North [2]** 71/6 71/10
**not [115]**
**note [12]** 6/7 15/9 28/21 29/5 37/12 52/11 54/9 56/22 58/13 61/24 64/9 66/14
**noted [5]** 34/14 35/25 36/1 36/1 51/8
**notereading [1]** 1/23
**notes [7]** 19/14 25/14 33/3 33/16 36/2 54/23 85/13
**nothing [9]** 37/8 44/18 45/20 45/21 47/7 48/1 51/21 53/9 58/8
**notice [2]** 83/4 83/7
**notified [1]** 39/25
**notion [1]** 22/23
**notwithstanding [1]** 13/14
**November [3]** 2/22 26/3 26/4
**November 16 [1]** 2/22
**November 1991 [2]** 26/3 26/4

**November's [1]** 26/4
**now [20]** 2/2 13/16 14/2 14/15 14/17 17/24 30/18 41/14 50/5 58/21 59/15 64/4 67/8 68/8 68/20 69/7 73/9 81/5 81/22 82/3
**nowhere [1]** 76/18
**number [16]** 2/3 16/15 21/13 24/12 35/4 54/7 55/21 55/22 56/5 56/11 56/11 57/4 69/3 69/5 69/11 85/9
**numbers [4]** 24/6 43/18 55/19 68/9
**numerous [3]** 17/12 46/5 53/12

**O**

**O'MALLEY [5]** 1/11 2/7 39/17 48/12 70/10
**O.'s [2]** 50/2 51/8
**object [2]** 16/12 31/11
**objecting [1]** 32/18
**objection [3]** 16/7 30/5 42/16
**objections [6]** 4/10 4/14 8/17 35/13 42/25 43/1
**obtain [3]** 28/8 37/17 37/19
**obtaining [1]** 40/25 78/12
**obvious [2]** 30/2 45/20
**obviously [8]** 4/20 7/24 21/7 37/16 56/6 57/3 60/9 61/24
**occasion [1]** 73/7
**occasions [2]** 17/12 76/4
**occupants [1]** 80/4
**occur [4]** 13/2 13/3 13/4 13/5
**occurred [6]** 4/13 5/4 36/19 60/15 76/1 76/4
**occurring [6]** 13/12 13/15 33/12 33/15 33/16 34/6
**occurs [1]** 6/24
**October [1]** 26/2
**October 1988 [1]** 26/2
**off [6]** 13/15 16/5 17/18 22/16 33/24 76/8
**offender [9]** 63/25 68/1 69/18 70/14 70/15 70/24 71/9 79/9 80/16
**offenders [1]** 70/3
**offense [33]** 8/6 12/3 27/4 27/22 29/8 29/15 29/24 30/1 35/1 35/4 35/5 36/19 49/5 49/13 50/11 51/3 53/1 56/14

56/15 56/23 63/1 72/10 72/23 74/15 75/6 75/6 75/10 75/20 75/21 77/3 77/10 79/23 80/23
**offenses [10]** 12/18 26/22 26/24 27/2 27/14 32/20 70/19 73/22 75/22 75/25
**offer [2]** 71/22 82/21
**offered [2]** 42/18 43/2
**office [4]** 1/11 57/12 78/25 80/2
**officer [10]** 33/5 78/13 78/16 78/19 78/20 79/2 79/3 79/11 80/2 80/6
**officer's [1]** 30/6
**official [6]** 6/7 6/20 85/3 85/6 85/12 85/20
**Oh [4]** 3/6 17/25 62/23 62/24
**okay [46]** 2/14 3/15 3/25 4/3 4/24 5/16 6/3 8/1 8/4 8/15 10/10 11/5 11/21 12/14 13/25 14/16 16/10 16/21 17/21 19/2 19/10 20/19 23/21 25/24 26/17 27/7 27/23 28/12 38/6 38/9 43/5 43/13 43/16 48/14 56/16 56/21 59/22 63/3 63/3 63/11 63/17 66/19 70/4 70/10 71/12 71/23
**old [12]** 5/11 10/3 10/4 19/3 30/12 30/13 30/15 31/7 38/22 44/21 53/8 73/2
**older [1]** 14/21
**once [3]** 47/14 47/16 56/5
**one [89]**
**ones [6]** 30/14 32/10 33/19 34/20 62/16 62/18
**only [25]** 4/13 6/10 11/22 12/24 13/8 18/22 23/24 23/25 28/3 28/23 29/3 33/23 36/4 37/19 38/7 40/10 50/3 52/8 53/3 55/10 57/7 58/14 69/24 73/19 80/7
**open [2]** 72/4 83/25
**operational [1]** 59/23
**opportunity [3]** 4/5 4/21 71/18
**opposed [6]** 10/13 13/11 39/21 56/1 63/7 74/25
**option [3]** 60/20 61/9 63/7
**options [2]** 60/5 60/8
**oral [6]** 16/19 16/21 16/25 17/2 31/17 73/4

**O**

order [3]  3/25 54/4 81/3
ordered [1]  43/8
ordinarily [2]  5/17 6/4
ordinary [1]  78/23
original [3]  3/8 35/2 42/1
Osbourne [1]  31/9
other [45]  3/3 8/16 9/4 14/12
16/23 17/8 18/20 19/6 20/3
22/9 22/22 23/25 24/4 27/21
31/3 31/18 35/13 37/12 37/23
40/10 40/17 42/24 42/24 43/1
47/18 52/19 56/3 61/12 62/4
62/4 63/7 68/25 74/25 75/10
75/24 76/5 77/22 77/23 77/25
78/3 79/16 79/21 79/25 80/4
83/21
others [6]  30/14 34/3 74/17
75/4 75/8 77/4
otherwise [7]  9/8 40/6 43/22
65/7 66/5 76/16 78/10
ounce [1]  52/15
our [22]  8/13 13/7 13/17
39/18 57/12 69/9 69/9 75/13
75/18 76/14 81/7 82/4 82/4
82/5 82/5 82/5 82/6 82/8
82/10 82/14 83/23 84/3
ourselves [1]  76/19
out [40]  5/10 18/1 25/12
25/14 30/20 30/25 31/12
31/19 34/16 34/21 39/18
43/17 45/11 46/2 46/6 47/1
47/3 47/14 50/2 51/25 53/10
57/1 57/3 57/25 58/2 58/3
58/15 60/3 60/13 60/16 61/3
61/8 62/18 62/21 63/23 64/21
65/11 73/8 75/13 75/14
outcome [1]  66/8
outlined [1]  61/21
outside [1]  62/2
outstanding [2]  80/12 80/13
over [10]  8/14 45/21 46/11
53/15 53/16 53/17 57/9 59/3
62/14 67/12
overall [5]  14/1 31/25 32/13
35/4 74/11
overrule [1]  30/5
own [11]  45/13 45/14 47/19
47/20 51/1 51/14 53/8 59/23
78/15 78/18 81/24

**P**

pacifier [2]  15/11 73/16
pacifiers [1]  49/7
page [8]  5/9 25/15 25/19
25/20 26/8 26/13 26/21 62/24
pages [1]  85/11
pain [13]  24/20 28/11 31/8
49/25 50/1 50/16 51/5 52/17
73/5 76/13 81/11 81/24 81/24
painting [1]  22/19
pajamas [1]  73/17
pale [1]  57/12
papers [6]  3/20 4/18 4/20
15/24 36/1 79/25
paperwork [2]  35/21 64/15
paragraph [4]  26/14 26/19
62/20 80/23
paramount [1]  70/24
parents [1]  44/23
parks [1]  79/8
part [12]  32/19 52/19 56/8
59/24 60/9 61/13 64/24 66/15
66/16 73/10 76/2 83/22
participate [2]  79/9 83/19
participates [1]  83/25
participation [1]  79/12
particular [7]  3/24 5/7 15/17
55/22 56/12 57/25 71/8
particularly [1]  81/15
parties [2]  43/20 63/23
passed [5]  36/4 36/13 36/14
36/22 36/25
past [2]  47/17 48/5
paternity [1]  52/12
pattern [1]  58/9
Pause [2]  35/16 62/8
pay [9]  29/21 38/15 38/18
41/10 80/11 80/12 80/18
80/19 83/8
paying [1]  41/25
pedophile [1]  51/24
peeing [1]  46/1
peer [1]  68/4
peer-reviewed [1]  68/4
peers [1]  82/12
penal [1]  65/4
pending [1]  2/2
penetrate [1]  49/14
penetrated [1]  50/5
penetrating [1]  16/1
penetration [6]  16/12 16/18

31/10 31/21 32/3 32/5
penis [5]  16/17 17/7 17/9
49/15 49/17
penological [3]  39/1 67/6
69/4
people [2]  45/22 75/9
per [4]  13/8 16/1 31/13 53/6
perhaps [4]  55/18 59/5 65/22
81/17
periodic [1]  78/7
permission [3]  78/12 78/16
78/19
permit [1]  79/3
person [13]  33/6 37/2 43/24
51/13 58/3 65/8 67/16 67/21
67/22 67/23 68/9 78/22 79/24
persuaded [1]  22/23
perversely [1]  81/16
Petersburg [1]  70/21
phone [2]  5/11 29/10
photograph [2]  79/14 79/19
physical [3]  73/5 73/19 78/22
physically [2]  17/12 73/14
picking [1]  49/19
picture [5]  44/22 79/14 79/15
79/19 79/20
pieces [2]  49/20 52/9
place [4]  64/20 65/2 70/22
79/6
placed [2]  24/20 44/16
placement [1]  68/24
places [1]  78/24
plain [1]  64/18
plainly [1]  30/1
plan [3]  33/2 34/19 38/23
play [1]  27/5
played [1]  47/25
playgrounds [1]  79/8
plea [4]  7/2 66/9 72/1 83/2
plead [1]  66/17
please [2]  2/5 77/13
pleasure [1]  50/1
plenty [1]  10/8
plus [3]  64/10 68/16 68/23
poignant [1]  67/21
point [22]  6/25 10/16 11/21
12/9 16/22 17/8 23/25 25/12
27/8 27/21 30/22 33/24 40/3
42/15 42/19 54/5 59/11 60/16
63/6 66/21 70/11 73/7
pointed [3]  25/14 39/17 46/1

## P

**points [7]** 4/17 22/23 24/3 27/10 28/5 29/9 30/20
**Police [1]** 50/20
**policy [3]** 11/18 13/23 71/25
**pornography [6]** 2/18 29/16 33/12 58/19 72/25 77/16
**portion [3]** 38/11 40/10 40/10
**pose [1]** 78/9
**position [10]** 13/22 21/2 21/16 22/25 23/3 23/4 37/2 40/2 48/18 64/6
**possess [2]** 79/13 79/18
**possibility [1]** 57/5
**possible [9]** 34/22 37/24 48/1 64/10 75/5 75/8 75/13 75/14 76/14
**possibly [1]** 18/24
**post [6]** 27/13 27/17 27/19 30/1 30/23 78/25
**post-offense [1]** 30/1
**postdated [1]** 11/3
**postdates [1]** 18/16
**potential [2]** 27/17 65/19
**practical [2]** 24/5 56/10
**practically [1]** 75/1
**prayed [1]** 46/11
**precious [1]** 51/4
**precisely [1]** 67/4
**predates [2]** 11/17 18/15
**prefer [1]** 43/21
**preferred [1]** 69/23
**premises [1]** 80/5
**prepare [1]** 83/6
**prepared [2]** 27/7 27/16
**preponderance [1]** 18/3
**presence [1]** 84/4
**presentation [1]** 49/3
**presented [3]** 16/6 42/20 81/25
**presentence [10]** 2/21 4/4 28/14 36/6 37/5 37/9 40/1 62/19 62/21 80/24
**preserve [6]** 6/11 6/19 7/10 28/18 28/25 29/3
**preserving [1]** 7/13
**pretty [3]** 7/19 20/20 22/13
**prevent [1]** 29/20
**primarily [1]** 16/5
**primary [6]** 6/15 6/17 59/15 64/5 66/23 66/25

**printing [1]** 41/1
**prior [2]** 52/4 79/1
**prison [6]** 57/1 58/2 58/12 58/17 70/2 82/18
**prisoner's [1]** 65/3
**Prisons [15]** 37/20 63/24 64/14 64/18 64/23 65/2 65/11 65/21 66/22 68/2 69/19 70/18 70/23 71/4 80/15
**privacy [1]** 5/11
**private [2]** 28/19 29/10
**Probably [1]** 30/23
**probation [17]** 25/2 25/14 28/14 30/6 32/8 41/5 41/11 42/15 78/13 78/16 78/19 78/20 79/1 79/3 79/11 80/2 80/6
**problem [2]** 61/13 65/24
**procedurally [4]** 53/17 53/21 54/21 63/20
**procedure [1]** 6/12
**proceed [1]** 63/21
**proceeding [2]** 7/1 72/1
**proceedings [9]** 1/23 2/21 41/2 83/19 84/1 84/5 85/6 85/12 85/14
**proceeds [1]** 5/19
**process [2]** 76/21 82/11
**produce [1]** 72/19
**produced [4]** 1/23 72/24 79/16 79/21
**production [5]** 2/18 29/16 33/12 58/18 77/16
**profoundly [2]** 67/9 73/12
**program [5]** 70/25 79/10 79/11 79/12 80/17
**programming [2]** 68/24 69/19
**programs [3]** 70/15 70/16 80/17
**promote [1]** 74/15
**prone [1]** 51/18
**proof [1]** 6/7
**properly [2]** 33/9 76/1
**property [1]** 79/24
**proposed [1]** 6/25
**prosecutor [1]** 62/10
**protect [5]** 44/17 45/12 51/13 58/14 74/19
**protecting [1]** 77/9
**protection [1]** 58/13
**provide [7]** 28/14 33/3 52/7

71/5 74/1 74/15 74/16
**provided [5]** 6/9 35/19 53/12 64/13 69/22
**provides [3]** 63/24 69/18 71/8
**providing [1]** 77/4
**provision [1]** 64/25
**proximity [1]** 21/24
**proxy [1]** 68/23
**PSR [5]** 3/18 11/1 35/2 43/6 52/20
**PSR's [1]** 12/22
**public [13]** 29/11 43/23 48/11 58/13 58/15 58/15 74/19 77/9 77/10 78/24 83/22 83/25 84/3
**published [1]** 20/2
**pull [4]** 5/20 15/10 49/7 73/15
**pull-up [1]** 15/10
**pull-ups [2]** 49/7 73/15
**pulls [1]** 17/15
**punished [1]** 56/20
**punishment [13]** 23/10 53/2 53/3 54/24 56/4 56/24 57/6 57/7 67/22 72/20 74/16 75/14 82/20
**pure [1]** 49/5
**purely [1]** 24/18
**purpose [11]** 2/5 6/17 6/17 6/18 6/18 28/8 29/15 67/6 68/11 69/5 77/1
**purposes [8]** 21/17 31/8 55/25 67/14 72/12 72/16 75/17 77/8
**pursuant [1]** 80/5
**pushing [1]** 31/17
**put [8]** 11/13 24/20 45/9 52/9 52/16 61/20 76/17 76/18

## Q

**qualified [2]** 39/22 40/7
**qualifies [3]** 9/7 24/9 42/3
**qualify [3]** 19/8 24/23 31/19
**qualitative [1]** 34/8
**question [21]** 8/18 9/1 9/19 14/23 15/13 16/4 18/6 18/19 19/11 20/17 22/15 23/13 23/15 23/17 24/11 33/18 39/12 39/20 43/5 58/25 68/14
**questions [5]** 4/25 8/16 10/11 11/22 14/18
**quick [2]** 11/15 27/10
**quite [1]** 60/3

**Q**

**quoting** [1] 5/9

**R**

**raise** [1] 6/13
**raised** [3] 9/19 11/1 11/14
**raises** [1] 46/19
**raising** [1] 8/13
**random** [1] 79/4
**range** [5] 35/7 35/10 35/11 50/9 72/7
**rape** [3] 19/15 63/1 63/2
**raping** [1] 33/6
**RAQUIN** [4] 1/16 2/12 4/5 67/16
**RaquinMercer** [1] 1/15
**rare** [2] 28/23 29/2
**rates** [1] 68/6
**rather** [3] 65/25 66/22 67/20
**rational** [1] 68/17
**rationale** [3] 29/2 55/18 75/4
**RDR** [1] 1/20
**rea** [1] 6/16
**reach** [1] 47/14
**read** [5] 4/6 10/14 51/7 58/4 64/18
**reading** [6] 13/13 26/12 60/21 61/3 63/4 63/10
**real** [5] 20/21 23/25 38/22 49/18 49/22
**reality** [1] 76/11
**realized** [1] 47/2
**really** [14] 7/8 8/21 9/18 13/21 21/1 21/15 22/15 23/23 24/4 34/15 39/12 52/19 60/4 60/24
**reason** [3] 6/21 18/20 20/11
**reasonable** [8] 39/5 53/18 53/21 54/22 55/21 80/7 80/10 80/11
**reasonably** [3] 64/16 78/14 78/17
**reasons** [5] 5/11 9/3 14/11 56/24 66/5
**recall** [1] 6/15
**receive** [1] 67/22
**received** [4] 2/19 3/15 44/20 59/21
**receives** [2] 64/14 67/25
**receiving** [1] 43/11
**recent** [2] 36/24 61/3

**recently** [1] 60/3
**recidivism** [1] 68/6
**recognize** [4] 6/8 6/21 12/23 67/20
**recognized** [1] 29/1
**recommend** [3] 67/24 71/7 80/21
**recommendation** [3] 69/12 69/15 80/14
**recommended** [2] 68/1 69/16
**record** [3] 2/6 42/19 73/25
**recorded** [3] 1/23 28/20 49/8
**recovering** [1] 29/23
**reduce** [2] 54/5 54/6
**reduction** [3] 8/6 54/3 54/4
**reductions** [1] 28/22
**refer** [2] 19/15 31/12
**reference** [2] 40/22 80/23
**referenced** [3] 5/3 16/24 52/20
**references** [1] 31/22
**referring** [2] 5/21 64/25
**refers** [1] 3/19
**reflect** [5] 57/14 74/14 75/5 75/6 76/13
**reflecting** [3] 77/3 77/7 77/10
**reflects** [1] 56/13
**reflexive** [1] 75/12
**refuse** [1] 47/22
**refute** [3] 37/5 37/8 42/20
**regard** [3] 9/12 12/24 19/20
**regarding** [2] 5/8 48/19
**regardless** [1] 55/21
**register** [1] 45/6
**regulations** [1] 79/11
**rehabilitation** [1] 30/1
**reiterate** [1] 23/7
**related** [1] 41/2
**relates** [1] 13/17
**relationships** [1] 51/18
**relatively** [1] 68/6
**release** [6] 35/10 78/2 78/3 78/5 78/7 80/4
**released** [1] 57/5
**relevant** [2] 8/10 8/14
**reluctant** [1] 40/16
**rely** [2] 30/25 56/9
**remain** [2] 59/16 79/6
**remaining** [4] 4/10 4/14 32/10 40/24
**remains** [1] 38/16

**remember** [2] 36/3 46/11
**remembered** [1] 46/9
**remind** [2] 5/14 46/22
**remorse** [3] 30/3 52/16 74/3
**renewed** [1] 36/22
**rent** [1] 78/25
**repeat** [1] 51/15
**repeated** [2] 58/9 74/13
**repeatedly** [2] 52/15 72/24
**reply** [1] 3/7
**report** [18] 2/22 4/4 4/6 4/14 28/14 35/22 36/6 37/5 37/9 37/22 38/1 40/1 41/8 50/13 62/19 62/21 78/20 80/24
**reported** [5] 50/19 52/5 79/2 81/20 85/5
**Reporter** [4] 1/20 85/1 85/3 85/20
**repositioning** [1] 22/18
**represent** [2] 40/23 83/10
**representation** [1] 40/7
**representative** [1] 82/14
**representing** [1] 67/17
**repulsive** [1] 81/9
**request** [4] 4/21 8/5 69/9 83/6
**requested** [1] 81/3
**requests** [1] 43/12
**required** [5] 6/12 39/11 60/10 78/5 80/19
**requirement** [2] 39/9 55/23
**requires** [1] 75/19
**research** [2] 9/13 15/17
**researching** [1] 65/9
**residence** [1] 79/25
**resolved** [1] 7/13
**resolves** [1] 23/19
**resolving** [1] 7/17
**resources** [5] 39/3 40/5 40/9 40/10 40/11
**respect** [3] 9/9 28/25 74/15
**respond** [2] 4/21 82/9
**responded** [1] 73/8
**response** [2] 50/3 67/15
**responsibility** [17] 4/10 4/11 5/3 5/18 6/5 6/22 6/24 7/9 8/7 8/12 12/16 14/20 28/13 28/15 28/22 29/7 29/17
**responsive** [1] 3/1
**rest** [5] 10/21 48/5 49/19 57/3 82/18
**restarted** [1] 21/2

## R

**restitution [8]** 3/19 3/20 3/24 29/21 36/24 43/7 43/8 80/12
**result [7]** 28/3 28/3 51/20 51/22 74/21 75/1 82/18
**resulting [1]** 12/19
**retain [1]** 40/5
**retained [2]** 37/12 39/19
**retaliation [1]** 82/10
**retirement [2]** 37/25 38/23
**review [1]** 4/6
**reviewed [4]** 2/20 3/15 4/3 68/4
**revised [3]** 2/21 26/25 27/1
**revocation [1]** 80/4
**revolting [1]** 81/12
**right [26]** 3/6 11/17 12/9 12/15 14/2 15/4 17/17 17/24 18/17 24/6 26/11 28/18 28/25 30/17 36/10 41/16 42/10 44/4 46/23 48/11 55/13 55/16 58/23 62/23 63/9 82/25
**rise [1]** 82/6
**risk [1]** 78/9
**RMR [1]** 1/20
**robbery [2]** 25/17 26/2
**robe [2]** 17/4 49/16
**Rockville [1]** 1/17
**role [1]** 47/25
**room [1]** 50/24
**rough [1]** 82/9
**rule [2]** 27/7 32/12
**rules [3]** 45/18 45/21 79/10
**ruling [1]** 28/19
**rulings [1]** 4/18
**run [14]** 30/19 60/7 60/18 60/23 60/25 64/15 67/1 72/18 77/20 77/21 77/23 77/24 78/3 80/22
**rush [1]** 76/13

## S

**S.'s [1]** 51/13
**sad [1]** 52/19
**sadistic [28]** 4/12 8/17 8/20 9/2 9/4 9/6 9/7 12/7 12/17 14/20 15/20 15/23 16/2 16/22 17/11 17/16 19/7 23/23 24/15 24/21 28/4 28/5 30/8 31/3 31/8 31/12 31/13 53/9
**sadomasochistic [1]** 27/24

**safely [2]** 10/15 31/19
**safety [1]** 51/1
**said [11]** 5/22 12/21 19/18 42/24 43/8 45/6 59/23 61/9 85/9 85/12 85/14
**same [42]** 7/13 13/2 13/3 13/4 13/6 13/12 13/14 13/15 18/23 19/13 19/19 19/24 19/24 21/1 21/19 21/21 21/21 21/25 32/19 32/25 33/1 33/1 33/6 33/8 33/14 33/15 33/19 33/23 34/3 34/7 34/12 34/16 34/18 35/2 54/18 61/25 62/12 62/13 75/11 76/1 76/2 76/5
**satisfaction [1]** 53/9
**Saturday [2]** 20/14 50/18
**save [3]** 10/10 50/5 73/9
**saved [2]** 51/1 58/5
**saw [2]** 44/12 73/10
**say [20]** 5/11 10/13 18/2 20/3 20/4 21/5 21/8 22/22 24/22 36/1 36/16 40/17 47/15 60/12 60/17 65/22 68/2 69/15 75/1 81/5
**saying [12]** 8/2 16/22 21/23 22/20 22/24 41/7 41/14 56/9 65/20 66/2 69/23 73/8
**says [13]** 9/17 10/12 10/17 20/1 20/4 25/15 25/25 26/19 26/20 36/13 60/15 60/24 65/1
**scared [1]** 46/18
**scenario [1]** 27/18
**scheme [2]** 33/2 34/19
**school [3]** 51/17 52/5 73/18
**schools [1]** 79/8
**SD [1]** 50/22
**se [2]** 16/1 31/13
**search [5]** 29/25 80/2 80/3 80/7 80/10
**searched [1]** 80/9
**searches [1]** 80/5
**searching [1]** 69/4
**seated [1]** 82/24
**second [5]** 26/25 36/18 54/20 58/17 63/2
**second-degree [1]** 63/2
**seconds [1]** 23/2
**section [7]** 2/19 26/8 35/19 36/13 42/21 72/9 72/17
**see [13]** 3/19 8/13 9/24 9/25 11/2 16/10 16/11 19/18 21/16

21/22 35/22 41/20 80/25
**seeing [2]** 7/16 32/18
**seek [1]** 51/25
**seem [2]** 11/11 51/25
**seemed [1]** 61/12
**seems [12]** 8/23 22/14 22/18 27/3 27/20 39/10 60/8 61/15 61/17 63/6 66/2 69/3
**seen [4]** 16/11 21/9 50/19 57/9
**sees [1]** 64/15
**seized [1]** 29/24
**self [1]** 29/22
**self-surrender [1]** 29/22
**sending [3]** 57/24 75/8 77/2
**sends [1]** 68/16
**sense [4]** 29/16 39/1 59/2 76/10
**sent [1]** 70/22
**sentence [100]**
**sentenced [2]** 25/17 26/1
**sentences [17]** 53/15 54/13 55/8 57/22 60/23 60/25 72/18 74/24 75/23 77/15 77/17 77/20 77/22 77/23 78/1 80/22 81/1
**sentencing [23]** 1/8 2/5 2/15 2/22 2/24 14/1 43/20 48/2 53/2 55/25 59/21 60/6 67/15 67/16 68/5 68/11 68/18 72/1 72/12 72/16 75/17 77/9 85/7
**separate [30]** 19/14 19/25 20/10 20/10 20/12 20/17 20/18 21/3 21/17 21/20 21/21 22/4 22/21 23/2 23/5 23/6 23/6 23/13 23/14 23/18 23/18 32/19 33/17 33/18 34/5 34/7 34/13 34/20 60/18 75/22
**separated [1]** 58/11
**separately [1]** 21/4
**September [2]** 2/16 36/17
**September 13 [1]** 2/16
**series [1]** 12/19
**serious [2]** 46/25 62/20
**seriousness [9]** 53/1 56/14 56/23 57/6 57/15 74/14 75/6 77/3 77/10
**serve [11]** 57/3 59/17 60/1 63/23 64/21 65/11 65/24 67/11 67/14 75/2 82/23
**served [3]** 59/1 67/2 75/17

# S

**serves [2]** 59/8 77/1
**serving [4]** 55/5 65/14 66/23 69/4
**set [1]** 77/7
**seven [5]** 13/2 26/18 33/25 34/9 77/21
**Seventeen [3]** 13/5 32/7 77/24
**several [7]** 10/20 19/21 19/23 20/12 20/22 23/5 62/16
**severe [4]** 58/1 64/17 73/4 73/13
**sex [18]** 16/19 16/21 16/25 17/2 23/5 31/17 62/25 70/14 70/15 70/24 71/9 73/1 73/4 73/4 73/19 79/9 79/23 80/16
**sexual [15]** 9/11 17/13 28/2 28/6 28/9 28/10 28/11 53/8 62/15 62/17 62/20 62/25 63/25 67/25 69/18
**sexually [8]** 45/4 49/5 50/8 51/25 52/23 53/7 79/17 79/22
**sexually-explicit [1]** 79/17
**shall [4]** 43/8 65/2 78/25 79/3
**shared [1]** 81/24
**shares [1]** 75/7
**she [33]** 17/8 17/10 20/9 20/13 20/13 44/4 46/1 46/8 46/9 46/9 46/10 46/12 46/13 46/15 46/16 46/17 46/18 47/12 47/12 47/14 47/15 47/15 47/17 47/18 47/23 47/25 49/16 50/18 50/19 50/21 51/1 51/10 51/11
**she's [5]** 46/17 46/20 46/22 47/12 51/10
**shift [1]** 38/19
**shootings [1]** 33/5
**shorthand [2]** 85/6 85/13
**should [23]** 4/17 12/2 13/8 13/9 18/14 23/17 26/4 30/21 34/2 37/3 46/3 48/20 51/8 52/11 56/20 57/23 60/7 60/16 60/18 66/3 74/22 78/14 78/18
**shouldn't [3]** 20/16 23/14 35/25
**show [3]** 11/16 50/18 68/5
**showing [2]** 44/22 55/17
**shown [2]** 52/15 58/9
**shows [3]** 44/12 46/15 76/3

**shut [1]** 50/4
**shy [1]** 46/16
**sick [1]** 47/21
**sickens [1]** 47/20
**side [16]** 7/11 7/14 7/17 7/18 9/18 16/7 42/20 47/13 48/22 59/9 60/1 60/2 64/7 64/9 64/17 83/12
**sides [1]** 8/18
**sign [1]** 74/2
**significant [1]** 34/4
**signs [2]** 45/25 46/15
**similar [3]** 54/22 55/8 72/13
**similarly [1]** 23/21
**simply [5]** 28/9 75/15 76/13 83/24 84/2
**since [6]** 8/16 30/18 36/18 63/15 64/21 81/13
**single [3]** 15/25 46/14 47/6
**sir [2]** 37/23 38/4
**sister' [1]** 82/5
**situation [4]** 66/22 66/25 76/23 81/1
**situations [3]** 6/8 28/23 29/2
**six [5]** 13/2 20/10 23/13 32/5 34/11
**Sixteen [4]** 13/5 32/7 34/12 77/24
**sixth [1]** 23/9
**slapped [1]** 49/24
**slaps [1]** 17/14
**slightest [1]** 46/19
**slightly [1]** 43/19
**smallest [1]** 46/21
**so [127]**
**society [8]** 53/10 58/10 58/11 68/11 76/20 81/7 81/8 82/1
**society's [1]** 75/5
**solid [1]** 67/5
**some [24]** 8/16 10/23 15/14 16/12 21/12 21/23 22/11 30/14 31/14 31/21 33/24 34/13 35/2 43/19 44/23 56/11 59/5 60/17 61/12 65/19 72/21 75/4 76/2 76/8
**somehow [1]** 41/5
**someone [8]** 15/18 21/19 22/24 43/21 44/17 65/22 78/11 82/8
**something [16]** 8/19 20/20 25/6 25/12 28/6 28/7 36/20

41/8 43/10 46/22 46/24 47/5 59/6 60/20 62/1 66/9
**sometimes [1]** 23/15
**somewhat [1]** 15/15
**son [1]** 52/23
**son's [1]** 82/5
**sorry [10]** 5/5 17/25 25/7 25/19 26/6 27/9 35/17 41/24 47/15 62/9
**sort [10]** 7/16 21/23 38/19 39/5 41/23 44/24 56/6 61/5 61/13 65/15
**sought [1]** 3/21
**sound [1]** 50/2
**SOUTHERN [1]** 1/2
**space [1]** 66/5
**span [1]** 23/16
**speak [2]** 43/23 75/9
**speaks [1]** 7/8
**special [10]** 2/9 35/12 39/10 41/22 42/1 42/22 42/22 78/6 80/13 80/19
**specific [6]** 10/19 58/7 62/18 75/19 79/10 79/23
**specifically [4]** 30/16 69/14 70/2 76/2
**specifics [1]** 81/4
**spend [4]** 48/5 49/19 58/11 82/18
**spent [1]** 40/15
**spoke [2]** 82/13 83/18
**square [1]** 55/22
**stacking [4]** 11/25 13/17 14/12 75/23
**stammer [1]** 46/3
**stand [4]** 11/20 47/20 77/13 82/2
**standard [3]** 18/4 78/4 80/25
**standards [1]** 65/5
**standing [1]** 47/13
**standpoint [1]** 17/23
**stands [1]** 44/4
**started [3]** 21/6 21/7 52/3
**starting [3]** 54/5 63/5 63/6
**starts [4]** 22/1 22/2 25/22 25/23
**state [43]** 7/2 7/10 7/11 7/14 7/18 19/12 42/19 48/21 59/1 59/8 59/14 59/20 60/2 60/5 60/13 60/19 60/24 61/2 61/6 61/16 62/3 62/10 62/12 63/19

**S**

state... [19] 64/2 64/6 64/7 64/9 64/12 64/17 64/20 64/22 65/11 65/13 65/18 65/23 66/9 66/18 67/2 67/2 67/18 70/6 80/23

state-imposed [1] 65/13

stated [7] 32/14 33/20 35/14 37/1 75/20 76/24 83/22

statement [1] 71/18

statements [3] 2/23 13/24 51/8

states [18] 1/1 1/3 1/9 1/11 1/20 2/3 2/8 2/16 2/19 35/19 36/12 43/6 54/11 54/12 54/20 77/14 85/4 85/8

stating [2] 33/4 74/9

status [1] 39/25

statute [9] 35/18 36/4 36/10 36/21 36/25 39/9 64/18 64/19 64/24

statutory [5] 35/8 64/23 72/7 74/9 78/4

stenography [1] 1/23

step [3] 28/13 28/13 71/3

STEPHEN [4] 1/5 1/16 2/4 85/8

stepped [1] 81/23

Steve [1] 2/11

still [13] 13/20 20/5 21/2 21/16 34/21 34/23 34/25 47/5 47/7 47/13 49/6 60/19 66/4

stole [1] 81/10

stood [1] 82/2

stop [2] 46/20 68/18

stopped [4] 21/1 21/6 22/16 50/14

stops [5] 22/1 22/3 22/15 22/20 23/1

storage [3] 79/1 79/4 80/1

story [1] 39/8

straddling [2] 27/14 27/18

strange [1] 61/17

streamed [1] 49/9

strict [1] 45/18

striking [2] 31/15 75/12

stroke [1] 22/19

strong [2] 20/25 49/12

stronger [1] 48/6

strongest [2] 75/5 75/8

struggle [6] 46/13 47/6 47/9 51/17 51/17 58/22

studies [1] 68/4

subject [2] 80/5 83/1

submission [1] 55/17

submissions [1] 8/13

submit [6] 4/19 12/21 28/9 66/21 79/24 80/3

submitted [3] 2/24 3/3 3/9

subscribed [1] 85/15

Subsection [1] 26/23

Subsections [1] 32/24

subset [1] 9/7

substance [1] 78/9

substantial [2] 38/11 56/19

substantively [1] 53/17

successful [2] 12/12 12/16

such [12] 12/2 32/20 36/23 40/25 47/21 53/3 58/20 69/21 74/13 74/21 74/25 80/3

sucking [1] 49/7

sufficient [4] 53/11 55/24 72/15 75/16

suggest [1] 38/14

suggested [1] 60/10

suggests [1] 43/21

suicide [2] 51/19 52/21

Suite [1] 1/13

summary [2] 5/6 26/19

Sunday [1] 20/15

superfluous [1] 69/5

supervise [1] 79/12

supervised [5] 35/10 78/2 78/3 78/5 78/6

supervision [1] 80/8

support [1] 27/20

supported [1] 81/16

suppose [1] 21/18

supposed [1] 25/9

suppression [2] 28/18 29/1

sure [15] 17/22 18/1 21/8 35/23 36/3 36/7 37/10 44/15 44/18 48/6 57/4 59/6 60/4 65/15 65/16

surrender [1] 29/22

suspended [1] 78/9

suspicion [1] 80/7

sustain [1] 30/6

system [9] 7/16 66/11 75/18 76/14 76/17 82/11 82/14 83/23 84/1

**T**

T.V [1] 44/12

table [3] 2/9 2/13 38/20

take [10] 12/7 22/25 28/12 37/16 44/9 45/18 52/11 54/6 55/2 75/13

taken [2] 73/17 85/13

takes [1] 23/24

taking [1] 20/23

talk [2] 14/4 46/16

talked [2] 8/21 42/25

talking [5] 14/1 41/4 46/24 61/25 66/14

talks [2] 26/1 26/5

tape [1] 85/14

TDC [3] 1/3 2/3 85/9

TDC-17-00195 [2] 1/3 85/9

TDC-17-195 [1] 2/3

tell [5] 22/5 40/12 40/21 50/22 82/15

telling [2] 44/21 50/4

temporal [1] 34/4

temporary [1] 36/21

ten [6] 7/3 13/3 32/6 34/11 34/21 62/11

tendencies [1] 53/9

term [6] 51/16 54/24 57/3 77/5 77/17 78/2

terminate [1] 29/18

terms [20] 15/7 15/15 25/8 31/25 32/13 41/4 43/18 51/23 53/1 56/22 57/6 57/23 58/7 58/21 59/12 64/10 77/2 77/19 78/2 82/15

terrible [1] 44/11

terrified [2] 46/18 46/20

testimony [2] 22/17 85/7

testing [1] 78/7

than [39] 10/9 20/3 20/6 23/9 24/11 28/6 34/24 35/13 37/12 37/23 39/8 40/1 40/17 42/24 45/13 48/1 48/7 51/21 53/9 54/15 54/25 55/4 55/5 55/9 55/9 55/24 65/25 66/24 67/14 69/2 69/4 70/16 70/19 72/15 73/22 75/16 77/1 77/8 77/11

thank [13] 43/16 48/8 48/9 48/10 48/16 63/11 63/12 63/14 71/16 71/23 83/17 83/21 84/4

Thanks [2] 50/12 62/25

# T

that [522]

that's [41]  3/21 6/24 8/9 16/22 18/4 18/14 21/23 22/8 22/21 23/3 23/11 27/13 28/11 34/6 36/19 36/25 38/7 39/12 40/3 40/22 41/23 42/1 42/14 43/9 43/10 48/7 48/11 52/19 53/5 54/18 55/10 55/15 55/24 56/5 57/13 63/9 63/20 65/23 66/13 69/23 80/20

their [11]  46/19 49/19 51/4 51/7 65/24 73/17 73/20 81/10 81/23 81/23 81/24

them [17]  7/25 16/15 29/5 32/14 44/12 49/11 49/20 50/22 51/6 51/15 52/24 73/6 73/10 73/18 81/9 81/11 82/3

themselves [1]  24/17

then [46]  3/7 3/25 7/1 8/22 10/11 10/20 11/21 16/21 18/19 19/2 19/13 20/14 20/22 21/6 22/1 22/11 22/25 23/22 26/11 26/18 26/19 31/2 32/17 33/18 34/2 34/10 37/6 38/18 43/5 43/24 43/25 43/25 45/7 47/2 47/25 48/15 48/25 52/6 58/5 60/1 60/24 63/5 64/14 64/17 65/13 76/9

THEODORE [1]  1/8

there [110]

there's [38]  3/25 8/9 10/12 12/1 15/10 15/17 17/8 19/12 20/16 20/21 20/25 21/13 23/1 23/10 23/12 24/8 24/11 24/12 27/12 29/25 30/2 34/4 34/5 34/8 35/4 35/8 36/6 39/9 39/20 41/6 42/4 42/6 48/4 60/12 70/20 74/2 74/3 83/3

therefore [3]  58/11 58/16 75/23

these [58]  4/25 9/15 9/16 10/16 10/20 11/23 15/21 21/12 21/24 23/15 30/16 31/3 31/5 31/15 31/18 31/20 32/18 35/3 35/20 36/24 44/11 49/8 49/14 49/22 50/1 50/12 50/14 50/18 50/23 51/1 51/4 51/5 51/16 51/19 52/13 52/16 55/18 57/8 67/10 68/9 70/2 70/18 70/22 72/21 72/23 73/2

73/3 73/13 73/17 73/20 74/6 74/11 75/23 76/7 77/19 81/19 82/2 82/3

they [32]  5/9 19/23 23/16 24/4 24/19 24/20 29/24 32/23 32/25 33/22 34/13 39/2 43/17 45/2 45/2 45/3 45/5 51/5 52/17 54/4 55/20 57/12 58/4 60/18 60/19 61/1 65/22 65/23 66/4 73/18 75/22 76/1

They're [1]  62/18

thing [4]  48/4 48/6 60/12 60/17

things [15]  10/16 18/24 20/21 29/12 38/16 38/19 39/4 39/4 41/1 44/11 46/3 46/9 46/13 46/21 53/25

think [92]

thinking [1]  36/2

third [2]  32/3 63/1

Thirteen [1]  32/6

this [136]

THOMPSON [34]  1/5 2/4 2/12 2/13 2/15 2/16 2/17 5/6 6/11 27/8 29/6 38/13 40/18 44/1 45/5 45/8 63/23 64/9 64/20 65/13 66/23 67/11 67/16 67/17 68/9 71/17 71/21 72/6 73/25 77/12 77/14 81/5 82/25 85/8

Thompson's [2]  6/2 67/21

those [32]  3/16 4/13 4/17 4/18 6/19 11/22 17/13 19/16 20/13 20/17 21/3 21/16 23/6 23/6 24/2 33/25 34/2 34/6 35/14 40/10 40/17 40/20 42/12 53/15 53/15 54/7 54/10 54/13 56/17 56/24 76/22 80/17

though [13]  7/5 8/2 12/6 15/19 16/18 21/13 21/21 35/2 35/22 43/18 56/9 59/21 66/3

thought [9]  7/19 29/11 44/17 44/23 45/12 45/13 47/7 58/22 81/13

thoughtful [1]  76/21

thoughts [1]  51/14

threats [1]  33/8

three [15]  10/4 13/1 21/19 21/20 21/20 30/12 30/13 32/2 33/8 33/9 34/11 36/15 62/12

three-year-old [1]  10/4

threw [1]  49/24

through [20]  7/12 12/4 29/25 33/25 34/9 34/11 34/11 38/13 47/9 48/4 51/6 51/9 51/9 52/16 77/16 78/11 82/9 82/10 82/12 84/1

throws [1]  17/14

tie [2]  17/3 49/16

tied [2]  16/20 73/7

time [23]  14/4 19/17 21/15 21/24 22/13 22/20 23/16 33/14 38/8 44/9 45/15 45/15 46/7 46/11 46/14 46/18 52/8 59/25 71/22 75/2 75/11 76/25 80/11

timeframe [1]  36/3

times [5]  21/19 46/5 46/9 60/10 73/4

timing [2]  7/8 33/21

Title [1]  2/18

today [12]  39/15 43/14 47/12 48/6 48/10 51/7 64/4 81/24 82/15 83/12 83/18 83/22

today's [1]  2/21

toddler [17]  8/23 9/12 9/13 9/22 10/1 10/2 11/2 11/12 14/22 15/8 15/18 18/5 27/6 27/11 27/15 30/10 31/1

toddlers [3]  8/24 15/22 18/23

together [7]  12/18 33/15 34/2 52/9 56/17 60/18 85/13

told [4]  45/3 45/22 46/9 50/3

tolerated [1]  82/17

too [6]  8/22 11/1 17/5 52/24 73/13 82/4

took [4]  40/15 45/15 50/1 52/2

top [1]  75/23

torture [1]  52/16

total [10]  28/5 32/22 35/1 35/5 53/7 54/23 72/20 74/24 77/18 77/25

touching [2]  58/1 58/4

Tracey [2]  47/10 47/11

tragedy [1]  51/3

transaction [1]  33/1

transcript [3]  1/8 1/23 85/12

transcripts [4]  38/16 38/18 41/1 41/10

## T

**transfer [5]**  59/13 59/18 59/22 66/15 81/2
**transferred [1]**  59/16
**trauma [3]**  46/16 73/19 73/20
**treat [1]**  19/19
**treated [3]**  19/25 21/20 35/6
**treatment [16]**  63/25 67/24 68/1 68/5 68/10 68/23 69/19 69/21 70/15 70/16 70/25 71/6 71/9 79/10 79/23 80/16
**trial [17]**  2/17 5/19 6/12 6/13 6/16 6/19 6/24 7/12 7/17 7/21 22/17 28/17 28/23 29/3 29/10 30/2 82/11
**trials [1]**  83/25
**tried [3]**  47/14 47/15 53/20
**trouble [2]**  46/21 46/23
**truck [1]**  38/22
**true [2]**  28/24 32/19
**trump [3]**  27/13 27/19 61/1
**trust [2]**  45/13 45/14
**truthfully [1]**  29/7
**trying [4]**  5/20 10/22 44/22 67/5
**Tucson [2]**  68/2 69/21
**turn [2]**  17/24 63/13
**turned [7]**  13/15 22/16 22/16 30/13 33/24 76/8 76/9
**Twelve [7]**  13/4 20/24 32/6 34/1 34/10 34/11 77/22
**twenty [1]**  57/19
**two [20]**  5/5 6/2 9/3 10/3 23/16 26/21 26/24 27/10 28/5 30/12 32/2 32/3 33/1 33/4 33/6 36/15 44/20 54/9 56/17 73/2
**two-year-old [1]**  10/3
**tying [2]**  17/3 73/6
**type [4]**  67/4 69/13 69/17 75/10
**types [3]**  35/20 70/2 70/18

## U

**U.S [5]**  31/5 31/9 32/22 33/10 68/5
**U.S.C [1]**  9/10
**Um [2]**  5/24 26/20
**Um-hum [2]**  5/24 26/20
**unauthorized [2]**  40/11 40/13
**uncertain [1]**  82/15
**unclear [1]**  50/14
**under [47]**  8/8 8/9 8/19 9/4 9/9 9/10 9/13 9/16 10/13 10/15 10/19 10/20 11/25 12/17 17/1 27/12 28/1 28/2 28/21 30/4 30/9 31/5 31/9 32/20 32/21 32/22 32/24 34/18 34/23 39/9 42/21 43/6 43/7 45/18 61/21 61/23 64/13 67/24 69/17 71/3 72/17 76/21 78/14 78/18 79/7 80/7 80/21
**understand [17]**  4/9 8/1 10/22 11/15 11/21 14/3 14/6 28/12 42/14 48/2 63/3 67/7 68/8 69/20 70/1 76/19 83/18
**understanding [5]**  6/4 7/7 18/7 18/12 65/10
**understands [1]**  75/7
**understood [2]**  66/8 69/7
**undisputed [3]**  31/23 41/23 42/1
**unedited [2]**  3/8 16/5
**unfortunately [4]**  23/9 44/15 52/24 61/1
**unintended [3]**  63/22 64/3 65/19
**UNITED [17]**  1/1 1/3 1/9 1/11 1/20 2/3 2/8 2/16 2/19 35/18 36/12 54/11 54/12 54/20 77/14 85/4 85/8
**units [2]**  21/20 23/20
**unjust [1]**  76/10
**unless [2]**  14/18 43/21
**unnecessary [2]**  63/22 64/3
**unspeakable [2]**  72/24 81/9
**until [6]**  18/9 21/14 36/22 45/23 52/5 67/2
**unusual [2]**  60/8 60/9
**unwarranted [2]**  53/2 72/12
**up [16]**  5/20 15/10 20/14 23/9 30/18 35/21 38/12 38/22 40/14 44/10 49/19 50/4 54/6 55/5 69/3 73/7
**upheld [7]**  33/13 53/16 54/13 57/18 57/18 57/20 57/22
**upon [2]**  31/17 85/7
**ups [2]**  49/7 73/15
**us [6]**  2/8 2/13 12/8 13/18 14/9 32/15
**USC [5]**  43/7 64/14 69/17 69/18 72/9

**use [5]**  18/15 18/20 25/9 27/12 78/25
**used [3]**  26/5 40/9 73/5
**using [4]**  11/19 18/11 26/5 40/5
**usually [3]**  11/18 19/14 43/21

## V

**vaginal [1]**  31/6
**vaginally [1]**  49/14
**vague [1]**  41/4
**valid [1]**  6/21
**value [2]**  38/23 80/25
**various [1]**  7/25
**vast [2]**  30/13 31/18
**vehicle [3]**  38/3 38/10 38/21
**vehicles [1]**  79/25
**verbal [1]**  73/6
**verdict [3]**  7/4 7/6 82/13
**version [1]**  16/5
**versus [13]**  2/4 2/16 31/5 31/9 32/23 33/10 54/11 54/12 54/21 56/11 58/21 77/14 85/8
**very [12]**  15/21 22/19 38/15 40/24 46/17 48/8 48/19 49/6 61/3 68/18 83/20 84/4
**victim [33]**  2/23 8/23 9/17 10/17 10/19 10/19 12/3 12/4 12/18 12/20 12/25 12/25 13/1 13/8 13/10 13/10 13/11 13/18 14/8 15/9 15/10 17/12 19/13 19/15 20/9 32/25 33/1 33/8 51/7 52/14 73/3 81/13 81/25
**victim's [2]**  81/15 83/17
**victims [19]**  8/24 9/16 10/2 10/3 10/4 10/15 10/16 30/12 36/23 49/16 49/18 52/13 56/19 62/4 62/12 73/5 73/7 74/12 78/11
**victims' [1]**  81/22
**video [18]**  10/17 15/10 16/13 21/1 21/7 21/13 21/14 22/1 22/3 22/12 22/15 22/20 33/24 73/16 76/3 76/8 79/14 79/19
**videos [31]**  3/8 5/10 8/21 10/20 15/9 16/16 16/19 17/4 17/9 17/13 20/24 21/9 22/10 22/14 23/6 24/16 24/22 28/10 31/3 31/15 32/11 33/21 33/22 50/8 50/9 50/18 50/23 72/25 73/9 76/4 76/12

**V**

**view [6]** 14/22 37/21 69/10 76/12 79/13 79/18
**vigorously [1]** 29/14
**vile [1]** 82/16
**violated [1]** 80/8
**violation [2]** 2/18 80/10
**violence [14]** 8/21 9/5 9/5 15/24 19/3 19/6 19/7 28/8 31/4 31/15 31/18 31/22 32/4 73/5
**Violent [1]** 78/8
**virtually [1]** 29/5
**visit [1]** 21/25
**visited [1]** 20/13
**visits [3]** 20/10 23/14 23/15
**visual [2]** 79/13 79/18
**voice [3]** 46/19 50/2 81/23
**voluntarily [4]** 29/18 29/21 29/22 29/22
**vulnerable [2]** 74/12 81/7

**W**

**waist [1]** 17/3
**waivable [1]** 42/9
**waive [2]** 42/12 83/9
**waived [1]** 70/8
**waivers [2]** 83/1 83/2
**walk [1]** 47/17
**want [21]** 7/15 11/4 11/24 13/25 14/9 14/18 19/10 21/16 25/12 38/25 57/4 59/6 59/11 66/14 69/14 70/10 71/7 73/8 81/5 83/17 83/21
**wanted [3]** 14/7 25/6 53/24
**warn [1]** 80/4
**warrant [1]** 29/25
**warranted [6]** 28/17 72/20 74/8 74/11 75/24 76/23
**warrants [1]** 58/14
**was [117]**
**wasn't [8]** 11/13 14/22 21/8 27/15 27/16 41/8 41/10 44/16
**watch [1]** 49/10
**way [17]** 4/13 6/10 10/14 24/2 24/3 43/17 44/24 45/11 47/16 48/18 58/14 59/3 61/2 63/7 63/21 81/16 83/19
**ways [1]** 69/6
**we [107]**
**we'll [3]** 10/11 39/8 67/18

**we're [17]** 2/4 4/19 8/13 13/22 17/1 17/2 22/19 22/19 25/8 38/24 42/11 57/15 60/13 63/25 66/14 67/4 67/23
**we've [7]** 22/24 30/19 31/24 42/25 57/11 69/13 70/7
**wealth [3]** 37/9 37/17 37/19
**wearing [4]** 15/10 49/6 73/15 73/16
**weekend [3]** 19/24 20/10 23/13
**weekends [1]** 20/13
**weeks [1]** 46/5
**weigh [1]** 75/19
**well [34]** 3/9 7/19 9/3 9/15 10/5 10/10 10/25 11/24 12/6 12/10 15/14 16/21 19/4 21/9 22/24 26/22 32/5 37/4 38/2 38/11 39/7 39/17 39/24 40/14 41/12 46/17 56/2 56/8 56/12 60/7 61/22 66/1 81/24 82/21
**went [3]** 21/19 28/17 40/19
**were [39]** 3/3 8/24 9/16 10/15 11/7 15/6 15/8 15/21 24/18 24/19 24/20 24/21 26/11 29/12 29/24 30/14 30/17 33/9 40/21 43/18 49/6 50/16 54/7 54/9 54/10 54/13 55/2 55/4 57/21 60/6 72/23 73/15 74/12 76/1 76/2 76/11 81/6 81/19 82/16
**what [56]** 5/12 5/22 7/17 8/1 9/17 11/7 13/22 20/4 20/11 22/3 22/8 25/19 29/6 33/19 36/16 38/3 38/10 39/20 40/1 40/12 41/3 41/17 45/16 45/21 45/23 46/6 48/18 49/8 49/10 50/19 51/9 52/21 55/21 56/3 57/15 60/3 60/4 60/7 60/9 60/18 60/22 61/16 62/14 64/10 64/12 65/15 65/20 66/3 66/13 66/20 68/2 68/14 69/2 69/14 74/22 76/17
**what's [5]** 14/22 35/13 36/10 37/5 62/3
**whatever [4]** 44/8 57/4 59/20 59/25
**whathaveyou [1]** 22/18
**when [18]** 5/18 10/13 15/18 19/12 23/4 27/14 28/23 36/2 36/3 36/13 41/5 46/9 47/6

57/20 67/11 73/7 80/7 82/8
**whenever [1]** 57/2
**where [36]** 5/9 6/10 7/2 13/21 15/9 15/10 16/16 16/19 17/8 17/9 17/10 19/23 20/13 20/13 20/23 25/23 26/11 31/21 33/20 34/3 34/4 42/15 47/12 53/14 54/13 54/18 54/23 64/20 65/10 65/23 66/22 66/25 69/21 76/10 79/6 82/19
**whereof [1]** 85/15
**whether [35]** 3/20 9/1 15/17 16/18 18/20 19/6 19/7 20/4 21/5 21/6 22/15 22/17 23/25 30/2 30/15 31/2 31/15 31/16 31/18 36/19 39/9 48/20 59/8 64/7 65/6 65/7 66/4 68/22 72/2 73/11 76/16 79/15 79/20 83/25 84/1
**which [47]** 3/9 5/4 5/5 5/7 6/2 6/20 9/10 10/9 11/19 12/22 13/12 14/25 18/10 25/8 26/14 27/11 29/10 29/15 30/20 31/23 34/12 36/14 39/8 54/10 54/11 54/12 55/9 55/10 56/8 57/19 58/24 59/23 59/25 64/5 64/24 65/6 66/7 67/13 67/24 68/4 68/18 70/8 71/6 72/7 74/6 76/11 77/6
**while [3]** 17/15 39/2 49/9
**White [2]** 32/23 33/7
**who [17]** 5/13 39/22 40/15 40/15 43/23 49/6 49/19 50/12 50/17 51/24 57/25 62/10 65/22 73/10 73/15 83/18 83/22
**why [22]** 6/24 8/24 10/22 13/16 14/11 18/4 41/8 41/8 41/10 46/13 48/2 48/3 53/5 55/25 56/24 57/14 63/25 65/17 65/24 66/7 67/12 68/20
**will [46]** 4/16 6/15 8/8 14/4 20/4 29/24 30/5 32/1 32/9 37/19 40/23 42/23 45/23 46/14 48/2 48/5 48/23 50/2 51/12 51/16 58/2 58/25 59/1 59/2 59/16 60/25 60/25 61/1 67/22 73/21 75/2 77/5 77/20 77/21 77/22 77/24 78/3 78/5 79/11 80/14 80/18 80/21 81/2 82/18 82/23 83/6

## W

**win [1]** 48/5
**windfall [1]** 55/4
**Wise [1]** 33/10
**wish [1]** 83/3
**wishes [1]** 45/21
**withdraw [1]** 29/18
**within [9]** 23/5 61/22 65/7 68/13 69/10 76/5 77/1 78/20 83/4
**without [10]** 8/25 31/21 32/10 59/19 65/7 74/8 78/12 78/15 78/19 79/1
**witness [3]** 44/1 84/3 85/15
**woken [1]** 20/14
**woman [4]** 50/12 50/17 50/17 50/25
**won't [3]** 32/15 46/16 51/15
**woods [1]** 52/3
**words [4]** 45/9 51/14 68/25 81/5
**work [2]** 37/19 67/18
**working [3]** 16/4 17/18 48/5
**works [2]** 23/11 24/2
**world [3]** 45/10 57/24 82/17
**worse [1]** 49/9
**worst [1]** 50/11
**worth [1]** 58/6
**worthy [1]** 75/21
**would [96]**
**wouldn't [4]** 24/25 38/18 38/25 63/10
**written [1]** 78/21
**wrong [3]** 17/18 44/19 45/1

## Y

**Yeah [2]** 35/23 71/13
**year [14]** 5/11 10/3 10/4 11/7 30/15 31/7 56/6 57/17 57/19 74/6 74/24 75/18 75/22 75/23
**years [46]** 10/18 22/6 23/16 30/12 30/13 35/9 35/10 44/13 44/20 52/3 53/6 53/6 53/8 53/15 53/22 54/16 54/17 54/24 55/9 55/15 57/8 57/9 57/11 57/12 57/14 57/22 58/9 58/14 58/17 64/10 67/12 68/15 68/20 68/22 72/8 72/17 73/2 74/24 75/1 76/7 76/22 77/6 77/7 77/17 77/19 77/25
**yelling [1]** 46/20

**yes [27]** 3/4 3/6 3/14 4/8 4/15 5/23 7/6 7/22 12/10 12/15 14/3 17/6 19/5 19/9 24/7 24/10 25/10 26/7 37/23 43/15 44/3 44/5 48/13 62/7 62/23 66/12 66/13
**yesterday [3]** 3/5 53/20 61/7
**yet [4]** 36/19 60/15 64/2 64/12
**you [158]**
**you'd [3]** 24/18 44/8 71/14
**you'll [1]** 44/14
**you're [7]** 14/25 14/25 26/6 41/4 65/20 66/2 69/23
**you've [6]** 16/11 16/24 21/9 22/10 55/17 59/24
**young [6]** 16/1 31/10 31/13 49/6 73/15 81/8
**your [125]**
**yourself [1]** 2/5